UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE 1, individually and on behalf
of all others similarly situated,

      Plaintiffs,

                                      Case No.

v.                                  Hon.

DÉJÀ VU CONSULTING, INC. d/b/a
DÉJÀ VU OF SAGINAW, INC., a Michigan
corporation, DV SAGINAW,  LLC, a
Michigan Limited Liability Company;
DÉJÀ VU SHOWGIRLS, a Michigan
corporation; HARRY MOHNEY, an individual

      Jointly and severally,

      Defendants.

_____/

Megan Bonanni (P52079)
Rachael Kohl (78930)
Pitt McGehee Palmer & Rivers P.C.
Attorney for Plaintiffs
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
(248) 398-9804 Fax

_____/

**CLASS ACTION AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY**

Plaintiff Jane Doe 1, on behalf of herself and all others similarly situated, by and through their attorneys, for their Class Action and Collective Action Complaint and Demand for Jury against Defendants, allege as follows:

## INTRODUCTION

This is a class action brought by Plaintiff Jane Doe (hereinafter "Plaintiff") against Defendants Déjà Vu Consulting and its Déjà Vu Affiliated Nightclub doing business as Déjà Vu Saginaw, DV Saginaw, Déjà Vu Showgirls, located in Saginaw, and Harry Mohney (hereinafter collectively referred to as "Defendants"). The Class which the Plaintiff seeks to represent is composed of female employees who, during the relevant time period, worked as exotic dancers at Déjà Vu Affiliated Nightclub in Saginaw (hereinafter "Déjà Vu Affiliated Nightclub") that (1) intentionally misclassifies Plaintiff and all other members of the putative Class as independent contractors; (2) willfully refuses to pay a minimum wage; (3) unlawfully requires dancers to split their gratuities with Defendants and their employees, such as DJs; and (4) unlawfully deducts employee wages through rents, fines, and penalties for lateness and misconduct.

Plaintiff Jane Doe on behalf of herself and others similarly situated is a dancer/entertainer of Defendants and brings this Collective action against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*

2

("FLSA") for failure to pay a minimum wage.    Plaintiff, as a Class Representatives, also brings this Rule 23 Class Action on behalf of herself and all members of the proposed Class against Defendants, pursuant to Rule 23 of the Federal Rules of Civil Procedure, to remedy violations of Michigan State Law, including but not limited to Michigan Workforce Opportunity Wage Act, MCL § 408.411 *et seq.* ("MWOW").

Defendants willfully engaged in a pattern, policy and practice of unlawful conduct for the actions alleged in this Complaint. Defendants willfully fail to pay Plaintiff and all others similarly situated within the Class minimum wages and other benefits that they are entitled to under applicable federal and state laws. Additionally, Defendants engage in unlawful tip splitting by requiring dancers and other members of the Class to split and share gratuities given to them by patrons with Defendants and their non-tipped employees, including Disc Jockeys.    The Déjà Vu Affiliated Nightclubs have previously been sued in violation of FLSA and Michigan wage laws, and still Déjà Vu Consulting continues to willfully violate the federal and state laws.

Plaintiff brings this class action seeking damages, back pay, restitution, liquidated damages, injunctive and declaratory relief, civil penalties, prejudgment interest, reasonable attorneys' fees and costs, and any and all

other relief that the Court deems just, reasonable and equitable in the circumstances.

## JURISDICTION & VENUE

1.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

2.      This Court has jurisdiction over this FLSA Collective Action pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

3.      Defendants' annual sales exceed $500,000, and Defendants employ more than two persons, so the FLSA applies in this case on an enterprise basis.  Defendants' employees engage in interstate commerce; therefore, they are also covered by the FLSA on an individual basis.

4.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise under the same facts.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the actions and omissions giving rise to the claims pled in this Complaint occurred in this District.

## THE PARTIES

4

6.     Plaintiff Jane Doe 1 ("Plaintiff") is a resident of Bay City, Bay County, Michigan. At all relevant times, Plaintiff was an employee of Déjà Vu Affiliated Nightclub as defined in 29 U.S.C. §201 *et seq*. and MWOW working on various dates as a dancer at Déjà Vu in Saginaw, Michigan from October 2009 to present.  Plaintiff has executed her consent to join form.

7.     Like other Class members, Plaintiff was: (1) misclassified as an independent contractor and as a result, was not paid the wages which she were entitled to as an employee; (2) required to split tip income with Defendants and their non-tipped employees as described more fully below.

8.     Pursuant to the principals set forth in *Doe v Bodwin*, 119 Mich. App. 264, 326 N.W.2d 473 (Mich. App., 1982), Doe files this action under a fictitious name and seek to proceed anonymously because: (a) She fears retaliation by Defendants; (b) She wishes to preserve her right to privacy; (c) there is a significant social stigma attached to her occupation as an exotic dancer; (d) there is an inherent amount of risk associated with Doe's profession and she fears that disclosure of  her legal name and address may subject her to risk of injury by current and former patrons; and (e) in addition to the fear of retaliation by Defendants, she would be hesitant to maintain this action enforcing fundamental employment rights if her names were to be forever associated with Defendants.

