# Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE 1, individually and on behalf
of all others similarly situated,

v.

Case No. 1:16-cv-10877-TLL-PTM
Hon. Steven J. Murphy III

DÉJÀ VU SERVICES, INC., f/k/a
DÉJÀ VU CONSULTING, INC., a
Michigan Corporation; DV SAGINAW,
LLC., a Michigan Limited Liability
Company, d/b/a DÉJÀ VU SHOWGIRLS;
HARRY MOHNEY, an individual

    Jointly and severally,

    Defendants.

_____/

## DECLARATION OF MEGAN BONANNI

    I, Megan Bonanni, declare as follows:

1.    I am an equity partner of the law firm of Pitt McGehee Palmer & Rivers, P.C. ("PMPR"), and Plaintiffs' counsel herein. PMPR is an 8-attorney firm based in Royal Oak, Michigan, the largest firm representing workers as plaintiffs in employment-related matters, including claims based upon individual and class-wide violations of state and federal wage and hour laws.

2.    I have been involved in this case from the beginning and I have personal knowledge of the events and facts described herein. I am over the

age of 21, and could, if called to testify, attest to the events and facts described below.

3. With lawyers from Sommers Schwartz, I am one of the lawyers responsible for prosecuting Plaintiffs' claims on behalf of the proposed class.

**Firm Background**

4. PMPR has significant experience prosecuting class actions, including wage and hour class and collective actions such as this one.

5. Since the founding of Pitt McGehee Palmer & Rivers, P.C., the firm has represented employees in class actions, including claims of unpaid overtime and minimum wage claims in both individual cases and collective & class actions in Michigan and across the United States. The firm is highly experienced in class action litigation.

6. Courts have repeatedly found PMPR to be adequate class counsel in class actions and wage and hour class actions.

7. My partners and I continue to be appointed as class counsel or co-class counsel in numerous cases on the basis of our experience as employment lawyers with excellent reputations:

> *Neal, et al. vs. Michigan Department of Corrections, Washtenaw County Circuit Court, Case No. 96-6986-CZ*
>
> *Cunningham vs. Electronic Data Systems Corp., S.D.N.Y, Case No. 06-cv-03530*

2

*Steavens vs. Electronic Data System Corp., S.D.N.Y., Case No. 08-cv-10409*

*Joyella vs. Angel Healthcare Private Duty Nursing, et al., U.S.D.C., Case No. 10-13362*

*Chris Wright et al vs. Flagstar Bank FSB et al, Case No. 13-15069*

*Gilford, et al vs. Detroit Edison, Wayne County Circuit Court, Case Nos. 93-333296-NO, 97-706639-NO*

*James Abner et al vs. Saginaw County, U.S.D.C. Case No. 05-cv-10323*

*Jane Does 1-3 vs. The Coliseum et al, U.S.D.C., Case No. 13-14492*

*Applebaum et al vs. MGM Grand Detroit, LLC, U.S.D.C., Case No. 14-13005*

*Dallas et al vs. Alcatel-Lucent, U.S.D.C., Case No. 09-14596*

*Jones et al. vs. The Goodyear Tire & Rubber Co., Court of Common Pleas Ohio, Case No. CV-2002-09-5090*

*Copher v. Motor City Auto Transport Inc. et al, Macomb County Circuit Court, Case No. 2015-2500-CK*

*Halabicky, et al vs. University of Michigan, U.S.D.C., Case No. 08-cv-10065*
*Thompson et al vs. City of Flint et al, U.S.D.C., Case No.:4:07-cv-11107*

*Aleobua et al v. Micholding, Inc. et al, U.S.D.C., Case No. 14-12932*

8. I am an experienced trial attorney and member of the bar of the U.S. District Court for the Eastern District of Michigan since 1994. My practice concentrates on complex civil litigation including class actions and collective actions under the FLSA. Additionally, I have lectured in the past at seminars sponsored by the Labor and Employment Section of the Michigan Bar, Michigan

3

Employment Lawyers (MELA), Institute of Continuing Legal Education and the ABA. I have also been recognized by SuperLawyers, Best Lawyers in America, Crain's Detroit Business, The American Lawyer and Who's Who in North America as one of the leaders in the field of employment litigation.

9. I am on the Board of Directors for the Michigan Trial Lawyers Association (MTLA) as well as the Institute for Continuing Legal Education.

10. I am a graduate of the Wayne State University Law School with an undergraduate degree with honors from Kalamazoo College.

11. I have been admitted to the Michigan Bar since 1994 and am also admitted to the Sixth Circuit Court of Appeals.

12. This Declaration is filed to support representations and facts submitted to the Court as to: the complexities of this litigation and the events leading up to the settlement; the difficulties and risks that this case entailed; the benefits of the settlement; that the Settlement Agreement and Exhibits are fair, reasonable, and adequate to the class and should be approved under Rule 23 of the Federal Rules of Civil Procedure; that the form of the notice of settlement and the method of disseminating the notice to the Class, as described in the Settlement Agreement and Exhibits thereto, and accomplished by the parties, fully satisfy the requirements of Fed.R.Civ.P. 23 and the requirements of due process; the ongoing efforts of plaintiffs' counsel to effectuate the

settlement; the reasonableness of the work performed, time spend and hourly rates of plaintiffs' counsel; the adequacy of the class representatives and appropriateness of the requested plaintiff class representative incentive awards; and other related matter, all in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

**The Terms of the Settlement Agreement**

13. The case was filed on March 10, 2016 alleging that Déjà vu affiliated nightclubs violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq* ("FLSA") and state common law.

14. The parties engaged in initial discovery efforts, including the exchange of pertinent business records, policies and data related to Defendants' employment practices. However, since summer 2016 the parties have focused their efforts on settlement discussions, all of which have been centered on a nationwide settlement.

