Exhibit 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE 1, individually and on behalf
of all others similarly situated,

     Plaintiff,

vs.

DÉJÀ VU SERVICES, INC., f/k/a
DÉJÀ VU CONSULTING, INC., a
Michigan Corporation, DV SAGINAW,
LLC., a Michigan Limited Liability
Company, d/b/a DÉJÀ VU SHOWGIRLS;
HARRY MOHNEY, an individual,
jointly and severally,

     Defendants.

Case No. 1:16-cv-10877-TLL-PTM
Hon. STEPHEN J. MURPHY, III

---

## DECLARATION OF JASON J. THOMPSON

After being duly sworn, I Jason J. Thompson hereby state:

1.    I am a partner at and the Chairperson of the Sommers Schwartz complex litigation department. My credentials and our firm's complex litigation department bio is attached to this declaration as Exhibit A.

2.    I have been involved in this case from the beginning and I have personal knowledge of the events and facts described herein. I am over the age of 21, and could, if called to testify, attest to the events and facts described below.

3.     I previously served as Class Counsel pursuant to court order in the prior related case, *Doe v CIN-LAN, Inc.*, Case No 08-cv-12719.

4.     This Declaration is filed to support representations and facts submitted to the Court as to: the complexities of this litigation and the events leading up to the settlement; the difficulties and risks that this case entailed; the benefits of the settlement; that the Settlement Agreement and Exhibits are fair, reasonable, and adequate to the class and should be approved under Rule 23 of the Federal Rules of Civil Procedure; that the form of the notice of settlement and the method of disseminating the notice to the Class, as described in the Settlement Agreement and Exhibits thereto, and accomplished by the parties, fully satisfy the requirements of Fed.R.Civ.P. 23 and the requirements of due process; the ongoing efforts of plaintiffs' counsel to effectuate the settlement; the reasonableness of the work performed, time spend and hourly rates of plaintiffs' counsel; the adequacy of the class representatives and appropriateness of the requested plaintiff class representative incentive awards; and other related matter, all in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

A.     **The Instant Litigation**

5.     The instant lawsuit is a follow on case to one originally started in this court in June, 2008.  The Court is familiar with that case and presided over the class action settlement of that matter.

6.    Extensive discovery was conducted in this litigation as set forth in more detail in Plaintiff's Motion for Final Approval.  I was personally involved in all aspects of discovery, either actually conducting the discovery or in formulating the discovery and related strategies.

7.    Plaintiff's counsel are familiar with other FLSA litigation against dancer nightclubs, including lawsuits against the Déjà Vu entities.

**B.    Settlement Efforts**

8.    Approximately one year ago, I spoke with defense counsel about the filing of the instant action.  There was no interest in settlement at that time, but I made an overture and suggested one day it might be ripe.  Defense counsel and I stayed in contact throughout the year.  By the end of summer 2016, the parties began discussing settlement, the other lawsuits and possible settlement options.

9.    The scope of the settlement discussions were always based on a national settlement.  That fact necessarily raised many complicated issues.  A face-to-face meeting was scheduled and held in Las Vegas Nevada between myself and defense counsel, where we identified several general issues and challenges, and identified the areas of agreement and disagreement that existed.

10.    The national settlement discussions became more intense after the Nevada meeting, including many meetings and time: (1) to review and discussions of other pending lawsuit claims; (2) for resolution of the PAGA claims; (3) as to use,

effect and negotiation of the Enhanced offer of Employment; (4) as to use, effect and negotiation of the Entertainer Assessment form, including appeal of results; (5) exploring the actual costs to the Clubs of converting dancers to employees under existing business models; (6) obtaining review of the injunctive relief by a labor and FLSA attorney (Bob DeRose); (7) identifying and negotiation of added worker protections; (8) charting prior FLSA class action settlement values; (9) negotiating cash payment option and details of allocation to each entertainer; (10) negotiating rent credit option and tiers of credits; (11) negotiating release language; and (12) conducting client interviews on all aspects of the possible settlement terms and related issues.

