UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOES 1-2, individually and on behalf
of all others similarly situated,

      Plaintiffs,                      Case No. 1:16-cv-10877

v.                                    Hon. STEPHEN J. MURPHY, III

DÉJÀ VU SERVICES, INC., *et al*,

      Defendants.
_____

## CLASS COUNSEL'S MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS

The undersigned counsel hereby request that the Court enter an order awarding attorneys' fees and reimbursement of actual costs. Class Counsel seek a total of $1,200,000.00 in attorneys' fees and $100,000 costs pursuant to Rule 23 and as provided in section 5.2.5 of the Settlement Agreement for their efforts and risks litigating this action and securing the pool of settlement benefits for the Class.

In addition, Class Counsel also seek Court approval to deduct $15,000 from the awarded fees to be used to pay additional incentive awards to recently added class representatives who pursued an Oklahoma class case against Defendants, but who were stayed through this Court's order.

This motion is based upon the accompanying Memorandum of Law, the declarations of Class Counsel, and all other documents and arguments submitted in support thereof.

Respectfully submitted,

Date: April 28, 2017                    SOMMERS SCHWARTZ, P.C.

*/s/ Jason J. Thompson* (P47184)
Jason J. Thompson (P47184)
Jesse L. Young (P72614)
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone:(248)355-3000   Fax:
(248) 436-8453
jthompson@sommerspc.com
jyoung@sommerspc.com

*/s/ Megan A. Bonanni*
Megan A. Bonanni (P52079)
Rachael Kohl (P78930)
Pitt McGehee Palmer & Rivers, P.C.
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
248-398-9800
mbonanni@pittlawpc.com
rkohl@pittlawpc.com

*Class Counsel*

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOES 1-2, individually and on behalf
of all others similarly situated,

      Plaintiffs,                             Case No. 1:16-cv-10877

v.                                    Hon. STEPHEN J. MURPHY, III

DÉJÀ VU SERVICES, INC., *et al*,

      Defendants.

_____

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
<u>FOR APPROVAL OF ATTORNEYS' FEES AND COSTS</u>**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................1

II.     ARGUMENT.................................................................................1

        A.      CLASS COUNSELS' REQUEST FOR FEES AND COSTS IS
                PROPER AND SUPPORTED IN THIS CASE UNDER RULE 23
                AND THE PERCENTAGE OF THE FUND METHOD ........................1

        B.      CLASS COUNSELS' REQUEST FOR FEES AND COSTS IS
                PROPER AND SUPPORTED IN THIS CASE UNDER THE SIX-
                FACTOR TEST USED IN THE SIXTH CIRCUIT TO AWARD
                CLASS ACTION FEES ................................................................11

                1.      The Value of the Benefits Rendered to the Plaintiff Class.......12

                2.      Society's Stake in Rewarding Attorneys ...................................13

                3.      Whether the Services Were Undertaken on a Contingent Fee
                        Basis ...................................................................................16

                4.      The Value of the Services on an Hourly Basis .........................17

                5.      The Complexity of the Litigation .............................................19

                6.      The Professional Skill and Standing of Counsel Involved
                        on Both Sides .........................................................................21

        C.      CLASS COUNSEL'S REQUEST FOR ACTUAL LITIGATION
                COSTS IS PROPER AND SUPPORTED IN THIS CASE UNDER
                RULE 23 AND THE COMMON FUND DOCTRINE..........................22

IV.     CONCLUSION.............................................................................23

# INDEX OF AUTHORITIES

## Cases

Atkinson v. TeleTech Holdings, Inc., Case No. 14-cv-00253 (S.D. Ohio)..............7

Bailey v. AK Steel Corp., 2008 U.S. Dist. LEXIS 18838, at *8
    (S.D. Ohio Feb. 28, 2008) ...................................................................10

Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739,
    101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981) ............................................14

Behrens v. Wometco Enters., Inc., 118 F.R.D. 534,548 (S.D. Fla. 1988) .............16

Bessey v. Packerland Plainwell, Inc., (2007 WL 3173972,
    2007 U.S. Dist. LEXIS 79606 (W.D.Mich., 2007) ............................... 3, 4, 7, 20

Blackman v. Gascho, 137 S. Ct. 1065 (2017), and cert. denied sub nom ................5

Blum v. Stenson, 465 U.S. 886, 900 n. 16 (1984) ...................................................2

Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S.Ct. 745,
    62 L.Ed.2d 676 (1980)............................................................... 2, 4, 5, 17

Bowling v. Pfizer, Inc., 102 F.3d 777, 779-81 (6th Cir. 1996) ................... 8, 12, 21

Cason-Merenda v. VHS of Michigan, Inc., No. 206CV15601
    GERDAS, 2016 WL 944901, at *2 (E.D. Mich. Jan. 29, 2016).........................4

Central R.R & Banking Co. v. Pettus, 113 U.S. 116, 123 (1885) ............................2

Chem. Bank v. City of Seattle (In re Wash. Pub. Power Supply
    Sys. Sec. Litig.), 19 F.3d 1291, 1300-01 (9th Cir. 1994).....................................17

Coulter-Owens v. Rodale, Inc., 2016 U.S. Dist. LEXIS 134243,
    *18 (E.D. Mich. Sept. 29, 2016).................................................... 10, 15

