IN THE MATTER OF THE PETITIONS CUTTYS..., 2000 WL 33300345...

2:16-cv-10877-SJM-RTM   Doc # 70-20   Filed 06/02/17   Pg 1 of 11   Pg ID 2988

2000 WL 33300345 (W.Va.Off.Hrg.App.)

Office of Hearings and Appeals

State of West Virginia

IN THE MATTER OF THE PETITIONS CUTTYS CORPORATION DBA LADY GODIVAS

Docket Nos. 98-225 C, 98-226 U
File No. 55 074 7230 001

IN THE MATTER OF THE PETITIONS FCK ENTERPRISES, INC. DBA LADY GODIVAS

Docket Nos. 98-227 C, 98-228 U
File No. 55 075 2567 001

IN THE MATTER OF THE PETITIONS HAMM INC. DBA LADY GODIVAS

Docket Nos. 98-229 C, 98-230 U
File No. 55 073 8450 001

IN THE MATTER OF THE PETITIONS CAPABARA INC. DBA LADY GODIVAS

Docket Nos. 98-231 C, 98-232 U
File No. 55 074 5007 001

IN THE MATTER OF THE PETITIONS FJT ENTERPRIZES, INC. DBA BIG BERTHAS

Docket Nos. 98-233 C, 98-234 U
File No. 55 071 1554 001

IN THE MATTER OF THE PETITIONS FORT KNOCKS, INC. DBA LADY GODIVAS

Docket Nos. 98-235 C, 98-236 U
File No. 55 073 4019 001

IN THE MATTER OF THE PETITIONS LJB ENTERPRISES, INC. DBA LADY GODIVAS

Docket Nos. 98-237 C, 98-238 U
File No. 55 071 6650 001

IN THE MATTER OF THE PETITIONS CLUB MANAGEMENT CORP. DBA LADY GODIVAS

Docket Nos. 98-239 C, 98-240 U
File No. 55 073 6656 001

IN THE MATTER OF THE PETITIONS FRIAR TUCKS INC.

Docket Nos. 98-241 C, 98-242 U
File No. 55 073 4007 001

IN THE MATTER OF THE PETITIONS RIVERVIEW INN, INC. DBA LADY GODIVAS

IN THE MATTER OF THE PETITIONS CUTTYS..., 2000 WL 33500345...

2:16-cv-10877-SJM-PTM   Doc # 70-20   Filed 06/02/17   Pg 2 of 11   Pg ID 2989

Docket Nos. 98-243 C, 98-244 U
File No. 55 074 4102 001

IN THE MATTER OF THE PETITIONS THE ACADEMY INC. DBA LADY GODIVAS'S

Docket Nos. 98-245 C, 98-246 U
File No. 55 074 1198 001
April 11, 2000

**DIVISION'S REPRESENTATIVES:**

 **\*1**  Wayne Williams
Staff Attorney
Alice Hall
Manager of Tax & Revenue, Auditing Division

**PETITIONERS' REPRESENTATIVES:**

James W. St. Clair
Attorney
Paul DesFosses
CPA
Mark Starcher
Bookkeeper
Frank Masiarczyk,
President of Lady Godivas
Chris Masiarczyk
Vice-President of Fort Knocks, Inc.
Calvin Lavender
Vice-President of FCK

**HEARING HELD:**
March 23, 1999, at 9:30 a.m.

State Tax Department

Office of Hearings and Appeals

1001 Lee St., East

Charleston, WV 25301

SYNOPSIS
**CONSUMERS SALES AND SERVICE TAX--PURCHASERS' USE TAX--TAX AUDITOR'S PRESENCE NOT REQUIRED--** Petitioners' objection to the admission into evidence of the tax assessments and audit memorandum unless and until the tax auditor was present was properly overruled because the Petitioners did not raise any objections to the technical aspects of the audit, including the accuracy of the entries recorded.

**CONSUMERS SALES AND SERVICE TAX--PURCHASERS' USE TAX--NO DEDUCTION FOR THE COST OF GOODS SOLD--** West Virginia Code § 11-15-2(i) defines "gross proceeds" as the amount of money received by the vendor without any deduction for the cost of goods sold or any other expense. As such, strip club operators licensed to sell alcoholic beverages who set the price of such drinks and mandate that no interaction between dancers and customers commence without

IN THE MATTER OF THE PETITIONS CUTTYS..., 2000 WL 33500345...

2:16-cv-10877-SJM-RTM Doc # 70-20 Filed 06/02/17 Pg 3 of 11 Pg ID 2990

payment thereof and also treat same as alcoholic beverages on their books and records are subject to sales and use tax on the full amount of the drinks sold and cannot deduct the portion ultimately kept by the dancers.