5

It is customary in Defendants' business for employee-dancers, like Plaintiffs, to use pseudonyms and stage names for both security and privacy purposes.   The use of these names allays any reasonable fear that proceeding anonymously would offend the "customary and constitutionally-embedded presumption of openness in judicial proceedings." *N.W. Enterprises, Inc. v. City of Houston*, 352 F.3d 162 (5th Cir. 2003).

9.     There is no prejudice to Defendants if Doe files this action under a fictitious name and proceeds anonymously. In the ordinary course of business, Defendants themselves identify the exotic dancers they employ through stage names.

10.     The identities of Doe will be disclosed to Defendants privately in order to allow them to assess and defend their claims. As a result, there are no due process concerns if Does proceed anonymously.

11.     Upon information and belief, Déjà Vu Affiliated Nightclub is managed and controlled by Déjà Vu Consulting, Inc., its consultants and employees, including Harry Mohney.

12.     Upon information and belief, Defendant Déjà Vu Consulting, Inc. (hereinafter "Déjà Vu Consulting" or "DVC") is a Michigan Corporation maintaining an offices in Lansing, Michigan.  The registered office for Déjà Vu Consulting is 3800 Capitol City Blvd., Lansing, Michigan, 48906-2177. Déjà Vu Consulting manages, operates and/or controls the business operations and employment and wage policies at the Déjà Vu Affiliated Nightclub doing

6

business under "Déjà Vu Showgirls," "Déjà Vu Saginaw," and/or other "Déjà Vu" trade names nationwide, including the nightclub where Plaintiff and all class members work.

13.    Upon information and belief, Mohney owns, manages and/or controls Déjà Vu Consulting and the Déjà Vu Affiliated Nightclubs, directly or indirectly.  Mohney together with DVC perpetuates the employment policies affecting class members that are challenged in this lawsuit. Mohney manages, operates and/or controls the business operations and employment policies at the numerous nightclubs doing business under the "Déjà Vu," "Déjà Vu Showgirls," and/or other "Déjà Vu" trade names including the Déjà Vu Affiliated Nightclub where Plaintiff and class members worked.

14.    Defendants are joint employers of all class members and as such are jointly and severally liable for any violations of the wage and hour laws set forth below.   Plaintiff seeks to certify a class of all exotic dancers who worked at the Déjà Vu Affiliated Nightclub in Saginaw, Michigan that were directly or indirectly, owned, operated, controlled and/or managed by Defendants.

15.    All named Defendants agreed and conspired among themselves, as well as with any third-parties which own part of certain Déjà Vu Affiliated Nightclub to unlawfully:  (1) misclassify dancers as independent contractors, as opposed to employees; (2) fail to pay Class members any wages in violation

7

of the FLSA and the MWOW; (3) require that dancers split their table dance tips with Defendants; (4) require that dancers further split their table dance tips with Defendants' DJ's and other employees who do not usually receive tips, by paying "tip-outs;" (5) demand improper and unlawful payments from class members; (6) adopt and implement employment policies which violate the FLSA and/or other wage and hour laws; (7) require dancers to pay fees and fines before allowing them to work; (8) threaten retaliation against any dancer attempting to assert her statutory rights to be recognized as an employee. The Déjà Vu Affiliated Nightclub has a similar business model regarding dancer classification and tip splitting and require that it continue to be employed. The unlawful agreements and conspiracies between Defendants and third-parties in the enterprise were entered into as part of a strategy to maximize revenues and profits and to violate class members' statutory rights.

16.    Defendants decided to classify exotic dancers working at the Déjà Vu Affiliated Nightclub as independent contractors, as opposed to employees and to perpetuate and maintain that classification system.

17.    Defendants knew or should have known that the business model employed was unlawful as applicable laws confirm that all money given to dancers by patrons is defined to be a gratuity and the sole property of the dancer. Further, Defendants have previously been sued in violation of these

state and federal laws on multiple occasions and despite this, Defendants continue to willfully engage in the acts described below misclassifying dancers and splitting tip income in violation of their legal duties.

18.    At all relevant times, Defendants owned and operated a business engaged in interstate commerce and which utilized goods which moved in interstate commerce  as defined in 29 U.S.C.§203(r) and §203(s).

19.    Defendants constitutes an "enterprise" within the meaning of 29 U.S.C. §203(r)(1), because they perform related activities through common control for a common business purpose.

20.    At relevant times, Plaintiff and the Class were employed by Defendants, enterprises engaged in commerce within the meaning of 29 U.S.C. §206(a) and §207(a).