15. I participated in settlement discussions over the course of six months wherein the parties discussed the various components of a nationwide resolution of claims including: (1) all pending lawsuits; (2) resolution of PAGA claims; (3) scope and nature of an enhanced offer or employment; (4) as to use, effect and negotiation of the Entertainer Assessment form, including appeal of results; (5) exploring the actual costs to the Clubs of converting dancers to

employees under existing business models; (6) obtaining review of the injunctive relief by a labor and FLSA attorney (Bob DeRose); (7) determining added worker protections; (8) negotiating cash payment option and details of allocation to each entertainer; (9) negotiating rent credit option and tiers of credits; and (10) negotiating release language.

16. In addition to the above, extensive client interviews were conducted on all aspects of settlement terms and related issues, including exploring mechanisms for incorporating various employee protections into the settlement. In addition to client interviews, settlement efforts also incorporated consultations with labor experts, as professionals within the Gentlemen's Club industry and union activists to determine and explore non-economic employment protections that could be incorporated as part of any settlement.

17. In addition, the parties were focused on pending motions and the likelihood of Supreme Court certiorari petitions on arbitration clauses and class action waivers; PAGA rulings; and class certification.

18. The parties efforts culminated only recently, and the parties converted the January 30th status conference to advising the Court of the settlement.

19. Additional work was required by the parties, including: (1) finalizing the Motion for Preliminary Approval and all Exhibits and the actual Settlement Agreement in light of the final negotiations.

20. Once approved, the regular work will also continue, including administration of the settlement and court appearances; answering client calls and responding to objections, if any.

21. Counsel for the parties will also be overseeing the roll out of the new settlement program, including a possible training video and Entertainer Assessment form. In addition, the year-long dancer and rent credit benefit will require oversight and time.

### A. Reasonableness of Settlement, Fee Requests, Expense Reimbursement and Incentive Awards

22. The details of the settlement are set forth in the parties Joint Motion for Preliminary Approval of Settlement. While the final structure of the settlement is clearly set forth in the motion, the complexities that the parties encountered in reaching this settlement were significant, to say the least. I can attest to the numerous complications that arose each step of the way in determining how to best confer the benefits being negotiated to class members under the unique situations of Defendants' operation, the professional entertainer industry itself and in a fair in reasonable manner to both past and

current dancers. I can further attest to the level of effort, expertise, dedication and creativeness of both plaintiffs and defense counsel in making sure that the current settlement was fair, reasonable and adequate to both sides. Had those efforts not occurred, and the hurdles and obstacles overcome, this case, and the national settlement, would never have been reached.

23. Of particular significance in this settlement, and as relayed to the Court on January 30th, this settlement produced a unique and first-of-a-kind remedy in the Entertainer Assessment and Enhanced offer of Employment. For all the prior efforts by all the previous litigations, no one has been able to achieve that remedy – one that goes to the heart of the classification problem in the gentleman's club industry. This is a significant step in the direction of ending the problem for the over 50,000 class members and 64 Defendant Affiliated Clubs.

24. As class counsel, I have reviewed all of the time and expenses and can attest that they are reasonable as to both the hourly rate, time spent, work allocation and totals, as well as being absolutely necessary to reach the settlement in this case. Much more work lies ahead. All Plaintiff's counsel diligently worked to avoid duplication of efforts and expenses, while at the same time not sacrificing work quality on behalf of the class. The settlement obtained in this litigation were directly affected by the efforts and expenses

advanced by Plaintiff's counsel, and only those counsel, in this lawsuit. Based on my review of the time and effort, and costs advanced, the attorneys' fee provisions are in line, or below, amounts customarily expended and awarded to class counsel in similar cases.

25. The class representatives all worked diligently to assist Plaintiff's counsel in their activities during the pendency of this litigation. The requested amounts for incentive awards are commensurate with other incentive awards I have been involved in nationally and as documented by Sixth Circuit research of other similar awards, and is reasonable under the circumstances. Furthermore, the proposed allocation of the incentive awards is also fair and reasonable.

26. The proposed release by the class was extensively scrutinized and negotiated by the attorneys involved in this litigation. It represents a fair compromise and constitutes a fair negotiated bargain for release of claims that arise from the facts as alleged in the Second Amended Complaint. The class representatives have all consented to the release, as well as the settlement agreement and have been afforded full access to Plaintiff's counsel, and have agreed to sign the settlement and release.

**Settlement Notice and Planed Administration**

27. Plaintiff's class will retain the professional services of a nationally acclaimed settlement administrator familiar to class counsel. Class Notice was selected in conformity with the FJC approved class notice format. Use of a website and emails will further promote notice to class members. The notice and notice plan is consistent with the requirements of Rule 23 and national standards.

**Conclusion**

28. In the face of all the obstacles stated above by way of contested issues, through extensive discovery, consultants, witness depositions, and after lengthy settlement negotiations, in my opinion, the settlement before the court of $6,500,000.00 is adequate, fair and reasonable. The settlement achieved substantial benefit for the class, represents finality to a long-standing wage and hour problem facing the dancers of the defendant clubs and avoids stretching adversary proceedings years into the future, let alone the uncertainties of additional motions, trials and appeals. Ultimately the above process produces a monetary remedy when there was none before. If not for this case, the class representatives' and the Plaintiffs' attorneys' efforts, there would be no nationwide settlement, $6,500,000 settlement fund or injunctive relief.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

By: /s/ Megan A. Bonanni
Megan A. Bonanni (P52079)

Subscribed and sworn to before me this 2nd day of February, 2017.

/s/ Regina V. Bell
Regina V. Bell, Notary Public
Oakland County, Michigan
(Acting in Oakland County)
My Commission Expires: 1/4/2022