11.    In addition, the parties were focused on pending motions and the likelihood of Supreme Court certiorari petitions on arbitration clauses and class action waivers; PAGA rulings; and class certification.

12.    The parties efforts culminated only recently, and the parties converted the January 30th status conference to advising the Court of the settlement.

13.    Additional work was required by the parties, including: (1) finalizing the Motion for Preliminary Approval and all Exhibits and the actual Settlement Agreement in light of the final negotiations.

14.     Once approved, the regular work will also continue, including administration of the settlement and court appearances; answering client calls and responding to objections, if any.

15.     Counsel for the parties will also be overseeing the roll out of the new settlement program, including training video and Entertainer Assessment form.  In addition, the year-long dancer and rent credit benefit will require oversight and time.

**C.     Reasonableness of Settlement, Fee Requests, Expense Reimbursement and Incentive Awards**

16.     The details of the settlement are set forth in the parties Joint Motion for Preliminary Approval of Settlement.  While the final structure of the settlement is clearly set forth in the motion, the complexities that the parties encountered in reaching this settlement were significant, to say the least.  I can attest to the numerous complications that arose each step of the way in determining how to best confer the benefits being negotiated to class members under the unique situations of Defendants' operation, the professional entertainer industry itself and in a fair in reasonable manner to both past and current dancers.  I can further attest to the level of effort, expertise, dedication and creativeness of both plaintiffs and defense counsel in making sure that the current settlement was fair, reasonable and adequate to both sides.  Had those efforts not occurred, and the hurdles and obstacles overcome, this case, and the national settlement, would never have been reached.

17.   Of particular significance in this settlement, and as relayed to the Court on January 30th, this settlement produced a unique and first-of-a-kind remedy in the Entertainer Assessment and Enhanced offer of Employment.  For all the prior efforts by all the previous litigations, no one has been able to achieve that remedy – one that goes to the heart of the classification problem in the gentleman's club industry.  This is a significant step in the direction of ending the problem for the over 50,000 class members and 64 Defendant Affiliated Clubs.

18.   As class counsel, I have reviewed all of the time and expenses and can attest that they are reasonable as to both the hourly rate, time spent, work allocation and totals, as well as being absolutely necessary to reach the settlement in this case. Much more work lies ahead.  All Plaintiff's counsel diligently worked to avoid duplication of efforts and expenses, while at the same time not sacrificing work quality on behalf of the class.  The settlement obtained in this litigation were directly affected by the efforts and expenses advanced by Plaintiff's counsel, and only those counsel, in this lawsuit. Based on my review of the time and effort, and costs advanced, the attorneys' fee provisions are in line, or below, amounts customarily expended and awarded to class counsel in similar cases.

19.   The class representatives all worked diligently to assist Plaintiff's counsel in their activities during the pendency of this litigation. The requested amounts for incentive awards are commensurate with other incentive awards I have

been involved in nationally and as documented by Sixth Circuit research of other similar awards, and is reasonable under the circumstances. Furthermore, the proposed allocation of the incentive awards is also fair and reasonable.

20.    The proposed release by the class was extensively scrutinized and negotiated by the attorneys involved in this litigation.   It represents a fair compromise and constitutes a fair negotiated bargain for release of claims that arise from the facts as alleged in the Second Amended Complaint.   The class representatives have all consented to the release, as well as the settlement agreement and have been afforded full access to Plaintiff's counsel, and have agreed to sign the settlement and release.

**D.    Settlement Notice and Planed Administration**

20.    Plaintiff's class will retain the professional services of a nationally acclaimed settlement administrator familiar to class counsel.   Class Notice was selected in conformity with the FJC approved class notice format.   Use of a website and emails will further promote notice to class members.   The notice and notice plan is consistent with the requirements of Rule 23 and national standards.