Dallas v. Alcatel-Lucent USA, Inc., No. 09-14596, 2013 WL 2197624,
    at *14 (E.D. Mich. May 20, 2013) ..............................................................4

David v. America Suzuki Motor Corp., 2010 U.S. Dist. LEXIS 146073,
    *25-26 n.14 (S.D. Fla. April 15, 2010) ...................................................5

DeBoer v. Mellon Mortgage, 64 F.3d 1171 1178 (8th Cir. 1996)...........................12

Doe v. Cin-Lan, Inc., Case No. 08-cv-12719 (E.D. Mich.)......................................7

Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 161 (1974).......................................15

F & M Distribs., Inc. Sec. Litig.,1999 U.S. Dist. LEXIS 11090 .............................14

Gardner v. Lafarge Corp., 2007 U.S. Dist. LEXIS 42536, *21
    (E.D. Mich. June 12, 2007) ...............................................................7

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 278
(6th Cir. 2016) .......................................................................................5, 9

*Gentrup v. Renovo Servs., LLC*, 2011 U.S. Dist. LEXIS 67887,
*14 (S.D. Ohio June 24, 2011) .................................................... 15, 19

*Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007).......................17

*Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-CV-10610, 2013 WL 6511860,
at *8 (E.D. Mich. Dec. 12, 2013) ..........................................................4

*Hillson v. Kelly Servs.*, No. 2:15-cv-10803, 2017 U.S. Dist. LEXIS 8699,
at *28 (E.D. Mich. Jan. 23, 2017) .........................................................8

*In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061,
1066 (E.D. Mo. 2002)............................................................................23

*In re Cardinal Health*, 528 F. Supp. 2d 751, 753, 761
(S.D. Ohio 2008) ................................................................ 6, 9, 10, 11

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, at 531-32
(E.D. Mich. 2003)............................................................ 2, 6, 15, 16, 22

*In re Cincinnati Gas & Electric Co. Securities Litigation*,
643 F.Supp. 148, 150 (S.D.Ohio 1986)...........................................3, 7

*In re Dun & Bradstreet Credit Services Customer Litigation*,
130 F.R.D. 366, 372 (S.D. Ohio 1990) ............................................4, 7

*In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952,
2011 WL 6209188, at *17 (E.D. Mich. Dec. 13, 2011)..................4, 23

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283, 341 (3d Cir. 1998) ........................................................10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
273 F. Supp. 2d 563, 565 (D.N.J. 2003)................................................6

*In re Rio Hair Naturalizer Prods. Liab. Litig.*, MDL No. 1055,
1996 WL 780512, *16 (E.D.Mich. 1996) ..................................... 3, 7, 16

*In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 218 (S.D. Ohio 1997) .................8, 20

*In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir. 2005)............................2

*In re Synthroid Marketing Litig.*, 264 F.3d 712, 722 (7th Cir.2001) ......................22

*In re Telectronics*, 137 F. Supp. 2d 1029, 1046 (S.D. Ohio 2001)............................4

*In re Washington Power Supply System Sec. Litig.*, 19 F.3d 1291,
1300 (9th Cir. 1994) ..........................................................................2, 6

Keller v. Miri Microsystems LLC, 781 F.3d 799, 806-07 (6th Cir. 2015)..............14

Kritzer v. Safelite Solutions, LLC, 2012 U.S. Dist. LEXIS 74994,
    *29 (S.D. Ohio May 30, 2012) ...........................................................................15

Loring v. City of Scottsdale, Arizona, 721 F.2d 274 (9th Cir. 1983).....................12

Lowther v. AK Steel Corp., 2012 U.S. Dist. LEXIS 181476, *14
    (S.D. Ohio Dec. 21, 2012).............................................................................9, 10

Mills v. Electric Auto-Lite Co., 396 U.S. 375, 392, 90 S.Ct. 616, 626,
    24 L.Ed.2d 593 (1970)...................................................................................2, 12

Moulton, et al. v. United States Steel Corp. 581 F.3d 344,
    352 (6th Cir 2009) ................................................................................... 6, 7, 13

New York State Teachers' Ret. Sys. v. GM Co., 315 F.R.D. 226,
    244 (E.D. Mich. 2016)........................................................................................10

Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513, 516
    (6th Cir. 1993) ........................................................................... 2, 3, 12, 21

Rotuna v. W. Customer Mgmt. Grp., LLC, 2010 U.S. Dist.
    LEXIS 58912, *19-20 (N.D. Ohio June 15, 2010) .........................................7, 20

Skelton v. General Motors Corp., 860 F.2d 250, 254 (7th Cir. 1988)....................17

Stanley v. U.S. Steel Co., No. 04-74654, 2009 WL 4646647,
    at *3 (E.D. Mich. Dec. 8, 2009) ..................................................... 6, 12, 16

Swigart v. Fifth Third Bank, No. 1:11-CV-88, 2014 WL 3447947,
    at *7 (S.D. Ohio July 11, 2014)..................................................... 20, 21

Underwood v. Carpenters Pension Trust Fund-Detroit & Vicinity,
    No. 13-CV-14464, 2017 WL 655622, at *13 (E.D. Mich. Feb. 17, 2017)......4, 17

Van Horn v. Nationwide Prop. & Cas. Ins. Co., 436 F. App'x 496, 499
    (6th Cir. 2011) ......................................................................................9

Vigna v. Emery Fed. Credit Union, No. 1:15-CV-51, 2016 WL 7034237,
    at *3 (S.D. Ohio Dec. 2, 2016)...........................................................20