**\*2 CONSUMERS SALES AND SERVICE TAX--PURCHASERS' USE TAX--WITHHOLDING AND EMPLOYMENT TAX CASES NOT CONTROLLING--** Although exotic dancers are considered to be independent dancers for withholding tax and employment tax purposes, cases cited by the Petitioners are not precedent in sales and use tax cases to authorize the exclusion of the dancers' share of the income from the Petitioners' gross proceeds, where the Petitioners and not the dancers controlled the money, used an outside accountant to verify same, and where the Petitioners made sure that all payments were made before any services or activities were performed by the dancers.

**CONSUMERS SALES AND SERVICE TAX--PURCHASERS' USE TAX--NO EXEMPTION AS A LEASE OR RENTAL OF REAL PROPERTY--** In the absence of a lease or rental agreement executed between club owners and the dancers detailing the nature of their relationship, the amount of money retained by the club owners is fully taxable and not exempt as a lease or rental payment; no showing was made that the assessment is incorrect and contrary to law, in whole or in part. W. Va. Code § 11-10-9.

**CONSUMERS SALES AND SERVICE TAX--PURCHASERS' USE TAX--PERSONAL SERVICES EXEMPTION NOT APPLICABLE--** Services performed by strippers upon the person of a customer are not exempt as personal services under 110 C.S.R. 15, § 8.1.2.1 in the absence of proof that the dancer's were engaged in the business of barbering, massaging, manicuring, etc., and where they had no such licenses, did not hold themselves out to the general public as such, and where both state law and Petitioner's own policy forbade any such touching between dancers and customers.

**CONSUMERS SALES AND SERVICE TAX--PURCHASERS' USE TAX--GRATUITIES NOT INVOLVED--** Petitioners' reliance upon the Lakeview Inn and Country Club case, thereby analogizing that payments made to dancers are the same as tips paid to banquet staff, is misplaced since Petitioners, alone, set the price for lap dances, couch dances, massages, manicures, etc., and where payment thereof is not discretionary on the part of the dancers.

**CONSUMERS SALES AND SERVICE TAX--NO DOUBLE TAXATION--** The fact that the Petitioners may have erroneously paid sales tax on T-shirts and other items of tangible personal property which it in turn resold to patrons is not double taxation because (1) Petitioners are entitled to receive their refund within three (3) years after paying the tax, and (2) Petitioners did not produce any evidence proving that the Petitioners both paid and collected sales tax on the same transactions.

### ADMINISTRATIVE DECISION

On March 13, 1998, the Auditing Division issued consumers sales and service tax and purchasers' use tax assessments against Cuttys Corporation, dba Lady Godivas ("Petitioner"). The assessments were issued pursuant to the lawful authorization of the State Tax Commissioner, under the provisions of Chapter 11, Articles 10, 15, and 15A of the West Virginia Code.

**\*3** The consumers sales and service tax assessment was for the period of January 11, 1996 through December 31, 1997, for tax of $2,746.00, additions to tax of $-0-, and interest of $273.00, for a total assessed liability of $3,019.00.

The purchasers' use tax assessment was for the period of January 11, 1996 through December 31, 1997, for tax of $2,381.00, additions to tax of $-0-, and interest of $210.00, for a total assessed liability of $2,591.00.

On March 13, 1998, the Auditing Division issued consumers sales and service tax and purchasers' use tax assessments against FCK Enterprises, Inc., dba Lady Godivas ("Petitioner"). The assessments were issued pursuant to the lawful authorization of the State Tax Commissioner, under the provisions of Chapter 11, Articles 10, 15, and 15A of the West Virginia Code.

The consumers sales and service tax assessment was for the period of October 1, 1996 through December 31, 1997, for tax of $9,264.00, additions to tax of $-0-, and interest of $524.00, for a total assessed liability of $9,788.00.

The purchasers" use tax assessment was for the period of October 1, 1996 through December 31, 1997, for tax of $8.784.00, additions to tax of $-0-, and interest of $472.00, for a total assessed liability of $9,256.00.

On March 13, 1998, the Auditing Division issued consumers sales and service tax and purchasers' use tax assessments against Hamm Inc., dba Lady Godivas ("Petitioner"). The assessments were issued pursuant to the lawful authorization of the State Tax Commissioner, under the provisions of Chapter 11, Articles 10, 15, and 15A of the West Virginia Code.