**GENERAL FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

21.    Plaintiff and others similarly situated have been intentionally misclassified by Defendants as independent contractors.

22.    As a matter of common policy, Defendants misclassify their workers as independent contractors, including but not limited to exotic dancers.

23.    Plaintiff and others similarly situated have not been paid any minimum wage by Defendants.

24.    The FLSA applied to Plaintiff and the Class at all times in which they worked at the Déjà Vu Affiliated Nightclub.

25.    No exceptions to the application of the FLSA or state wage and hour laws apply to Plaintiff and the Class.

26.    At relevant times, Plaintiff and each member of the Class, defined below, were employees of Defendants under the FLSA and applicable state wage and hour laws.

27.    Upon information and belief, during the relevant time period over 500 different women have worked as exotic dancers at the Déjà Vu Affiliated Nightclub without being paid any minimum wages while also being denied the rights and benefits of an employee.

28.    At all relevant times, Defendants, directly or indirectly, exercised significant control over the wages, hours, and working conditions of the Plaintiff and similarly situated members of the Class.

29.    During the relevant time period, the employment terms, conditions and policies that applied to Plaintiff were the same as those applied to other Class members at Déjà Vu Affiliated Nightclub.

30.     Throughout the relevant time period, Defendants' policies and procedures regarding the classification of all exotic dancers (including Plaintiff) at the Déjà Vu Affiliated Nightclub and treatment of dance tips were the same.

31.     Plaintiff and members of the Class incurred financial loss, injury and damage as a result of Defendants' business practice of misclassifying them as independent contractors and failing to pay them a minimum wage.

32.     During the relevant time period, as no Class member received a wage from Defendants, but rather Class members generated their income solely through the monies they received from customers when they performed exotic dances or other services.

33.     All monies that Plaintiff and Class members received from customers in the performance of exotic dances or other services were tips, not wages or service fees.   These tips were given by patrons directly to workers in the Class and therefore, the tips belong to the Class members, not Defendants.

34.     The tips that workers in the Class are given by patrons in relation to exotic dances or other services they perform are not taken into Defendants' gross receipts, with a portion then paid out to the workers.  Defendants do not issue W-2 forms, 1099 forms or any other documents to Class members

indicating any amounts being paid from their gross receipts to Class members as wages.

35.     Plaintiff and members of the Class are tipped employees as they are engaged in occupations in which they customarily and regularly receive more than $30 a month in tips. No tip credits offsetting any minimum wages due, however, are permitted. Therefore, as Defendants' employees, Class members are entitled to: (i) receive the full minimum wages due, without any tip credit, reduction or other offset, and (ii) to retain the full amount of any tips and monies given to them by customers when they perform exotic dances or other services.

36.     Defendants' misclassification of Plaintiff and other Class members as independent contractors was specifically designed by Defendants to deny Class members their fundamental rights as employees to receive minimum wages, to demand and retain portions of tips given to Class member by customers, and to enhance Defendants' profit margin at the expense of the Class.

37.     Defendants' misclassification of Plaintiff, and those similarly situated, was willful.

38.     Defendants knew or should have known that Plaintiff and Class members were improperly misclassified as independent contractors.

12

39.    The determining factor as to whether Plaintiff and those similarly situated are employees or independent contractors under FLSA is not the workers' election, subjective intent or any contract. *Rutherford FoodCorp. v. McComb*, 331 U.S. 722, 727 (1947). Rather, the test for determining whether an individual is an "employee" under the FLSA turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or rather is economically dependent upon finding employment in others.

40.    Any contract which attempts to have workers in the Class waive, limit or abridge their statutory rights to be treated as an employee under FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable and contrary to public policy.

41.    Workers in the Class cannot "elect" to be treated as employees or independent contractors under threat of adverse treatment. Nor can workers in the Class agree to be paid less than the minimum wage.  Despite this, Defendants unfairly, unlawfully, fraudulently and unconscionably attempt to coerce workers in the Class to waive their statutory rights and elect to be treated as independent contractors.

42.    Under the applicable test, courts utilize several factors to determine economic dependence and employment status. They are: (i) the

13

degree of control exercised by the alleged employer, (ii) the relative investments of the alleged employer and employee, (iii) the degree to which the employee's opportunity for profit and loss is determined by the employer, (iv) the skill and initiative required in performing the job, (v) the permanency of the relationship, and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.

43.     The totality of circumstances surrounding the employment relationship between Defendants and the Class members establishes economic dependence by the Class on Defendants and employee status. Here, Plaintiff and all other Class members are not in business for themselves and truly independent, but rather are economically dependent upon finding employment with Defendants. The Class members are not engaged in occupations or businesses distinct from that of Defendants. To the contrary, the Class members are the basis for Defendants' business.