**E.    Other Miscellaneous Matters**

21.    Attached to the Settlement Agreement are exhibits A through F, which are true and correct copies of the documents that they purport to be.

**F.     Conclusion**

In the face of all the obstacles stated above by way of contested issues, through extensive discovery, consultants, witness depositions, and after lengthy settlement negotiations, in my opinion, the settlement before the court of $6,500,000.00 is adequate, fair and reasonable.  The settlement achieved substantial benefit for the class, represents finality to a long-standing wage and hour problem facing the dancers of the defendant clubs and avoids stretching adversary proceedings years into the future, let alone the uncertainties of additional motions, trials and appeals.  Ultimately the above process produces a monetary remedy when there was none before.  If not for this case, the class representatives' and the Plaintiffs' attorneys' efforts, there would be no nationwide settlement, $6,500,000 settlement fund or injunctive relief.

_____
Jason J. Thompson

Subscribed and sworn to before me
this 2nd day of February, 2017.


_____
Wendy E. Vaughn, Notary Public
Livingston County, Michigan
My Commission expires: 12/3/18
Acting in Oakland County, Michigan

# Exhibit A




Class Action


Employment


Commercial Law & Intellectual Property


Personal Injury



## PROFILE

**Areas of Practice**
Employment
Class Action
Commercial Law & Intellectual Property
Personal Injury

### *Jason J. Thompson*

Senior Shareholder - Class Action Attorney
**Direct Dial**  (248) 415-3206
**Direct Fax**  (248) 436-8453
**Email**  jthompson@sommerspc.com

**Education**
Michigan State University College of Law, Juris Doctor cum laude, 1992
  - Law Review - Note and Comment Editor
  - Clerk, Hon. John Bruff, 16th Judicial Circuit Court of Michigan
  - Clerk, Hon. Marvin Stempien, 3rd Judicial Circuit Court of Michigan
University of Southern California, Bachelor of Arts in Economics, 1989

**Bar Admissions**
Michigan; U.S. Sixth Circuit Court of Appeals; U.S. Ninth Circuit Court of Appeals; U.S. Supreme Court

U.S District Court Admission:  Eastern District of Michigan; Western District of Michigan; District of Maryland; Northern District of Alabama; Central District of California; Northern District of California; Southern District of California; District of Colorado; Northern District of Georgia; Northern District of Illinois; Southern District of Illinois; Western District of Kentucky; Western District of Louisiana; District of Massachusetts;  District of Minnesota; Southern District of Mississippi; Northern District Missouri; Western District of Missouri; District of Nevada; Southern District of New York; Western District of North Carolina; Northern District of Ohio; Eastern District of Tennessee-Knoxville; Southern District of West Virginia; Western District of Washington

**Jason Thompson** represents clients in class action and multidistrict litigation (MDL) involving consumer protection, employment rights, and mass tort cases in federal and state courts throughout the United States. His clients include individuals as well as municipalities, healthcare plans, and unions.

Over the past 23 years, Jason has been recognized for his excellence as a trial lawyer, including selection by his peers as a Super Lawyer™, board certification by the National Board of Trial Advocacy, and an AV Preeminent Lawyer rating from Martindale-Hubbell. Jason has been appointed as class counsel and in MDL leadership positions in cases involving antitrust, overtime pay, insurance coverage, environmental pollution, and consumer protection. He has been asked to testify repeatedly before the Michigan Legislature regarding the state's pharmaceutical immunity law and amendments to qui tam provisions under Michigan's Medicaid fraud law.

In addition to his law practice, Jason writes and speaks on topics related to his practice, chairs Sommers Schwartz's Complex Litigation department, and serves on the firm's Board of Directors. He also teaches a course on class actions and MDL litigation as an Adjunct Professor at Michigan State University College of Law.