Vincent v. Hughes Air West, Inc., 557 F.2d 759, 769-70 (9th Cir. 1977)..............17

Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1051 (9th Cir. 2002).........................6

Waters v. International Precious Metals Corp., 190 F.3d 1291,
    1295-96 (11th Cir. 1999)...............................................................................5, 6

Wise v. Popoff, 835 F. Supp. 977, 980 (E.D. Mich. 1993) ..................................3, 7

Zik v. Gascho, 137 S. Ct. 1065 (2017) .....................................................................6

**Statutes**

Fed. R. Civ. P. 23, Committee Notes to Subdivision (h)...........................................6

**Other Authorities**

*Manual Complex Lit.*, § 14.121 (4th ed.)...................................................................8

*Report of the Third Circuit Task Force on Court Awarded Fees*
   ("Task Force Report")*,* 108 F.R.D. 237, 248 (1985) .............................................3

Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986) ..........16

# I.   INTRODUCTION

The settlement in this case creates significant benefits for the Class as explained in the Final Approval Motion (Dkt. #41).  In a class action, the attorneys responsible for creating the pool of settlement benefits set forth in the Settlement Agreement are entitled to be compensated for their time, efforts, and risks.  Here, the actual benefits conferred on the Class under the settlement, as well as the actual time and out-of-pocket costs Class Counsel expended litigating this case and securing the settlement benefits for the Class, support the amounts requested by Class Counsel.

Plaintiffs filed a Motion for Final Approval and incorporate the facts as set forth in the supporting brief to reduce repetition in the instant brief.  The final Settlement Agreement eventually reached in this case was the result of extensive and continuous arms-length, non-collusive, negotiations and the exchange of factual information over almost one year, resulting in a fair, and innovative, compromise of longstanding hotly contested issues.

# II.   ARGUMENT

## A.    CLASS COUNSELS' REQUEST FOR FEES AND COSTS IS PROPER AND SUPPORTED IN THIS CASE UNDER RULE 23 AND THE PERCENTAGE OF THE FUND METHOD

The United States Supreme Court and the Sixth Circuit approve of attorneys' fee awards in class action settlements, "It is well established that 'a lawyer who

recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, at 531-32 (E.D. Mich. 2003)(quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). *See also Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375, 393 (1970); *Central R.R & Banking Co. v. Pettus,* 113 U.S. 116, 123 (1885).

In *Blum v. Stenson,* 465 U.S. 886, 900 n. 16 (1984), the Supreme Court recognized that under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund bestowed to the class." The purpose of this doctrine is that "those who benefit from the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Power Supply System Sec. Litig.,* 19 F.3d 1291, 1300 (9th Cir. 1994).

Courts generally have discretion to apply either the percentage of the fund or the lodestar method in calculating fee awards. *Rawlings v. Prudential-Bach Props., Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993); *In re Cardizem*, 218 F.R.D. at 532. The Sixth Circuit has observed a "trend towards adoption of a percentage of the fund method in [common fund] cases." *Rawlings*, 9 F.3d at 515; *In re Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir. 2005). When damages for individual class members are relatively modest, the percentage of the fund recovery method is favored because it rewards counsel for taking on a case which might not otherwise be economically

feasible. *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95, 2007 WL 3173972, 2007 U.S. Dist. LEXIS 79606 (W.D. Mich. Oct. 26, 2007).  In addition to providing an incentive to obtain optimal settlements as efficiently as is reasonably possible, *see e.g., Report of the Third Circuit Task Force on Court Awarded Fees* ("Task Force Report"), 108 F.R.D. 237, 248 (1985), the percentage method is preferred because of its simplicity.  Use of the percentage method can avoid the excessive "time-consum[ption] of scarce judicial resources" as well as incentives for overbilling that might accompany a "loadstar" analysis.[1] *Rawlings*, 9 F.3d at 516; *Manual For Complex Litigation*, 4th, §14.121.[2]

When using the percentage of the fund method, Sixth Circuit award attorneys' fees between 20% and 50% of the settlement fund. *In re Rio Hair Naturalizer Prods. Liab. Litig.,* MDL No. 1055, 1996 WL 780512, *16 (E.D. Mich. 1996) (observing that "more commonly, fee awards in common fund cases are calculated as a percentage of the fund created, typically ranging from 20 to 50 percent of the fund"); *In re Cincinnati Gas & Electric Co. Securities Litigation,* 643 F.Supp. 148, 150 (S.D. Ohio 1986). *Wise v. Popoff,* 835 F. Supp. 977, 980 (E.D. Mich. 1993); *In re Dun &*

---

[1]   Some courts use the lodestar method as a cross-check to ensure the fee is not excessive. *Manual For Complex Litigation*, 4th, §14.121, n. 504.

[2]   Historically, attorney fees were awarded from a common fund based on a percentage of that fund. After a period of experimentation with the lodestar method (based on the number of hours reasonably expended multiplied by the applicable market rate for the lawyer's services), the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common-fund cases.

*Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 372 (S.D. Ohio 1990). *See*, *e.g.*, *Underwood v. Carpenters Pension Trust Fund-Detroit & Vicinity*, No. 13-CV-14464, 2017 WL 655622, at *13 (E.D. Mich. Feb. 17, 2017) (28% of settlement fund); *Cason-Merenda v. VHS of Michigan, Inc.*, No. 206CV15601GERDAS, 2016 WL 944901, at *2 (E.D. Mich. Jan. 29, 2016) (roughly 20% of settlement fund); *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-CV-10610, 2013 WL 6511860, at *8 (E.D. Mich. Dec. 12, 2013) (30% of $3M settlement fund); *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2013 WL 2197624, at *14 (E.D. Mich. May 20, 2013) (one-third of $1.4M settlement); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *17 (E.D. Mich. Dec. 13, 2011) (citing cases to justify award of roughly 30%); *Bessey*, 2007 WL 3173972 at *4 (33% of $668K settlement fund); *In re Telectronics*, 137 F. Supp. 2d 1029, 1046 (S.D. Ohio 2001) ("the range of reasonableness has been designated as between twenty to fifty percent of the common fund").

As made clear by the United States Supreme Court in *Boeing v. Van Gemert*, the benefit fund from which fees can be calculated when using the percentage method includes the entire pool of benefits created, including unclaimed portions of the settlement fund. As the Supreme Court explained:

> Once the class representatives have established the defendant's liability and the total amount of damages, members of the class can obtain their share of the recovery simply by proving their individual claims against the judgment fund. This benefit devolves with certainty upon the

identifiable persons whom the court has certified as members of the class. Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery.

* * *

To claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. **Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.**

* * *

**The members of the class, whether or not they assert their rights, are at least the equitable owners of their respective shares in the recovery.** Any right that Boeing may establish to the return of money eventually unclaimed is contingent on the failure of absentee class members to exercise their present rights of possession.

*Boeing*, 444 U.S. at 479-482 (emphasis added); *see also Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming fee award of 33.3% of total amount made available to class and determining that attorneys' fees may be determined based on total fund, not just actual payout to the class); *David v. America Suzuki Motor Corp.*, 2010 U.S. Dist. LEXIS 146073, *25-26 n.14 (S.D. Fla. April 15, 2010) (settlement with ascertainable benefits may be treated as a common fund to which a percentage fee may be awarded, even if the fee is separately paid by the defendant). *Boeing*, 444 U.S. at 479-482 (emphasis added); *see also Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 278 (6th Cir. 2016), cert. denied sub nom. *Blackman v. Gascho*, 137 S. Ct. 1065 (2017), and cert. denied

sub nom. *Zik v. Gascho*, 137 S. Ct. 1065 (2017);  *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming fee award of 33.3% of total amount made available to class and determining that attorneys' fees may be determined based on total fund, not just actual payout to the class); *In re Cardizem*, 218 F.R.D. at 532; *Stanley v. U.S. Steel Co.*, No. 04-74654, 2009 WL 4646647, at *3 (E.D. Mich. Dec. 8, 2009).

Like other Circuits, the Sixth Circuit follows the same rule. *Moulton, et al. v. United States Steel Corp.* 581 F.3d 344, 352 (6th Cir 2009) (Finding error in the objectors focus on the amount *claimed* rather than the amount *allocated* when deciding the reasonableness of a 30% fee award).  As the Ninth Circuit further observed, "[t]here is nothing unfair about contingency enhancements in common fund cases because of the equitable notion that those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *Washington Power Supply System*, 19 F.3d at 1300.

However, fees and costs awards in a class action are restricted to the counsel whose work actually produces a beneficial result for the class.  *See* Fed. R. Civ. P. 23, Committee Notes to Subdivision (h); *In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 753 (S.D. Ohio 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 273 F. Supp. 2d 563, 565 (D.N.J. 2003)).  Thus, counsel for objectors or absent class

members whose work does not produce a beneficial result for the class do not satisfy this standard. *Gardner v. Lafarge Corp.*, 2007 U.S. Dist. LEXIS 42536, *21 (E.D. Mich. June 12, 2007).

The $1,200,000 fee sought by Class Counsel here is approximately 18% of the total $6.55 million settlement.  That fee award is fair and reasonable when compared to fee awards in similar cases within the Sixth Circuit. *Moulton*, 581 F.3d at 352 (finding that a fee award of 30% plus an award of costs was reasonable on its face).  Fee awards in this Circuit are typically 20-50% of the fund. *In re Rio Hair, supra; In re Cincinnati Gas & Electric Co. Securities Litigation, supra; Wise, supra; and In re Dun & Bradstreet Credit Services Customer Litigation, supra*; *see also Doe v. Cin-Lan, Inc.*, Case No. 08-cv-12719 (E.D. Mich.) (J. Murphy) (awarding class counsel fees and costs of 31% in wage-and-hour class and collective action); *Atkinson v. TeleTech Holdings, Inc.*, Case No. 14-cv-00253 (S.D. Ohio) (awarding class counsel fees and costs of 33.3% of total settlement in wage-and-hour class and collective action); *Bessey v. Packerland Plainwell, Inc.*, 2007 U.S. Dist. LEXIS 79606 (W.D. Mich. October 26, 2007) (approving attorneys' fees of 33% in wage-and-hour class and collective action); *Rotuna v. W. Customer Mgmt. Grp.*, LLC, 2010 U.S. Dist. LEXIS 58912, *19-20 (N.D. Ohio June 15, 2010) (approving attorneys' fees of 33% of the settlement amount in wage-and-hour class and collective action); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 218 (S.D. Ohio