The consumers sales and service tax assessment was for the period of July 1, 1995 through December 31, 1997, for tax of $10,502.00, additions to tax of $-0-, and interest of $1,480.00, for a total assessed liability of $11,982.00.

The purchasers' use tax assessment was for the period of July 1, 1995 through December 31, 1997, for tax of $7,698.00, additions to tax of $-0-, and interest of $985.00, for a total assessed liability of $8,683.00.

On March 13, 1998, the Auditing Division issued consumers sales and service tax and purchasers' use tax assessments against Capabara Inc., dba Lady Godivas, ("Petitioner"). The assessments were issued pursuant to the lawful authorization of the State Tax Commissioner, under the provisions of Chapter 11, Articles 10, 15, and 15A of the West Virginia Code.

The consumers sales and service tax assessment was for the period of January 1, 1997 through December 31, 1997, for tax of $2,749.00, additions to tax of $-0-, and interest of $153.00, for a total assessed liability of $2,902.00.

The purchasers' use tax assessment was for the period of January 1, 1997 through December 31, 1997, for tax of $2,138.00, additions to tax of $-0-, and interest of $126.00, for a total assessed liability of $2,264.00

On March 13, 1998, the Auditing Division issued consumers sales and service tax and purchasers use tax assessments against FJT Enterprises, Inc., dba Big Berthas ("Petitioner"). The assessments were issued pursuant to the lawful authorization of the State Tax Commissioner, under the provisions of Chapter 11, Articles 10, 15, and 15A of the West Virginia Code.

**\*4** The consumers sales and service tax assessment was for the period of July 1, 1995 through December 31, 1997, for tax of $7,177.00, additions to tax of $-0-, and interest of $1,038.00, for a total assessed liability of $8,215.00.

The purchasers' use tax assessment was for the period of July 1, 1995 through December 31, 1997, for tax of $5,613.00, additions to tax of $-0-, and interest of $733.00, for a total assessed liability of $6,346.00.

On March 13, 1998, the Auditing Division issued consumers sales and service tax and purchasers use tax assessments against Fort Knocks, Inc., dba Lady Godivas ("Petitioner"). The assessments were issued pursuant to the lawful authorization of the State Tax Commissioner, under the provisions of Chapter 11, Articles 10, 15, and 15A of the West Virginia Code.

The consumers sales and service tax assessment was for the period of July 1, 1995 through December 31, 1997, for tax of $7,112.00, additions to tax of $-0-, and interest of $793.00, for a total assessed liability of $7,905.00.

The purchasers' use tax assessment was for the period of July 1, 1995 through December 31, 1997, for tax of $5,985.00, additions to tax of $-0-, and interest of $638.00, for a total assessed liability of $6,623.00.

On March 13, 1998, the Auditing Division issued consumers sales and service tax and purchasers use tax assessments against LJB Enterprises, Inc., dba Lady Godivas ("Petitioner"). The assessments were issued pursuant to the lawful authorization of the State Tax Commissioner, under the provisions of Chapter 11, Articles 10, 15, and 15A of the West Virginia Code.

IN THE MATTER OF THE PETITIONS CUTTYS..., 2000 WL 33500345...

2:16-cv-10877-SJM-RTM   Doc # 70-20   Filed 06/02/17   Pg 5 of 11   Pg ID 2992

The consumers sales and service tax assessment was for the period of July 1, 1995 through December 31, 1997, for tax of $18,596.00, additions to tax of $-0-, and interest of $2,563.00, for a total assessed liability of $21,159.00.

The purchasers' use tax assessment was for the period of July 1, 1995 through December 31, 1997, for tax of $13,807.00, additions to tax of $-0-, and interest of $1,755.00, for a total assessed liability of $15,562.00.

On March 13, 1998, the Auditing Division issued consumers sales and service tax and purchasers use tax assessments against Club Management Corp., dba Lady Godivas ("Petitioner"). The assessments were issued pursuant to the lawful authorization of the State Tax Commissioner, under the provisions of Chapter 11, Articles 10, 15, and 15A of the West Virginia Code.

The consumers sales and service tax assessment was for the period of July 1, 1995 through December 31, 1997, for tax of $4,614.00, additions to tax of $-0-, and interest of $643.00, for a total assessed liability of $5,257.00.

The purchasers' use tax assessment was for the period of July 1, 1995 through December 31, 1997, for tax of $3,516.00, additions to tax of $-0-, and interest of $452.00, for a total assessed liability of $3,968.00.

On March 13, 1998, the Auditing Division issued consumers sales and service tax and purchasers use tax assessments against Friar Tucks Inc. The assessments were issued pursuant to the lawful authorization of the State Tax Commissioner, under the provisions of Chapter 11, Articles 10, 15, and 15A of the West Virginia Code.