44.     Defendants obtain the customers who seek out exotic dance entertainment and Defendants provides the workers who conduct the exotic dance services on behalf of Defendants. Defendants retain pervasive control over the Nightclubs' operation as a whole, and the Class members' duties are an integral part of the operation.

45.    Defendants and their affiliated companies, were aware of and/or the subject of previous litigation and enforcement actions relating to wage and hour law violations.

### a.    Degree of Control Exercised by Defendants

46.    Plaintiff and the other Class members do not exert control over any meaningful part of Déjà Vu Affiliated Nightclubs and do not stand as a separate economic entity from Defendants. Defendants exercise control over all aspects of the working relationship with Plaintiff and the other Class members in the nightclubs.

47.    Plaintiff and Class members' economic status is inextricably linked to conditions over which Defendants have complete control including but not limited to, advertising and promotion, the atmosphere and surroundings at the club, the flow of customers into the club, the customer volume, and the atmosphere at each of the nightclubs.

48.    Defendants employ guidelines and rules dictating the way in which Class members must conduct themselves while working including setting the hours of operation; method of sign in; length and time of shifts; the show times during which a dancer may perform; rotation for dancers performing onstage; the format of dancers' performances, including approval of wardrobe; and the cost and specials of the dances each dancer performs.

15

49.    Defendants control the conduct of dancers while at work, including how dances are to perform and requiring dancers to be mingle with patrons in a manner which supported Defendants' general business plan.

50.    Defendants require every Class member to pay $10 per shift to the club in order to work the shift.

51.    Dancers can either be "on schedule," which means that Defendants have them on the schedule at least three days a week and have set hours to be at the club, or dancers can join a shift.  If a dancer joins a shift, then Defendants require her to stay at least 5 hours for the shift.

52.    Defendants require every Class member who is on the schedule to pay 35% of the dancer's total dance earnings to the club.  Defendants require every Class member who joins a shift to pay 50% of the dancer's total dance earnings to the club.  The money from these dances are the Class member's only payment.  If a dancer did not sell a dance during a shift, then often the dancer was not paid anything during that shift.

53.    Defendants also require every Class member to pay pre-determined "tip-outs" to non-tipped employees such as Disc Jockeys in amounts of about 10% of total earnings per night, in addition to the 35-50% already paid to the club.

16

54.    Defendants require that Class members schedule work shifts totaling at least one shift three days per week and/or Defendants require the dancers to be at a shift for a minimum 5 hours per shift. If a dancer is late or absent for a shift or late or does not appear timely for her dance onstage, a dancer is subject to a monetary fine which must be paid at the end of the shift. These fines are also charged if a dancer takes a break during the shift or leaves the floor during a shift.

55.    After signing in for each shift, the dancer is required to complete the entire shift and is not permitted to leave early.  In the event the dancer leaves a shift early, she is subjected to a monetary fine which must be paid at the beginning of her next shift.

56.    One element of a dancer's job includes performing private exotic dances, but Defendants establish the prices of each dance and establish the daily specials for those prices.  Class members have no control over the price of the dance, and Defendants can change the price of the dance at any time.

57.    The totality of circumstances surrounding the employment relationship between Defendants and the Class members establishes economic dependence by the Class on Defendants and employee status.  Here, Plaintiff and all other Class members are not in business for themselves and are not truly independent, but rather they are economically dependent upon

17

finding employment with Defendants.   The Class members are not engaged in occupations or businesses distinct from that of Defendants.   Rather, their work is the basis for Defendants' business.

58.   Defendants obtain the customers who desire exotic dance entertainment and provide the workers who conduct the exotic dance services on behalf of Defendants.   Defendants retain pervasive control over the nightclub operation as a whole, and the Class members' duties are an integral part of the operation.

**b.   Facts Establishing No Skill and Initiative of a Person in Business for Themselves**

59.   Plaintiff and all Class members do not exercise the skill and initiative of a person in business for themselves.

60.   Plaintiff and all Class members are not required to have any specialized or unusual skills to work and the skills utilized in performing exotic dances are commensurate with those exercised by ordinary people.

61.   Plaintiff and all other Class members do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of independent contractors as they own no enterprise, nor do they maintain a separate business structures or facilities.

62.     Class members have no control over customers, nor do they actively participate in any efforts to increase Déjà Vu Affiliated Nightclub's client base, profit, or to improve business in any capacity.

63.     The dancers own initiative is limited to her wardrobe which is itself subject to Defendants' final approval and how provocatively to dance, actions both of which are consistent with the status of an employee opposed to an independent contractor.

64.     Plaintiff, like other Class members, is not permitted to hire or subcontract other qualified individuals to provide additional dances to patrons, and increase their revenue, as an independent contractor in business for herself would have the authority to do.