## ACCOMPLISHMENTS

Mr. Thompson has been appointed to leadership positions in a variety of complex litigation matters:

- Compressor Engineering Corp. vs. Thomas (Class Counsel)
- Lee v. Asurion Insurance Services et al. (Class Counsel)
- Gaffers v. Kelly Services, Inc. (Class Counsel)
- In Re: Blue Cross Blue Shield Antitrust Litigation MDL No. 2406 (Damages PSC Committee Member)
- Bourne v. Ansara Restaurant Group et al. (Class Counsel)
- APB Associates v. Bronco's Saloon, Inc. et al. (Class Counsel)
- Compressor Engineering Corporation v. Manufacturers Financial Corporation, et al. (Class Counsel)
- Machesney v. Lar-Bev of Howell, Inc., et al. (Class Counsel)
- Alderoty v. Maxim Healthcare Services (Class Counsel)
- Atkinson v. TeleTech, LLC (Class Counsel)
- Avio, Inc. v. Alfoccino, Inc. et al. (Class Counsel)
- Wright v. Jacob Transportation Services, LLC et al. (Class Counsel)
- Klein v. Secura Insurance Co. (Class Counsel)
- Wilson v. Maxim Healthcare Services (Class Counsel)
- Cardoza v. Bloomin' Brands Inc. et al. (Class Counsel)
- Matthews v. Convergys Corp. et al. (Class Counsel)
- Ingram v. Passmore Towing & Recovery (Class Counsel)
- Terry v. TMX Finance LLC et al. (Class Counsel)
- Ross v Jack Rabbit Services, LLC, et al. (Class Counsel)
- Lawrence v. Maxim Healthcare Services (Class Counsel)
- Stelmachers v. Maxim Healthcare Services (Class Counsel)
- Williams vs. Sykes Enterprises, Inc. (Class Counsel)
- Flores vs. Velocity Express, Inc. (Class Counsel)
- Jimenez et al vs. Allstate Insurance Company et al (Class Counsel)
- Automotive Wire Harness Systems Antitrust Litigation MDL No 2311 (Direct Purchaser PSC)
- Jackson's Five Star Catering, Inc. v John R. Beason d/b/a Tax Connection World & Tax Connection Worldwide LLC (Class Counsel)
- Exclusively Veterinary Cats Hospital, P.C. v Anesthetic Vaporizer Services, Inc. (Class Counsel)
- Northstar Education Finance, Inc. Contract Litigation MDL No. 1990 (Executive Committee)
- Stanley vs. United States Steel Corporation (Class Counsel)
- Amgen Off Label Marketing Litigation MDL No 1934 (Executive Committee)
- In Re: Neurontin Sales and Marketing MDL No. 1629 (Purchase Claims Committee)
- In Re: Vioxx Sales and Marketing MDL No. 1657 (Purchase Claims Committee)
- In Re: Bextra/Celebrex Sales and Marketing MDL No. 1699 (Purchase Claims Committee)
- In Re: Tricor (TPP Allocation Counsel)
- In Re: Zyprexa MDL No. 1596 (Purchase Claims Committee)
- Haase vs. Frank J. Bluestein, et al. (PSLRA Counsel)
- Regina vs. Comcast of Detroit, Inc. (Class Counsel)
- Snow v Atofina Chemical Inc. (Class Counsel)
- Over $16 million in client settlements for women injured by defective transvaginal mesh products
- $680,000 class action settlement involving restaurant employees who alleged they were forced to tip-out to ineligible employees and also cheated out of minimum wage
- $3.0 million class action settlement involving restaurant employees who alleged they were cheated out of minimum wage and overtime pay

- $3 million class action settlement on behalf of hourly employees at Bloomin' Brands, Inc. for violation of the Fair Labor Standards Act in failing to pay their employees all earned wages.

- $3.5 million class action settlement on behalf of Teletech home-based customer service agents who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions

- $22.5 million recovered for class of insurance policyholders in 38 states whose covered property damage claims were previously underpaid

- $7.5 million settlement in nationwide wage and hour collective action involving more than 12,000 call center employees who were not paid for their pre-shift computer login and boot-up time.