1997), *rev'd on other grounds*, 24 Fed. App'x 520 (6th Cir. 2001) (approving attorneys' fees of 34% of the settlement amount in wage-and-hour class and collective action, and noting that it is within the 20% to 50% range of reasonableness). Across the country, fee awards range between 25-30% of the common fund. *Manual Complex Lit.*, § 14.121 (4th ed.) ("Attorney fees awarded under the percentage method are often between 25% and 30% of the fund."). And this Court recently found a 1/3 fee was likely to be reasonable and cited a recent study that confirmed average fees are 27%. *Hillson v. Kelly Servs*., No. 2:15-cv-10803, 2017 U.S. Dist. LEXIS 8699, at *28 (E.D. Mich. Jan. 23, 2017) (citing *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012) ("The 'majority of common fund fee awards fall between 20% and 30% of the fund.'"); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Studies 811, 839 (2010) (providing that for settlements in the range of $4.45 to $7 million, the average attorneys' fees award over all class-action settlements in 2006 and 2007 was 27.4%).

Even if a percentage-of-the-fund award is proper, courts are encouraged to crosscheck that amount with the lodestar in determining reasonableness. *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779-81 (6th Cir. 1996) (affirming the district court's fee award where "district court based its fee award on a percentage of the common fund and then cross-checked the fee against class counsel's lodestar"); *Gascho v. Glob.*

*Fitness Holdings, LLC*, 822 F.3d 269, 281 (6th Cir. 2016) (performing cross-check of lodestar with percentage-of-fund analysis).

District courts calculate the lodestar figure and compare it with the amount requested under the percentage approach. *See In re Cardinal Health*, 528 F. Supp. 2d at 761. The number of hours expended "creating, protecting, or preserving the fund recovered" is then multiplied by a "reasonable hourly rate" to produce a lodestar figure. *Id*. The reasonable hourly rate is "is determined by reference to the prevailing market rates in the relevant community." *Lowther v. AK Steel Corp.*, 2012 U.S. Dist. LEXIS 181476, *14 (S.D. Ohio Dec. 21, 2012). The appropriate market to determine the reasonable hourly rate is that of similar types of cases, in terms of both size and complexity. *Id*. (*quoting McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 740 (6th Cir. 2002)). The FLSA is an area of the law practiced by a small subset of the bar, with even fewer attorneys capable of handling a case of this size and complexity, against a company with vast resources. Accordingly, in calculating lodestar, Class Counsel utilized the rates they would charge in their home courts and for paying clients.

The lodestar figure, in the discretion of the Court, may be adjusted upward ("the lodestar multiplier") to reach a reasonable fee award. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011) (citing *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004). A variety of factors are examined in

determining the appropriate multiplier, including, "the nature of the case, the market for such legal service, the risk involved and the results achieved." *Id, at 499-500*. The multiplier is designed to reward Class Counsel for taking on more risk, providing "superior quality" representation, or achieving a greater settlement. *In re Cardinal Health,* 528 F. Supp. 2d at 761. Courts frequently award multipliers between one and four. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) (*quoting* 3 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 14.03 at 14-5 (3d ed. 1992)). The same is true in this district. *See e.g.*, *Coulter-Owens v. Rodale, Inc.*, 2016 U.S. Dist. LEXIS 134243, *18 (E.D. Mich. Sept. 29, 2016) (awarding a lodestar cross-check multiplier of about 2.05 times the estimated hourly billing amount of $546,719 supplied by Plaintiffs' Counsel); *New York State Teachers' Ret. Sys. v. GM Co.*, 315 F.R.D. 226, 244 (E.D. Mich. 2016) ("The requested fee of $21 million represents a multiplier of 1.9, which the Court finds to be well within an acceptable range."); *see also Lowther*, 2012 U.S. Dist. LEXIS 181476 at *19 (awarding $1,275,000 in fees with a lodestar cross-check of $416,669.48 (with a 3.06 multiplier found to be "very acceptable")); *Bailey v. AK Steel Corp.*, 2008 U.S. Dist. LEXIS 18838, at *8 (S.D. Ohio Feb. 28, 2008) ("The multiplier [of 3.04] is fully warranted given the complexity of the case, the attendant risks, the size of the settlement recovered, and class counsels' continuing obligations to the class, and it is well within the range of multipliers

awarded in similar litigation."); *In re Cardinal Health*, 528 F. Supp. 2d at 767 (lodestar multiplier of 6.0, noting that the typical lodestar multiplier in large class actions "ranges from 1.3 to 4.5").

The total loadstar of all plaintiff's counsel participating in the current fee request is $868,892.10.[3]   On an hourly basis, that amount is reasonably close to the requested $1.2 million, and only amounts to a 1.38 multiplier under a loadstar crosscheck.[4]   This is both reasonable and well within the range of multipliers awarded by courts in complex cases such as this. Furthermore, class counsels' work is not finished.   Ultimately, the remaining process will include significant effort in the administration of the settlement and claims for approximately twenty-thousand entertainers.

**B.    CLASS COUNSELS' REQUEST FOR FEES AND COSTS IS PROPER AND SUPPORTED IN THIS CASE UNDER THE SIX-FACTOR TEST USED IN THE SIXTH CIRCUIT TO AWARD CLASS ACTION FEES**

When reviewing an award of attorneys' fees in a common-fund case, the Sixth Circuit requires that the award must be reasonable under the circumstances. *Rawlings v. Prudential-Bache Properties, Inc.,* 9 F.3d 513, 516 (6th Cir. 1993). The

---

[3] Class Counsel will allocate the fees awarded among the participating attorneys pursuant to private agreement with the attorneys.