**\*5** The consumers sales and service tax assessment was for the period of July 1, 1995 through December 31, 1997, for tax of $7,664.00, additions to tax of $-0-, and interest of $899.00, for a total assessed liability of $8,563.00.

The purchasers' use tax assessment was for the period of July 1, 1995 through December 31, 1997, for tax of $6,177.00, additions to tax of $-0-, and interest of $652.00, for a total assessed liability of $6,829.99

On March 13, 1998, the Auditing Division issued consumers sales and service tax and purchasers use tax assessments against Riverview Inn, Inc., dba Lady Godivas ("Petitioner"). The assessments were issued pursuant to the lawful authorization of the State Tax Commissioner, under the provisions of Chapter 11, Articles 10, 15, and 15A of the West Virginia Code.

The consumers sales and service tax assessment was for the period of March 1, 1996 through December 31, 1997, for tax of $19,311.00, additions to tax of $-0-, and interest of $1,705.00, for a total assessed liability of $21,016.00.

The purchasers' use tax assessment was for the period March 1, 1996 through December 31, 1997, for tax of $17,427.00, additions to tax of $-0-, and interest of $1,470.00, for a total assessed liability of $18,897.00.

On March 13, 1998, the Auditing Division issued consumers sales and service tax and purchasers use tax assessments against The Academy, Inc., dba Lady Godivas ("Petitioner"). The assessments were issued pursuant to the lawful authorization of the State Tax Commissioner, under the provisions of Chapter 11, Articles 10, 15, and 15A of the West Virginia Code.

The consumers sales and service tax assessment was for the period of July 1, 1996 through December 31, 1997, for tax of $2,915.00, additions to tax of $-0-, and interest of $240.00, for a total assessed liability of $3,155.00.

The purchasers' use tax assessment was for the period of July 1, 1996 through December 31, 1997, for tax of $2,776.00, additions to tax of $-0-, and interest of $205.00, for a total assessed liability of $2,981.00. The Petitioners timely filed petitions for reassessment. The matters were consolidated for hearing purposes. Subsequently, a notice of hearing on the petitions was furnished to the Petitioners. Thereafter, the hearing was held in accordance with W. Va. Code § 11-10-9.

## FACTS

The Petitioners are comprised of eleven (11) corporations which are engaged in the adult entertainment business. Petitioners operate using various corporate names and employing strippers/exotic dancers to entertain their clientele.

Prior to going on the record, both parties stipulated that the dancers at the clubs are independent contractors.

The only problem area found by the tax auditor is what he designated as "beverage service fees," which was a term that originated with an accountant previously employed by the Petitioners.

That category was broken down into two (2) types. The first type is when a customer purchases a drink for a particular dancer. The second element is when a customer purchases a private dance, massage, etc., from a particular dancer.

 **\*6**  If a customer purchases a drink for a dancer, she collects the price, which is set by the Petitioners either in cash or takes the customer's credit card and puts same into an envelope and gives it to the club or bar manager with her name on it. The amount of time that the dancer spends talking to a customer depends on the number of drinks that he purchases for her.

If a customer purchases a private dance, a private massage, time together in a hot tub, or has a dancer trim his beard or give him a shave, the amount which is again set by the Petitioner is given to the dancer in the form of cash or a credit card and said amount is placed in an envelope with her name on it and given to the bar club manager.

Once a week all of the proceeds are turned over to an outside accounting firm to make sure that all the collections either in the form of cash or from credit cards are properly accounted. The total is then divided in half with half going to the Petitioner and half going to the dancer. The dancer's portion is placed back into the original envelope and sent back to the dancer who signs as having received that amount.

Petitioners' witness testified that private dances, massages, and the like, all take place in rooms which have no doors and with windows along one side so that the customer and the dancer are visible by the public at all times.

Petitioners' witness further testified that the clubs' rules as well as state law prohibit personal touching of any kind during private dances or during any other kind of activity and that the law is enforced by the Petitioner.

More specific facts will be included in the issues discussed below.

## ISSUES AND DETERMINATIONS

The first issue to be determined is Petitioner's continuing objection to the admission into evidence of the tax assessments and audit memorandum without the tax auditor being present.

At the time, the administrative law judge overruled the objection stating that the case would proceed in order to decide whether the issues being contested actually require the presence of the tax auditor before any determination could be made.