**c.     Facts Establishing Relative Investment**

65.     Plaintiff's relative investment is minor when compared to the investment made by Déjà Vu Affiliated Nightclub.

66.     Plaintiff make no financial investment in the facilities, advertising, maintenance, sound system and lights, food, beverage and other inventory, or staffing of Déjà Vu Affiliated Nightclub. All capital investment and risk belongs to Defendants.

67.     Defendants set the price and promotional values of the dances that the Class members perform.

19

68.   The Class members' investment is limited to expenditures on wardrobes and make-up, which is submit to Defendants' approval.   Absent Defendants' investment and provision of the club work environment, the Class members would not earn anything.

**d.   Facts Establishing Opportunity for Profit and Loss**

69.   Defendants manage all aspects of the business operation including but not limited to attracting investors, maintaining the premises, establishing the hours of operation, setting the atmosphere, coordinating advertising, hiring and controlling the staff, and setting the prices and specials for the different dances offered. Defendants provide all necessary capital to open and operate the business.

70.   Neither Plaintiff nor the Class have responsibility for any aspect of Defendants' ongoing business risk.   Defendants, not Plaintiff, secure all financing, the acquisition and/or lease of the physical facility and equipment, inventory, the payment of wages (for managers, bartenders, doormen, and waitresses).   Defendants alone are responsible for securing all necessary and appropriate insurance and licenses.   Defendants set the minimum dance tip and other tip amounts that should be collected from patrons and establish the tip splitting policy for dances performed in the VIP rooms.

**e.   Facts Establishing Permanency**

20

71.    Plaintiff and certain Class members have worked at Déjà Vu Affiliated Nightclub for a significant period of time, some for 5 years or more.

**f.    Facts Establishing Class Members are Integral Part of Employer's Business**

72.    Plaintiff and Class members are critical to the success of Defendants and their very operation is wholly dependent on the existence of exotic dances being provided by dancers for patrons.

73.    The primary "product" or "good" Defendants are in business to sell consists of dances performed by the exotic dancers in the Class.  Other goods sold by Defendants include drinks and food, which are served to patrons by the wait staff and bartenders.

74.    Members of the Class, like Plaintiff, are economically dependent on Defendants and subject to significant control by Defendants.

75.    Plaintiff and members of the Class were misclassified as independent contractors and should have been paid minimum wages at all times they worked and additionally should have been afforded all rights and benefits of an employee under federal and state wage and hour laws.

**g.    Facts Establishing Defendants' Acts were Willful**

76.    All actions and agreements by Defendants described herein were willful, intentional and not the result of mistake or inadvertence.

21

77.   Defendants were aware that the FLSA and state wage and hour laws applied to their business at all relevant times and that the dancers were misclassified as independent contractors under those laws.

78.   Defendants and their affiliated companies, were aware of and/or the subject of previous litigation and enforcement actions relating to wage and hour law violations where the misclassification of exotic dancers as independent contractors was challenged.

79.   Exotic dancers working under conditions similar to those employed at Defendants have been determined to be employees under the wage and hour laws, not independent contractors.

80.   Defendants were aware, and had actual or constructive notice, that applicable law rendered all tips given to class members by patrons when working were the dancer/Class member's sole property, rendering Defendants' tip-share, and tip-out scheme to be unlawful.

81.   Despite this notice of their violations, Defendants intentionally chose to continue to misclassify dancers like Plaintiff, withhold payment of minimum wages and require dancers to split their tips with Defendants and their employees, to them in effort to enhance their profits. Such conduct and agreements were intentional, unlawful, fraudulent, deceptive, unfair and contrary to public policy.

## INJURY AND DAMAGE

82.    Plaintiff and all Class members suffered injury, were harmed, incurred damage, and financial loss as a result of Defendants' conduct complained of herein.

83.    Plaintiff and the Class were entitled to minimum wages and to retain all of the dance tips and other tips they were given by patrons. By failing to pay Plaintiff and the Class minimum wages and interfering with their right to retain all of the dance tips and other tips they were given by patrons, Defendants injured Plaintiff and the members of the Class and caused them financial loss, harm, injury and damage.

## COLLECTIVE ACTION ALLEGATIONS

84.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of all similarly situated current and former workers of Defendants who were subject to Defendants' misclassification scheme at any time during the last three years.

85.    A collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the workers described as parties to the Complaint are "similarly situated" to the named Plaintiff.

86.    The workers Plaintiff seeks to represent in this case includes:

*All exotic dancers who worked for Defendants and were misclassified by Defendants as independent contractors at any time in the past three years.*

87.    The putative Class members are similarly situated to the named Plaintiff because they worked in the same or similar positions, subjected to the same unlawful practice, policy, or plan, and their claims are based upon the same factual and legal theories.

88.    The working relationships between Defendants and every putative Class member are exactly the same and differ only in name, location, exact job duties, and rate of pay.  The key legal issue in the collective action–– whether Defendants' classification policy and practice violates the FLSA–– does not vary substantially from Class member to Class member.