- $4.5 million settlement in nationwide wage and hour class action involving more than 20,000 at-home call center employees who were not paid for their pre-shift computer login and boot-up time and for time spent working "off-the-clock" while experiencing system downtime.

- $1.1 million settlement in nationwide wage and hour class action involving more than 1,000 at-home call center employees who were not paid for their pre-shift computer login and boot-up time and for time spent working "off-the-clock" while experiencing system downtime.

- $940,000 settlement wage and hour collective action settlement in a nationwide lawsuit against Sykes Enterprises, Inc. by approximately 4,000 call center employees who were not paid for their pre-shift computer login and boot-up time

- Wage and hour collective action settlement for $1.4 million involving call center employees. Alleged violations included logging into and out of software programs which resulted in unpaid overtime compensation.

- $11.3 million collective action settlement on behalf of exotic dancers working at a Déjà Vu gentleman's club who were not paid a minimum wage as required under the Fair Labor Standards Act (FLSA). Instead, the dancers were misclassified as independent contractors and were forced to pay the clubs rent out of the dance fees paid by customers.


**Honors/Awards**

- Michigan Lawyers Weekly – Top Settlement 2012 ($22.5 Million)
- SuperLawyers (Michigan) – 2006-2012 and 2014 to present
- Top 100 Trial Lawyers in Michigan, National Trial Lawyers Association
- Michigan Lawyers Weekly "Up & Coming Lawyers," 2001
- Board Certified Civil Trial Lawyer, National Board of Trial Advocacy
- Leading Lawyers - Class Action and Mass Tort Law
- AV Preeminent Lawyer (Martindale Hubbell) – Peer Review Rating of 5.0 out of 5.0


**Published Works**

- "Sixth Circuit Court of Appeals Rejects Old Approach to Michigan's Drug Immunity Defense," Michigan Bar Journal, January 2015

- "Supreme Court Confirms Importance of Class Actions," Michigan Association for Justice Journal, Fall 2013

- "Wage and Hour Litigation - Employee Status," Michigan Bar Journal, February 2011

- "Establishing Causation in an Ambient Air Quality Nuisance Action," American Association for Justice, Section on Toxic, Environmental & Pharmaceutical Torts, Fall 2008

- "Corporate Misconduct Helps Fuel Lawsuits," Crain's Detroit Business, August 30, 2005

- "Mass Tort Settlement Options in Class Actions and Multidistrict Litigation," Association of Trial Lawyers of America, Section on Toxic, Environmental & Pharmaceutical Torts, Spring 2003

- "Environmental Pollution: Today's Lawsuits Against Polluters Are Inducing Claims for Emotional Distress Damages," Michigan Bar Journal, September 2002

- "'As Is' Clause Holds Water Under the Michigan Underground Leaking Storage Tank Act," Detroit College of Law Review, 1993

- "Room for Sobriety Checkpoints under the Fourth Amendment," Detroit College of Law Review (note), 1991


**Seminars/Lectures**

FACULTY POSITIONS
- Adjunct Professor, Complex Litigation, Michigan State University College of Law, 2013

SEMINARS/PRESENTATIONS

- Speaker, 2016 American Association for Justice Annual Convention, Employment Rights Section and Wage & Hour Litigation Group, "Mediating FLSA Actions"
- Speaker, 2015 American Association for Justice Annual Convention, Employment Rights Section and Wage & Hour Litigation Group, "The Current State of the De Minimis Doctrine and Recent Supreme Court Fair Labor Standards Act Decisions"
- Speaker, 2014 American Association for Justice Annual Convention, Employment Rights Section and Wage & Hour Litigation Group, "Rule 68 Offers of Judgment-Genesis and Beyond"
- Moderator, 2013 American Association for Justice Annual Convention, Employment Rights Section and Wage and Hour Litigation Group CLE Program
- Speaker, 2013 American Association for Justice, Continuing Legal Education Program, "The Latest Developments Affecting your Class Action Strategy Teleseminar"
- Sponsor, 2013 First Annual Great Lakes Mass Tort Seminar
- Moderator, 2012 American Association for Justice Annual Convention, Employment Rights Section and Wage and Hour Litigation Group CLE Program
- Moderator, 2011 American Association for Justice Annual Convention, Employment Rights Section and Wage and Hour Litigation Group CLE Program
- Speaker, 2011 Ohio Association for Justice Wage & Hour Seminar, "H2B Visa Workers and FLSA Violations"
- Moderator, 2011 American Association for Justice Annual Convention, New York, New York