[4] A chart summarizing each law firm's billings is attached as Exhibit A.  Class Counsel has spoken with all attorneys and reviewed their time records for purposes of accuracy and reasonableness of work performed and rates charged. *See* Exhibit B, Thompson Decl. ¶6.

Sixth Circuit has delineated six factors to consider when determining whether an award of attorneys' fees is reasonable:

> (1) the value of the benefit rendered to the [class], (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of counsel involved on both sides.

*Stanley v United States Steel Co.,* 2009 U.S. Dist. LEXIS 114065, *3 (E.D. Mich. Dec. 8, 2009) (quoting *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir. 1996). Class Counsels' fee request is supported by the six-factor test used in the Sixth Circuit.

### 1.    The Value of the Benefits Rendered to the Plaintiff Class

In evaluating the value of the benefits conferred on the class under a settlement, the Court should consider not only the monetary benefits that are reflected in direct sums paid immediately to the Class as part of the settlement, but also less tangible and less immediately obvious benefits, including modifications to Defendants' business practices. *Loring v. City of Scottsdale, Arizona*, 721 F.2d 274 (9th Cir. 1983); *see also*, *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392, 90 S.Ct. 616, 626, 24 L.Ed.2d 593 (1970) (concluding non-pecuniary benefits are within the scope of the "common fund" doctrine); *DeBoer v. Mellon Mortgage*, 64 F.3d 1171 1178 (8th Cir. 1996) (holding that district court correctly awarded fees based on value of injunctive relief conferred under settlement which required the defendant

mortgage company to modify its mortgage servicing practices so to collect and hold less money in the future, stating: "The continuing nature of a permanent refunding procedure constitutes a benefit to the class adequate to justify the fee award."). Hence, the value of the modified business practices set forth in Section VIII of the Settlement Agreement (i.e., the enhanced offer of employment and entertainer assessment process), constitute part of the overall "common fund" obtained for the Class in this settlement and which should be considered in awarding fees.

Here, the settlement fund has a value well in excess of $6.5 million when the Court considers the non-monetary component of the settlement benefits. Plaintiffs' expert, attorney Robert DeRose reviewed the settlement benefits to the dancers. He concluded that the benefits conferred on dancers was important and valuable (*See Exhibit 3* to Final Approval Motion). When considering the full value of the benefits conferred to the class, the request for 18% is reasonable on its face. *Moulton*, 581 F.3d at 352. It is well below the normal percentages charged by counsel and awarded by courts, and certainly fair in light of the significant benefits obtained by Class Counsel.

### 2.   <u>Society's Stake in Rewarding Attorneys</u>

The current settlement involves FLSA claims and analogous state wage claims. All those statutes were enacted as remedial in nature – that is to correct detrimental labor conditions "necessary for health, efficiency, and general well-

being of workers." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806-07 (6th Cir. 2015) (internal citation omitted). Furthermore, the goal of the FLSA is to ensure that a covered employee receives a "fair day's pay for a fair day's work" and is "protected from the evil of overwork as well as underpay." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981). This settlement attempts to meet the goals of the FLSA by tackling the classification challenge facing the clubs and entertainers through a joint assessment process. That joint assessment represents a significant benefit to this settlement and change relative to any other FLSA settlement of exotic dancer cases. It goes to the heart of exotic dancer class actions; properly classifying entertainers as employees or independent contractors. In short, society has a strong interest in providing attorneys with fair compensation for prosecuting, and *prevailing* in, FLSA and state wage class actions such as the instant case.

The second factor instructs the Court to consider society's stake in rewarding attorneys who produce a common benefit for class members in order to maintain an incentive to undertake such cases for others. *In re F & M Distribs., Inc. Sec. Litig.*, 1999 U.S. Dist. LEXIS 11090, at *18. ("Society's stake in rewarding attorneys who can produce such benefits in complex litigation such as in the case at bar counsels in favor of a generous fee...") Society's stake in rewarding attorneys who bring class action wage-and-hour cases favors the requested award. *See Gentrup v. Renovo*

14

*Servs., LLC*, 2011 U.S. Dist. LEXIS 67887, *14 (S.D. Ohio June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage-and-hour cases, as these are frequently complex matters."); *Coulter-Owens v. Rodale, Inc.*, 2016 U.S. Dist. LEXIS 134243, *12 (E.D. Mich. Sept. 29, 2016) ("Society has an interest in incentivizing the plaintiffs' bar to investigate and litigate such cases through the award of contingent fees.") (*citing In re Delphi Corp. Securities, Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 503 (E.D. Mich. 2008)) ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this benefits society.") (citation omitted).

Here, Class Counsel recovered wages for 27,364 of Defendants' current and former dancers. Without this lawsuit, very few of these individuals would have known about their potential claims, let alone had the motivation or resources to pursue them. *See Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, *29 (S.D. Ohio May 30, 2012) ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own."). As the Supreme Court has recognized, without a class action, small claimants individually lack the economic resources to vigorously litigate their rights. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 161 (1974); *see also, In re Cardizem*, 218 F.R.D. at 534 ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this benefits society."); *In re Rio Hair*, 1996

15

U.S. Dist. LEXIS 20440 at *54 ("[A]ttorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process."); *see also In re Cardizem CD Antitrust Litigation*, 218 F.R.D 508 (E.D. Mich, 2003). Thus, the fourth factor bodes strongly in favor of approving Class Counsel's request.