Although the Petitioner did not agree with the substance of the assessments nor the conclusions reached by the tax auditor in the audit memorandum, the fact of the matter is that no objections were ever raised concerning the technical aspects of the audit, including the accuracy of any of the entries recorded.

Accordingly, it is **DETERMINED** that the absence of the tax auditor at the hearing had no effect upon the issues raised by the Petitioner for determination.

A second issue presented for consideration concerns the alcoholic beverages that a customer purchases when requested to do so by a particular dancer(s).

Petitioner argues that what the customer is really buying for the independent contractors (dancers) is just colored water or tea, not a real alcoholic beverage, and thus not a real sale item but that the same is simply a way of purchasing the contractor's companionship.

**\*7** This tribunal does not challenge the scenario proffered by the Petitioner; however the tax implications are decidedly different for the following reasons: First, it is undisputed that the sale price of the "alcoholic beverage" being purchased for the dancer is set by the Petitioner and no one else and that no interaction takes place between the two until the cash or credit card is taken to the bar manager. Secondly, the price of her drink, whatever the cost may be, is included as income in the Petitioners" books which are kept by its accountants. The fact that the contents of the drink is colored water or tea or that the major item being sold is companionship is totally irrelevant for tax purposes. Thirdly, the Petitioner and not the dancer is in the business of selling "alcoholic beverages" from its bars. Proof of that is that Petitioner's clubs are the entities licensed by the State of West Virginia to serve alcoholic beverages.

W. Va. Code § 11-15-2(i) defines gross proceeds as the amount received by the vendor (in this case the Petitioners) without any deduction for the cost of goods sold or any other expenses.

Therefore, it is **DETERMINED** that the full amount of the price of the beverage(s) being purchased by customers for the dancers is subject to sales or use tax for which the Petitioner remains solely liable.

The third issue raised for consideration is what is the proper tax treatment for the private lap dances, private massages, hot tub sessions with dancers, as well as the beard trimming and other grooming services which are also provided by the dancers to Petitioners' clientele.

Again, as was the case with the beverages purchased for the dancers, each of these activities is priced in advance by the Petitioner and none takes place until all the financial arrangements are completed to the satisfaction of the bar manager.

In their brief Petitioners' counsel sets forth what the Petitioners consider to be a number of cases supporting their theory that their dancers are independent contractors to the extent that the Petitioners may deduct from Petitioners' gross proceeds the moneys remitted by the Petitioners to the dancers. The case of Deja Vu Entertainment Enterprises of Minnesota, Inc. v. United States, District Ct., Civil Action No. 3-96-1078, is cited to reinforce the finding that such dancers are not employees but independent contractors and that that is a common practice in the adult entertainment business. Deja Vu Entertainment Enterprises kept track of the number of dances performed, but that fact alone did not alter the court's ruling that the dancers were not subject to withholding by the taxpayer because no showing was made that Deja Vu controlled its performers' income.

In citing the cases of Marlar v. United States, 151 F.3d 962, 964 (3d Cir. 19__), and Taylor Blvd. Theater, Inc. v. United States, Civil Action No. 3:97-CV-63H (W.D. Ky. 1997), Petitioners here argue that their situation is analogous, because the money in the Petitioners' clubs also flowed from the dancer to the club owner and not vice versa.

**\*8** It is undisputed that exotic dancers are generally recognized as independent contractors by the courts and that dancers pay their own income taxes as evidenced by a series of federal employment tax decisions to that effect.

The problem with the Petitioners' analogy is, in this case, two fold. First, the assessments issued against the Petitioners are not income, withholding, or employment tax for which the cited cases have direct precedential value. Second, as noted by opposing counsel, there are significant factual differences between the cited cases and the Petitioners' case, to-wit: (1) In Deja Vu, the club owner never touched any of the money paid by customers or sent same to its outside accountant to verify what had been received and (2) in Marlar, the dancers did not report their earnings to Marlar nor did Marlar claim to know what its dancers earned.

IN THE MATTER OF THE PETITIONS CUTTYS..., 2009 WL 3350634...

2:16-cv-10877-SJM-RTM   Doc # 70-20   Filed 06/02/17   Pg 8 of 11   Pg ID 2995

Simply put, the Petitioners, by setting the price of the various activities, making sure that the various activities do not commence before payment is made, and then handling all of the proceeds, including having the same tabulated by its outside accountant, have established sufficient dominion and control over the proceeds so that returning a portion of same to the dancers is clearly a cost of doing business which is again prohibited by West Virginia Code § 11-15-2(i).

The fourth issue raised by the Petitioners for determination is their claim that Publication TSD-300, which is circulated by the State Tax Department, specifically exempts from sales or use tax the rental of real estate.