89.    Plaintiff estimate that the putative Class, including both current and former workers over the relevant period, will include over 500 members. The precise number of Class members should be readily discernible from a review of Defendants' records.

### CLASS ACTION ALLEGATIONS

90.    Plaintiff brings this action as a class action pursuant to Rule of Civil Procedure 23.

91.    All requirements of Federal Rule of Civil Procedure 23 are satisfied to maintain a class action.    The Class to be certified against Defendants is defined as follows:

> *All exotic dancers who worked for Defendants and were misclassified by Defendants as independent contractors at any time in the past three years.*

92.    The individuals in the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members has not been determined at this time, upon information and belief, Defendants have employed in excess of 500 Class members at Defendants' nightclubs during the relevant time period.   The Class representatives and members of the Michigan Rule 23 Class have been equally affected by Defendants' violations of law.

93.    There are questions of law and fact common to the Class that predominate over any questions affecting individual members, including, but not limited to:

(a) Whether Defendants violated the FLSA other applicable wage and hour laws by classifying all exotic dancers or other workers as "independent contractors," as opposed to employees, and not paying them any minimum wages;
(b) Whether the monies given to dancers or other workers by patrons when they perform dances are gratuities;
(c) Whether Defendants unlawfully required Class members to split their tips with Defendants and Defendants' employees;

(d) Whether Defendants are joint employers of the dancers or other workers in the Class;

(e) Whether Defendants agreed and conspired to deny class member their rights under the wage and hour laws;

(f) Whether Defendants failed to keep required employment records;

(g) The amount of damages, restitution, and/or other relief (including all applicable civil penalties, liquidated damages and equitable relief available which Plaintiff and the Class are entitled to; and

(h) Whether Defendants should be enjoined from such violations in the future.

94.     The Class representative's claims are typical of those of the Class. Plaintiff, like other members of the Class, were subjected to Defendants' policies and willful practices of refusing to pay a minimum wage; unlawfully requesting, demanding, and receiving wages; unlawfully demanding and accepting gratuities and retaining a part of gratuities; and  unlawfully deducting employees' wages through fines and penalties for lateness and misconduct.  The Class Representative and members of the Rule 23 Class have sustained similar injuries as a result of the Defendants' actions.

95.     The Class representatives are adequate representatives of the Class.  The Class representatives have retained counsel experienced in complex wage and hour cases and collective action litigation.

96.     Plaintiff are members of the Class. Given Plaintiff's injury and loss, Plaintiff are committed to the prosecution of this action for the benefit of the Class.

26

97.    Plaintiff have no interest that would cause them to act adversely to the best interests of the class action litigation. This action is maintainable as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants.

98.    This action is maintainable as a class action because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class and because a class action is superior to other methods for the fair and efficient adjudication of this action.

99.    The Class representatives intend to send notice to all members of the Michigan Rule 23 Class to the extent required by Fed.R.Civ.P.

### COUNT I – VIOLATION OF THE FLSA
### (Failure to Pay Statutory Minimum Wages)
### (Against all Defendants)

100.   Plaintiff hereby incorporate all of the preceding paragraphs.

101.   This claim arises out of Defendants' willful violation of the Fair labor Standards Acts, 29 U.S.C. Sec. 201, et seq., for failure to pay a minimum wage to Plaintiff Doe and members of the FLSA Collective to which they were entitled.

102.   At relevant times, all Defendants jointly employed Plaintiff and all members of the FLSA collective within the meaning of the FLSA.

103.   At all relevant times, Defendants have been engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. Sec. 201.

104.   The minimum wage provisions of the FLSA, 29 USC 201 et seq., apply to Defendants and protect Plaintiff and members of the FLSA Collective.

105.   The minimum wage provisions of the FLSA, 29 U.S.C. § 201, et seq, apply to Defendants and protect Plaintiff and the FLSA Collective.

106.   Plaintiff has consented in writing to be a part of this action, pursuant to 29 U.S.C. § 216(B).  As this case proceeds, it is likely that other individuals will sign consent forms and join as Plaintiffs.

107.   Pursuant to 29 U.S.C. § 206, Plaintiff and the FLSA Collective were entitled to be compensated at the rate of $7.25 per hour.

108.   29 U.S.C. § 207(a) provides in pertinent part:

> ... no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

28

109.  Defendants failed to pay Plaintiff and members of the FLSA Collective the minimum wages set forth in 29 U.S.C. §206, or any wages whatsoever.

110.  Defendants failed to pay members of the Collective a minimum wage throughout the relevant time period because Defendants intentionally misclassified them as independent contractors.