- Speaker, 2010 Michigan Association for Justice New Lawyers "Discovery Workshop"
- Moderator, 2010 American Association for Justice Annual Convention, Wage & Hour Litigation Group Educational Seminar
- Speaker, 2009 American Association for Justice Annual Convention - "Wage and Hour Litigation: Employee Status"
- Panel Member, 2007 Michigan Trial Lawyers Association Deposition Workshop
- Speaker, 2005 American Association for Justice, Annual Convention - "Obtaining Recovery for Identity Theft Victims"
- Speaker, 2005 Florida Justice Association - "Bringing Your Closing Argument to Life"
- Speaker, 2005 Michigan Trial Lawyers Association Rapid Fire Seminar - "New Ways to Succeed"
- Speaker, 2003 Product Liability and Personal Injury Law Conference, Kitzbühel, Austria - "Class Action and Multidistrict Litigation Settlements"
- Judge, 3rd Annual National Trial Advocacy Competition, Michigan State University/Detroit College of Law, 2002
- Speaker, 2002 Michigan Trial Lawyers Association Seminar - "Mass Torts and Environmental Class Actions"
- Moderator, 2002 Michigan Trial Lawyers Association Rapid Fire Symposium - "Environmental Torts"
- Speaker, 1998 Michigan Trial Lawyers Association Rapid Fire Symposium - "EMS Cases"

## MEMBERSHIPS

- State Bar of Michigan
- The National Trial Lawyers
- Million Dollar Advocates Forum
- American Association for Justice - Wage & Hour Litigation Group (Co-Chair), Class Action Litigation, Group, Section on Toxic Environmental and Pharmaceutical Torts, Employment Rights Section
- Michigan Association for Justice - Former Executive Committee Member









     

# *Expert* litigators.
# *Extraordinary* results.

**All too often, people and businesses are seriously harmed.** In an instant, a life can be destroyed, a job lost, a livelihood ruined, at the hands of another's careless or deliberate acts. As experienced and aggressive trial attorneys, we fix serious problems. We earn our clients' trust every day, case after complex case, and we're very good at what we do. We give individuals, families, and companies the ability to move forward.

## We make the law work **for you.**

*Sommers Schwartz is a contingency-based litigation firm recognized for who we are, what we do, and how we win - a reputation we've built over the past forty years.*

Our lawyers have been recognized nationally in personal injury and medical malpractice, commercial and business law, intellectual property, employment and wage and hour laws, antitrust, and consumer protection. We try serious cases on behalf of people and families, businesses, and municipal entities seeking to enforce their rights.

Selecting a law firm to fight for your cause can be one of the most important decisions you make. Law firms are more than just collections of lawyers who work together. When choosing your law firm, it's important to know who those people are and how well they collaborate with one another. Sommers Schwartz is a collection of the brightest and the best attorneys in their respective fields. And we work amazingly well together.

Because of our vast experience, our unmatched accomplishments, our synergy, size, and resources, we're known as one of the top law firms in the country. We are the law firm that people and businesses turn to when so much hangs in the balance. Make no mistake, we fight hard and we win.

You've got a critical choice to make, so choose wisely. Choose Sommers Schwartz

 

One Towne Square | 17th Floor | Southfield, MI 48076 | Toll-free: (800) 783-0989 | Phone: (248) 355-0300
**www.sommerspc.com | www.sommerspc.com\blog**