### 3.   Whether the Services Were Undertaken on a Contingent Fee Basis

This action was prosecuted by Class Counsel on a contingent basis, and this factor supports the current fee request. Indeed, it is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986). Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award. "A contingency fee arrangement often justifies an increase in the award of attorneys' fees." *Stanley*, 2009 WL 4646647 at *3 (citing inter alia *Behrens v. Wometco Enters, Inc.,* 118 F.R.D. 534, 548, *aff'd* 899 F.2d 21 (11th Cir. 1990)), *affd* 899 F.2d 21 (11th Cir. 1990) As the *Behrens* Court explained:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer...A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

Lastly, the requested award—18% of the settlement—is well within the range approved by Courts in this district, but not so high that it would constitute a windfall. *Gonter v. Hunt Valve Co., Inc*., 510 F.3d 610, 616 (6th Cir. 2007).

### 4.    The Value of the Services on an Hourly Basis

Attorneys' fees in common fund cases are not paid by the losing defendant, but by members of the plaintiff class, who shoulder the burden of paying their own counsel out of the common fund. *Chem. Bank v. City of Seattle* (In re Wash. Pub. Power Supply Sys. Sec. Litig.), 19 F.3d 1291, 1300-01 (9th Cir. 1994) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980); *Vincent v. Hughes Air West, Inc*., 557 F.2d 759, 769-70 (9th Cir. 1977). There is nothing unfair about contingency enhancements in common-fund cases because of the equitable notion that those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it. *Boeing,* 444 U.S. at 478; *Graulty*, 886 F.2d at 271. "[I]t is well settled that 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee *from the fund as a whole*." *Underwood v. Carpenters Pension Trust Fund-Detroit & Vicinity*, No. 13-CV-14454, 2017 WL 655622, at *9 (E.D. Mich. Feb. 17, 2017) (quoting *Boeing,* 444 U.S. at 478).  As the Seventh Circuit observed in *Skelton v. General Motors Corp*., 860 F.2d 250, 254 (7th Cir. 1988), "in the common fund context, attorneys whose compensation

depends on their winning the case, must make up in compensation in the cases they win for the lack of compensation in the cases they lose."

Class Counsel alone committed over 1,000 hours of attorney and paralegal time through the course of this litigation, a significant expenditure of time, all of which was devoted on a contingency basis with no guarantee of payment. (Thompson Decl. ¶ 21 – Exhibit B; Bonanni Decl. ¶ 22 - Exhibit C). More was expended by other plaintiffs' counsel.  These hours were spent performing the following tasks that were necessary and integral to the successful resolution of this case, including but not limited to: (1) investigating and researching the potential claims; (2) interviewing the Named Plaintiff and other opt-in Plaintiffs regarding their claims; (3) drafting the various initiating documents and the Complaint; (4) preparing and serving initial disclosures and written discovery; (5) briefing conditional certification; (6) briefing response to Defendants' motions; (7) preparing the First and Second Amended Complaints, including the designation of twenty-three named Defendants (which includes 55 individual clubs); (8) reviewing responsive discovery documents; (9) taking and defending depositions; (10) negotiating, drafting, editing, and filing the Settlement Agreement and settlement approval papers and exhibits; (11) identifying and retaining a settlement administrator; (12) researching a proper *cy pres* recipient for uncashed funds; (13) preparing and responding to motions; (14) working with experts to evaluate the cost

of converting dancers to employees and the benefits of the settlement to the dancers; and (15) communicating with Plaintiffs and Class members during the settlement notice period. (Thompson Decl. ¶¶ 7-11; Bonanni Decl. ¶¶ 10-13). These hours were reasonable and necessary given the breadth and scope of the issues in this case, as well as the dedicated efforts of Class Counsel to obtain relief for the class.

In addition, Class Counsel will continue to represent the Plaintiffs and Class members throughout the next few months and expend more time to ensure that the settlement funds and tax documents are disseminated in a timely fashion and mailed to correct addresses, and to answer questions about the settlement. (Young Decl. ¶ 14 – Exhibit D). This factor thus weighs in favor of awarding the requested fee. *See Gentrup*, 2011 U.S. Dist. LEXIS 67887 at *14 (finding that plaintiffs' counsel made "significant investments of time and [had] advanced costs but [had] received no compensation in this matter" weighed in favor of the requested fee).

The lodestar crosscheck in this case was calculated as explained above, and it provides the court with an hourly benchmark from which to assess the requested fee and resulting multiplier of 1.38.  The lodestar crosscheck does not indicate anything improper or excessive relative to the current fee request of 18.5%.

### 5.    The Complexity of the Litigation

As a hybrid class action – meaning a combined FLSA opt in and Rule 23 opt out class action – the instant case is relatively complex.  *See*, *e.g.*, *Vigna v. Emery*

*Fed. Credit Union*, No. 1:15-CV-51, 2016 WL 7034237, at *3 (S.D. Ohio Dec. 2, 2016) (awarding fee of 25%); *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) ("Wage and hour collective and class actions are, by their very nature, complicated and time consuming.") (awarding 33% fee).