Petitioners argue that the Marlar case previously cited herein stands for the proposition that independent contractors in the adult entertainment business are considered "lessees" who pay rent to the club owner for their scheduled shifts and other activities performed on the club owner's premises and, therefore, do not receive wages.

As noted before, Marlar and the other cited federal cases deal exclusively with employment and withholding tax matters and consequently do not have direct applicability to the present case.

In Marlar each erotic dancer was required to execute a "Dancer Performance Lease" which set forth an amount to be paid to the club owner for rent and a specific surcharge for couch or private dancers.

In Deja Vu each dancer was again required to sign a "Dancer Performance Lease" and was to pay the club a stage rental fee for dance sets.

In JJR, Inc. v. United States, 950 F. Supp. 1037 (1997), another federal employment tax case, the dancers were required to execute a contract which set forth a lease relationship and to pay a daily rent regardless of what the dancer made that day.

At the hearing, Petitioners testified that such a lessor (club owner) - lessee (dancer) relationship existed here; however, no written corroboration of any kind was offered into evidence to support same. The fact that a fifty (50)-fifty(50) split takes place without any particulars as to how that is computed (hourly, daily, or square foot) is suspicious at best and does not rise to the level of proof required of a taxpayer to prove that the assessment is incorrect and contrary to law, in whole or in part. W. Va. Code § 11-10-9.

*9 Consequently, it is **DETERMINED** that the monies retained by the Petitioners as a result of the activities performed by their dancers is not exempt from sales and use tax as a lease or rental of real property.

This issue is also problematic for another reason, specifically, that the Petitioners already paid taxes on the amount of money they thus retained. To the extent that the Petitioners may be insinuating that a refund is due them, that request is denied.

The fifth issue presented by the Petitioners for determination is its claim that TSD-300 also exempts from sales or use tax personal services performed upon the person of the customers by the dancers such as barbering, hair styling, manicuring, and massaging. Petitioners also contend that the personal services exemption extends even to the companionship which the dancers provide to the "person" of the individual customer.

110 C.S.R. 15, § 2.59.2 defines personal service as that, "rendered to the person of an individual without, at the same time, selling tangible personal property, such as nursing, barbering, shoe shining and similar services."

110 C.S.R. 15, § 8.1.2.1 speaks of services performed to the person of the individual and adds to the list massaging, manicuring, hair setting, hair washing, and dyeing, services of dental hygienists, and shoe-shining if the shoes remain on the customer's feet. 110 C.S.R. 15 § 8.1.2.2 goes further to say that the physical contact must be of a "continuing" nature and the touch must be direct either to the person or to the clothing worn by such a person.

It is a real stretch for the Petitioners to claim a personal service exemption for erotic dancers when the clear intent of the regulation(s) was to make it applicable to those engaged in the business of barbering, massaging, manicuring, and the like, and not to untrained persons who perform same either without a license or who do not hold themselves out to the general public as a barber, masseuse, or a manicurist.

Additionally, Petitioners' own witness testified that any such touching which takes place in a strip bar or strip club is expressly prohibited by state law and that the Petitioners enforce the law.

Because as an exemption statute is strictly construed against the one claiming same, and because exotic dancers are not within the category of persons entitled to the exemption for personal services, it is **DETERMINED** that said exemption is not applicable in this case.

The sixth issue raised by the Petitioners for consideration is their contention that what is ultimately kept by the dancer(s) is in the form of a gratuity and exempt from sales or use tax.

Petitioners rely on the case of Lakeview Inn & Country Club, Inc., 175 W. Va. 689, 338 S.E.2d 166 (1985), which involved gratuities paid to waiters and waitresses. Petitioner surmises that fees paid by patrons to dancers for companionship are akin to gratuities paid to a banquet staff, because the amount paid is based upon the perceived service received by the customer or patron. Petitioners add that the Code of Federal Regulations § 531.52-53 (1985), promulgated September 28, 1967 (hereafter CFR), provides that a tip (gratuity) paid by a customer is in recognition of some service being performed and can be distinguished from a payment for a charge made for the service. Petitioner concludes by saying that the amounts usually received by the dancers are possibly in excess of the value of the services being performed.

 **\*10**  To sustain Petitioners' argument would be to totally ignore the testimony of Petitioners' witness, who clearly stated that the amount to be paid for a lap dance, couch dance, massage, manicure, and the like, are all predetermined by the Petitioner and not the dancer. If the stated amount is not paid, the dancer does not perform.