111.  The amounts paid to Class members and the FLSA Collective, by patrons in relation to private dances or other services performed were tips, not wages. Those tips were not the property of Defendants. The entire amount collected from patrons in relation to table dances performed by exotic dancers or for other services provided was not made part of any Defendants' gross receipts at any point.

112.  As a result, the amounts paid to Class/Collective members by patrons in relation to private table dances were tips, not wages or service fees, and no part of those amounts can be used to offset Defendants' obligation to pay Class/Collective members' minimum wages due. *See Hart v. Rick's Cabaret, Int'l,* 2013 U.S. Dist Lexis 129130 (S.D.N.Y. Sept. 10, 2013) *e.g., Reich v. ABC/York-Estes Corp.*, 157 F.R.D. 668, 680 (N.D.Ill. 1994), rev'd on other grounds, 64 F.3d 316 (7th Cir. 1995); *Reich v. ABC/York-Estes Corp.,* 1997 WL 264379 at *5-7 (N.D.Ill. 1997).

113.  Further, no tip credit applies to reduce or offset any minimum wages due. The FLSA only permits an employer to allocate an employee's tips to satisfy a portion of the statutory minimum wage requirement provided that the following conditions are satisfied: (1) the employer must inform the tipped employees of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m); and (2) tipped employees must retain *all the tips* received except those tips included in a tipping pool among employees who customarily receive tips. 29 U.S.C. § 203(m).

114.  Neither of these conditions was satisfied. Defendants did not inform Class/Collective members of the provisions of § 3(m) of the FLSA, 29 U.S.C. § 203(m); and Plaintiff did not retain all the tips received except those tips included in a tipping pool among non-tipped employees. 29 U.S.C. § 203(m).

115.  Defendants did not notify any Class/Collective members that their tips were being used to reduce the minimum wages otherwise due under FLSA's tip credit provisions and that they were still due the reduced minimum wage for tipped employees because Defendants maintained as a business strategy that Class/Collective members were not due a minimum wages due to their classification as independent contractors.

30

116. Defendants' requirement that Class/Collective members split their tips and, pay Defendants a portion of all dance tips and to pay a "tip-out" to other employees who do not customarily receive tips, such as bouncers, house moms and disc jockeys was not part of a legally permissible or valid tip pooling or tip sharing arrangement.

117. Based on the foregoing, Plaintiff and the Class/Collective are entitled to the full statutory minimum wages set forth in 29 U.S.C. §§ 206 and 207 for all periods in which Plaintiff worked at Déjà Vu Affiliated Nightclub, along with all applicable penalties, liquidated damages, and other relief.

118. Defendants' conduct in misclassifying Class members as independent contractors was intentional and willful and done to avoid paying minimum wages and the other benefits that Plaintiff and the Class were legally entitled to receive.

119. Plaintiff Doe on behalf of herself and the FLSA collective seeks damages in the amount of their respective unpaid wages, liquidated damages as provided by 29 U.S.C. § 216(b) interest, and such other legal and equitable relief as the Court deems proper.

120. Plaintiff Doe on behalf of herself and the FLSA Collective seeks recovery of attorney fees and costs incurred in enforcing her rights pursuant to 29 U.S.C. §216(b).

31

121.  12 U.S.C. §211(c) provides in pertinent part:

(c)    Records

Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

122.  29 C.F.R. § 516.2 and 29 C.F.R. § 825.500 further require that every employer shall maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

123.  To the extent Defendants failed to maintain all records required by the aforementioned statutes and regulations, and fail to furnish Plaintiff and FLSA Collective comprehensive statements showing the hours that they worked during the relevant time period, it also violated the aforementioned laws causing Plaintiff damage.

124.  When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-688 66 S.Ct. 1187 (1946) is controlling. That rule states:

32

...where the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

125.   The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with ... the Act." *Id.*

126.   Based on the foregoing, Plaintiff seeks unpaid minimum wages at the required legal rate for all working hours during the relevant time period, back pay, restitution, damages, reimbursement of any base rent and tip-splits, liquidated damages, prejudgment interest calculated at the highest legal rate,

attorneys' fees and costs, and all other costs, penalties and other relief allowed by law.

### COUNT II – VIOLATION OF THE MICHIGAN MINIMUM WAGE LAW, M.C.L. M.C.L. § 408.411, *et seq.*
### (Failure to Pay Statutory Minimum Wages and Unlawful Tip Splitting)
### (Against All Defendants On Behalf of the Class)

127.   Plaintiff hereby incorporates all of the preceding paragraphs by reference as if fully set forth herein.

128.   At relevant times, in addition to the FLSA, Plaintiff and all members of the Class were employees of the Defendants within the meaning of applicable state wage and hour laws mandating the payment of minimum wages including the Michigan Workforce Opportunity Wage Act, MCL § 408.411 *et seq.* ("MWOW").

129.   At all relevant times, all Defendants were the employers of Plaintiff and all members of the Class within the meaning of the applicable state wage and hour laws.