Adding to the case's complexity is the current state of the law on arbitration and class action waivers. And overshadowing all of those legal obstacles are the complicated payroll and employment facts that underlie each club's operation and the entertainers' work practices. While FLSA cases may be less complicated than antitrust, as far a FLSA cases go, this one is very complicated.

Lastly, comparing the fees requested in this case to the fees awarded in similar cases further evidences the reasonableness of Class Counsel's request for an award of 18.5% of the settlement fund. *See e.g., Bessey*, 2007 U.S. Dist. LEXIS 79606 (approving attorneys' fees of 33% in wage-and-hour class and collective action); *Rotuna v. W. Customer Mgmt. Grp*., LLC, 2010 U.S. Dist. LEXIS 58912, *19-20 (N.D. Ohio June 15, 2010) (approving attorneys' fees of 33% of the settlement amount in wage-and-hour class and collective action); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 218 (S.D. Ohio 1997), *rev'd on other grounds*, 24 Fed. App'x 520 (6th Cir. 2001) (approving an award of 34% of the total amount of the common fund, and noting that it is within the 20% to 50% range of reasonableness).

6. **The Professional Skill and Standing of Counsel Involved on Both Sides**

Both sides were represented by extremely experienced counsel. The Court is familiar with the work, reputation and skill of Class Counsel.  Their attorney bios are attached to the Final Approval Motion (*See* Dkt. #41).  In assessing the skill of Class Counsel, it is also important to assess the quality of defense counsel as well, to determine the quality of service Class Counsel rendered. *See e.g. Swigart* 2014 WL 3447947 at *7. Defense counsel have over fifty combined years specializing in dancer litigation and have represented this defendant for nearly as long.  They are intimately familiar with the clubs' operations and pertinent legal issues.  This factor bodes in favor of awarding the requested $1.2 million in fees.

In summary, Class Counsel's fee request is well within the traditional range of percentages used to award fees in class actions (20-50%) and is supported in light of the six-part test used in the Sixth Circuit to test the reasonableness of a fee request. *Rawlings*, 9 F.3d at 516.  Defendants and Class Counsel negotiated an innovative and ground-breaking settlement when others were only seeking back wages.  Class Counsel's request for attorneys' fees simply asks "…that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Id.*; *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir.1996); *Smillie v. Park Chem. Co.,* 710 F.2d 271, 275 (6th Cir.1983).

**C.     CLASS COUNSEL'S REQUEST FOR ACTUAL LITIGATION COSTS IS PROPER AND SUPPORTED IN THIS CASE UNDER RULE 23 AND THE COMMON FUND DOCTRINE**

In addition to their request for Attorneys' fees, pursuant to Paragraph 5.2.5 of the Settlement Agreement, Plaintiffs and Class Counsel seek approval of $100,000.00 towards litigation expenses incurred, including the cost of mailing the settlement notice to the class.  Under the common fund doctrine, "class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634-45 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (quoting *In re Cardizem Antitrust Litig.*, 218 F.R.D. at 535). Class counsel has reviewed accounting records and invoices and can attest to the appropriateness and necessity of the costs. (Thompson Decl. ¶¶ 6, 12; Bonanni Decl. ¶¶ 9, 13).  The requested expenses and costs are the type routinely billed by attorneys to paying clients in similar cases. *See In re Synthroid Marketing Litig.*, 264 F.3d 712, 722 (7th Cir.2001). These expenses are reasonable given the full scope of the litigation, are documented in Class Counsel's business records, are reasonable in relation to the Settlement Fund, and should be awarded. *Id*. Moreover, they are consistent with awards in other class

action cases. *See In re Packaged Ice Antitrust Litig.*, 2012 U.S. Dist. LEXIS 162459, *47-48 (E.D. Mich. Nov. 13, 2012) (approving costs to plaintiff's counsel related to travel, telephone, printing, postage, federal express, Westlaw and IT services); *see also In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1066 (E.D. Mo. 2002) (awarding approximately $1.7 million to plaintiffs' counsel as reimbursement for out-of-pocket expenses advanced during the litigation including "expert witnesses; computerized research; court reporting services; travel expenses; copy, telephone and facsimile expenses; mediation; and class notification.").

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the court grant Class Counsel's request for an award of $1,200,000.00 in attorneys' fees, with $15,000 to be used to pay incentive awards for the added class representatives.  Further, Class Counsel requests the Court approve $100,000 in reimbursement of litigation expenses actually advanced, with any remainder, if any, to be added to the cash pool if unused in furtherance of the settlement upon receiving final approval.

Respectfully submitted,

Date: April 28, 2017          SOMMERS SCHWARTZ, P.C.

*/s/ Jason J. Thompson (*P47184)
Jason J. Thompson (P47184)
Jesse L. Young (P72614)
One Towne Square, 17th Floor
Southfield, Michigan 48076

Telephone: (248) 355-0300
Fax: (248) 436-8453
jthompson@sommerspc.com
jyoung@sommerspc.com

*/s/ Megan A. Bonanni*
Megan A. Bonanni (P52079)
Rachael Kohl (P78930)
Pitt McGehee Palmer & Rivers, P.C.
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mbonanni@pittlawpc.com
rkohl@pittlawpc.com

*Class Counsel*

## CERTIFICATE OF SERVICE

I certify that on April 28, 2017, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record on the ECF Service List.

*/s/ Jason J. Thompson*