This factual situation is entirely different from that which occurred in the Lakeview case, where payment to the banquet staff was entirely discretionary. It is also distinguishable from the CFR quoted by the Petitioners, because the fee is not a gratuity, but a stated charge for a particular service.

The seventh issue presented for determination concerns Petitioners' contention that they have been subjected to double taxation, because they have paid sales tax to vendors when purchasing T-shirts and also collected sales tax when selling those same T-shirts to their customers.

Petitioners were advised by the counsel for the Auditing Division that they had three (3) years from the time that the original tax was paid in which to file a claim for refund.

The burden of proof rests, of course, with the Petitioners, under W. Va. Code § 11-10-9, to show that the assessment is incorrect and contrary to law, in whole or in part. Therefore, because the Petitioners offered no documentation at the hearing proving that certain transactions were taxed twice, the assessment is upheld in toto.

**WHEREFORE**, it is the **DECISION** of the State Tax Department that the consumers sales and service tax assessment issued against Cuttys Corporation, dba Lady Godivas, for the period of January 11, 1996 through December 31, 1997, for tax of $2,746.00, and interest, updated through January 31, 2000, of $718.23, totaling $3,464.23, should be and is hereby **AFFIRMED**.

It is **ALSO** the **DECISION** of the State Tax Department that the purchasers' use tax assessment issued against Cuttys Corporation, dba Lady Godivas, for the period of January 11, 1996 through December 31, 1997, for tax of $2,381.00, and interest, updated through January 31, 2000, of $577.85, totaling $2,958.85, should be and is hereby **AFFIRMED**.

**WHEREFORE**, it is the **DECISION** of the State Tax Department that the consumers sales and service tax assessment issued against FCK Enterprises, Inc., dba Lady Godivas, for the period of October 1, 1996 through December 31, 1997, for tax of $9,264.00, and interest, updated through January 31, 2000, of $2,026.02, totaling $11,290.02, should be and is hereby **AFFIRMED**.

It is **ALSO** the **DECISION** of the State Tax Department that the purchasers' use tax assessment issued against FCK Enterprises, Inc., dba Lady Godivas, for the period of October 1, 1996 through December 31, 1997, for tax of $8,784.00, and interest, updated through January 31, 2000, of $1,829.10, totaling $10,613.10, should be and is hereby **AFFIRMED**.

**WHEREFORE**, it is the **DECISION** of the State Tax Department that the consumers sales and service tax assessment issued against Hamm, Inc., dba Lady Godivas, for the period of July 1, 1995 through December 31, 1997, for tax of $10,502.00, and interest, updated through January 31, 2000, of $3,182.75, totaling $13,684.75, should be and is hereby **AFFIRMED**.

**\*11** It is **ALSO** the **DECISION** of the State Tax Department that the purchasers' use tax assessment issued against Hamm, Inc., dba Lady Godivas, for the period of July 1, 1995 through December 31, 1997, for tax of $7,698.00, and interest, updated through January 31, 2000, of $2,174.32, totaling $9,872.32, should be and is hereby **AFFIRMED**.

**WHEREFORE**, it is the **DECISION** of the State Tax Department that the consumers sales and service tax assessment issued against Capabara, Inc., dba Lady Godivas, for the period of January 1, 1997 through December 31, 1997, for tax of $2,749.00, and interest, updated through January 31, 2000, of $598.71, totaling $3,347.71, should be and is hereby **AFFIRMED**.

It is **ALSO** the **DECISION** of the State Tax Department that the purchasers use tax assessment issued against Capabara, Inc., dba Lady Godivas, for the period of January 1, 1997 through December 31, 1997, for tax of $2,138.00, and interest, updated through January 31, 2000, of $456.31, totaling $2,594.31, should be and is hereby **AFFIRMED**.

**WHEREFORE**, it is the **DECISION** of the State Tax Department that the consumers sales and service tax assessment issued against FJT Enterprises, Inc., dba Big Berthas, for the period of July 1, 1995 through December 31, 1997, for tax of $7,177.00, and interest, updated through January 31, 2000, of $2,201.64, totaling $9,378.64, should be and is hereby **AFFIRMED**.

It is **ALSO** the **DECISION** of the State Tax Department that the purchasers' use tax assessment issued against FJT Enterprises, Inc., dba Big Berthas, for the period of July 1, 1995 through December 31, 1997, for tax of $5,613.00, and interest, updated through January 31, 2000, of $1,600.19, totaling $7,213.19, should be and is hereby **AFFIRMED**.