130.   Defendants were joint employers of Plaintiff and the Class, along with any other nominal owners of Déjà Vu Affiliated Nightclub.

131.   Defendants failed to pay Plaintiff and the Class required minimum wages for the time they spent working at Déjà Vu Affiliated Nightclub.

132. Defendants paid no Class members any wages at any time. Instead, Defendants unlawfully charged Class members money to work by taking a portion of their tips, charging "rent," or collecting fines and penalties, among other things.

133. Defendants were required to pay all employees minimum wages under the state wage and hour laws, in addition to the FLSA.

134. In applicable circumstances, employers like Defendants must pay premium or overtime rates when employees work beyond specific daily or weekly limits.

135. Any amount paid directly by a patron to a Class member is a gratuity or tip belonging solely and entirely to her. All amounts paid to Class members by customers in relation to dances, goods sold and other work performed while working at Déjà Vu Affiliated Nightclub were tips and gratuities, not wages or service fees; belong solely to the Class member; and cannot be used to offset Defendants' obligation to pay them minimum wages.

136. Defendants' conduct requiring Class members to split their tips and pay "rent" constituted unlawful tip splitting, which injured class members.

137. Defendants failed to pay Plaintiff or any other member of the Class any minimum hourly wages for their labor during the relevant time period.

Rather, Defendants systematically misclassified all dancers in the Class as independent contractors, as opposed to employees, so as to attempt to avoid paying Class members any wages and other benefits due employees. All unpaid wages must now be paid to the Class, along with other relief appropriate under the circumstances.

138.   Pursuant to MWOW, Defendants were required to pay the Plaintiff and the Class a minimum wage for the past three years of $7.40 per hour for all hours worked before September 1, 2014, and a minimum wage of $8.15 for all hours worked after September 1, 2014, and $8.50 for all hours worked after January 1. 2016.

139.   Defendants, pursuant to their policies and practices, refused and failed to pay a minimum wage to the Class Representatives and the members of the Class.

140.   By failing to pay a minimum wage to the Class Representatives and members of the Class, Defendants violated, and continue to violate, their statutory rights under MWOW.

141.   The forgoing conduct, as alleged, constitutes a willful violation of the MWOW.

142.   Class Representative, on behalf of herself and the members of the Class, seeks damages in the amount of their respective unpaid wages,

36

reasonable attorney's fees and costs of the action, interest, and such other legal and equitable relief as the Court deems proper.

143.   To the extent Defendants failed to maintain complete records regarding each Class member's employment, including hours worked and any deductions from wages, Defendants violated applicable state wage and hour laws.

144.   By reason of the foregoing, Defendants violated state wage and hour laws, and any result, members of the Class were injured, damaged, harmed and incurred financial loss.

145.   None of the provisions of the state wage and hour laws can be contravened, set aside abrogated, or waived by Class members.

146.   As a result of the foregoing conduct, Plaintiff seeks on behalf of themselves and all members of the Class unpaid minimum wages at the required legal rate for all of their working hours during the relevant time period; all other damages; attorneys' fees and costs; restitution; liquidated damages; penalties; injunctive relief; interest calculated at the highest legal rate; and all other relief allowed by law, including applicable attorneys' fees and costs.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, on behalf of the Class, prays for an order for relief as follows:

a.  That all Defendants be found jointly and severally liable to Plaintiff and the Class/Collective;

b.  For a declaration that Defendants violated the rights of Plaintiff and the Class/Collective under applicable law;

c.  For nominal damages;

d.  For compensatory and actual damages;

e.  For restitution of all monies due Plaintiff and the Class/Collective and disgorged profits from the unlawful business practices of Defendants;

f.  For all back pay, unpaid wages, and a refund of all tips, "rent", tip-outs, fines and other amounts paid by Plaintiff and members of the Class to Defendants and their employees;

g.  For all statutory damages, liquidated damages, civil penalties, and/or other relief allowed by federal and state wage and hour statutes and regulations and/or other laws;

h.  For accrued interest;

i.  For an order certifying Count 1 as a collective action under 28 U.S.C. 216(b), and Count II as a class action under Fed.R.Civ.P. 23;

j.   For costs of suit and expenses incurred herein, including reasonable attorneys' fees allowed under any relevant provision of law or equity, including the FLSA; and

i.   For any and all other relief that the Court may deem just, proper and equitable in the circumstances.

## JURY DEMAND

Plaintiff reserves their right to and hereby request a trial by jury.

Respectfully submitted,

Pitt McGehee Palmer & Rivers, P.C.

By: */s/ Rachael E. Kohl P78930*
Rachael Kohl (P78930)
Attorney for Plaintiffs
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
248-398-9800
248-398-9804 Fax
rkohl@pittlawpc.com

Dated:  March 9, 2016