**WHEREFORE**, it is the **DECISION** of the State Tax Department that the consumers sales and service tax assessment issued against Fort Knocks, Inc., dba Lady Godivas, for the period of July 1, 1995 through December 31, 1997, for tax of $7,112.00, and interest, updated through January 31, 2000, of $1,946.11, totaling $9,058.11, should be and is hereby **AFFIRMED**.

It is **ALSO** the **DECISION** of the State Tax Department that the purchasers' use tax assessment issued against Fort Knocks, Inc., dba Lady Godivas, for the period of July 1, 1995 through December 31, 1997, for tax of $5,985.00, and interest, updated through January 31, 2000, of $1,562.66, totaling $7,547.66, should be and is hereby **AFFIRMED**.

**WHEREFORE**, it is the **DECISION** of the State Tax Department that the consumers sales and service tax assessment issued against LJB Enterprises, Inc., dba Lady Godivas, for the period of July 1, 1995 through December 31, 1997, for tax of $18,596.00, and interest, updated through January 31, 2000, of $5,578.07, totaling $24,174.07, should be and is hereby **AFFIRMED**.

It is **ALSO** the **DECISION** of the State Tax Department that the purchasers use tax assessment issued against LJB Enterprises, Inc., dba Lady Godivas, for the period of July 1, 1995 through December 31, 1997, for tax of $13,807.00, and interest, updated through January 31, 2000, of $3,888.14, totaling $17,695.14, should be and is hereby **AFFIRMED**.

 *12 **WHEREFORE**, it is the **DECISION** of the State Tax Department that the consumers sales and service tax assessment issued against Club Management Corp., dba Lady Godivas, for the period of July 1, 1995 through December 31, 1997, for tax of $4,614.00, and interest, updated through January 31, 2000, of $1,391.09, totaling $6,005.09, should be and is hereby **AFFIRMED**.

It is **ALSO** the **DECISION** of the State Tax Department that the purchasers use tax assessment issued against Club Management Corp., dba Lady Godivas, for the period of July 1, 1995 through December 31, 1997, for tax of $3,516.00, and interest, updated through January 31, 2000, of $995.21, totaling $4,511.21, should be and is hereby **AFFIRMED**.

**WHEREFORE**, it is the **DECISION** of the State Tax Department that the consumers sales and service tax assessment issued against Friar Tucks, Inc., for the period of July 1, 1995 through December 31, 1997, for tax of $7,664.00, and interest, updated through January 31, 2000, of $2,141.61, totaling $9,805.61, should be and is hereby **AFFIRMED**.

It is **ALSO** the **DECISION** of the State Tax Department that the purchasers' use tax assessment issued against Friar Tucks, Inc., for the period of July 1, 1995 through December 31, 1997, for tax of $6,177.00, and interest, updated through January 31, 2000, of $1,606.33, totaling $7,783.33, should be and is hereby **AFFIRMED**.

**WHEREFORE**, it is the **DECISION** of the State Tax Department that the consumers sales and service tax assessment issued against Riverview Inn, Inc., dba Lady Godivas, for the period of March 1, 1996 through December 31, 1997, for tax of $19,311.00, and interest, updated through January 31, 2000, of $4,836.00, totaling $24,147.00, should be and is hereby **AFFIRMED**.

It is **ALSO** the **DECISION** of the State Tax Department that the purchasers' use tax assessment issued against Riverview Inn, Inc., dba Lady Godivas, for the period of March 1, 1996 through December 31, 1997, for tax of $17,427.00, and interest, updated through January 31, 2000, of $4,162.41, totaling $21,589.41, should be and is hereby **AFFIRMED**.

**WHEREFORE**, it is the **DECISION** of the State Tax Department that the consumers sales and service tax assessment issued against The Academy, Inc., dba Lady Godivas, for the period of July 1, 1996 through December 31, 1997, for tax of $2,915.00, and interest, updated through January 31, 2000, of $712.62, totaling $3,627.62, should be and is hereby **AFFIRMED**.

It is **ALSO** the **DECISION** of the State Tax Department that the purchasers' use tax assessment issued against The Academy, Inc., dba Lady Godivas, for the period of July 1, 1996 through December 31, 1997, for tax of $2,776.00, and interest, updated through January 31, 2000, of $633.89, totaling $3,409.89, should be and is hereby **AFFIRMED**. It is **FINALLY DETERMINED** that the interest on each of these tax liabilities is **ABATED** for the period of February 1, 2000 through the date of this Administrative Decision, pursuant to the provisions of W. Va. Code § 22-20-76(a)(2).

 *13  George V. Piper
Administrative Law Judge

2000 WL 33300345 (W.Va.Off.Hrg.App.)