CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD
DECISION OF THE ADMINISTRATIVE LAW JUDGE ORANGE COUNTY APPEALS OFFICE
(714) 562-5560

DATE MAILED: JUN 27 1995

CASE NO: C-T-67077

DATE PETITION FILED: AUGUST 19, 1993

PETITIONER: FRITZ THATS IT
C/O ROBERT L MCCUE JR. CPA
P.O. BOX 3073
PALM SPRINGS CA 92263

DATE AND PLACE OF HEARING:
MAY 4, 1995
SANTA ANA CA

EMPLOYMENT DEVELOPMENT DEPARTMENT
RESPONDENT

PARTIES PRESENT:
PETITIONER
DEPARTMENT

## STATEMENT OF FACTS

The petitioner petitioned for review of a denial of its claim for a refund of $39,919.47 representing amounts paid by the petitioner pursuant to an assessment levied by the department for sums alleged to have been due for contributions, personal income tax, penalties and interest.

The assessment covered the period of April 1, 1990 to March 31, 1993 in represented amounts alleged to be due on unreported remuneration paid to dancers, disk jockeys, cleaning persons and day laborers.

At the hearing and in its petition, the petitioner specified that its petition was directed only to the workers designated as dancer entertainers.

The petitioner operates a bar and restaurant featuring entertainment consisting of dancers who perform dances on stages erected within the establishment for the entertainment of the customers. The dancers perform both clothed and partially

clothed at which time they are known as topless dancers. The dancers provide their own clothing, their own dance routines and the means for providing the music for their dancing. That is, the dancers can and do provide magnetic tapes or other such instrumentalities which are utilized in the employer's audio system to broadcast the music to which the dancers dance.

The dancers entered into a written agreement with the petitioner wherein the parties mutually agreed that the services would be performed by the dancers as independent contractors with the pertinent provisions of the written agreement being that the dancers would provide visual entertainment in the form of dancing services for customers of the client, providing their own costumes and choreographing with the dancer free to perform services at any time in which the client requires the performance of such services. Specifically, the dancers would not be required to perform services according to scheduled dates and times although they would be expected to provide the petitioner with a notice of availability. Other provisions were that the dancer would not be required to devote any minimum number of hours per month to the services and were free at all times to perform services for other clients at their own discretion.

With respect to taxes the agreement provided that the dancers would be responsible for payment of all their own personal liability for federal and state taxes and would provide their own workers compensation insurance coverage.

With respect to compensation the agreement provided that the petitioner would pay the dancers $3.50 per hour for such services.

Representative testimony at the hearing from four workers who performed as dancers for the petitioner and additional affidavits from four other such individuals consistently and uniformally asserted that the dancers were free to perform when and if they desired and were not required to adhere to any specific work schedule. They were free to offer their services to other clients and did so even during the course of the relationship with the petitioner. Any compensation received from the petitioner was negligible in that the vast majority of their income was derived from tips tendered by customers of the establishment in response to the dancers performance.

An additional consistent assertion of the witnesses was that the dancers were not even required to dance when they were present in the facility. When they desired to do so they would simply place their name on a roster and would then take turns dancing if their name came to the top of the list.

C-T-67077          2

The available evidence not in agreement with the general consensus of the witnesses referred to above consists of an affidavit from a former worker who performed services for the petitioner prior to the period of assessment involved herein and who performed services in three different capacities for the petitioner. She performed as a dancer, as a waitress and as a bartender at different periods of time. She has litigation pending with the petitioner concerning two alleged on the job injuries which have become an area of dispute between her and the petitioner in one instance because of the contention of the petitioner she was injured while performing as an independent contractor and in the other instance apparently questioning the actual validity of the claim. As a result of that and other disputes between them, there is an apparent hostility between the two. Be that as it may, she asserts in her affidavit that she performed services as what she describes as a dancer/waitress meaning she did both in direct connection with each other. In other words, she would dance and then perform as a waitress and then dance, etc. She was directed to clock in and out on a time clock and if she failed to do so was not paid. She contends she was required to go topless on the stage when she was dancing and to wear appropriate clothing or unclothing. She contends she had to dance to a certain number of songs and perform topless to a designated number of songs. She contends the order of dancing for the dancers was established by the petitioner and could not be changed except by appropriate members of management. Finally, she contends that she was required to perform on a regular schedule in which there was a black board at the petitioner's place of business with each dancer's name listed and then the day of the week that they were to work and the shift.

The other items of evidence of significance were photographs taken by the department representative at the petitioner's place of business showing a automatic time clock and an adjacent group of time cards. There was also a placard entitled "New Time Card Rules" indicating that any worker who clocked in one minute late would be docked one hour and anyone who clocked out one minute early would be docked one hour.

The petitioner did have a number of acknowledged employees other than the dancer entertainers and the evidence was unclear as to whether it was contended that these rules applied to the dancer entertainers or to the acknowledged employees. The representative testimony at the hearing indicated that the dancers frequently didn't bother with time cards as there was little interest in the nominal hourly wage with the great bulk of their compensation consisting of tips as discussed earlier.

REASONS FOR DECISION

Employer contributions to the Unemployment Fund shall accrue and become payable by employers "with respect to wages paid for employment" (Unemployment Insurance Code, section 976).

Contributions are due the Department from employers with respect to wages paid in employment for unemployment insurance (section 976 of the Unemployment Insurance Code), disability insurance (section 984 of the code), employment training (section 976.6 of the code), and personal income taxes (section 13020 of the code).

Section 601 of the Unemployment Insurance Code provides as follows:

"601. 'Employment' means service, including service in interstate commerce, performed by an employee for wages or under any contract of hire, written or oral, express or implied."

Section 621(b) of the Unemployment Insurance Code defines "employee" to include "Any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee."

The following factors are considered in determining whether or not an employment relationship exists (Tieberg v. California Unemployment Insurance Appeals Board (1970) 2 Cal. 3d 943, 950):

1. Which party has the right to control the manner and means of accomplishing the result desired;

2. Whether there is a right to discharge at will, without cause;

3. Whether or not the one performing services is engaged in a distinct occupation or business;

4. Whether the work is usually done under the direction of an employer, or by a specialist without supervision;

5. The skill required;

6. Who supplies the instrumentalities, tools, and place of work of the one performing services.

7. The length of time for which the services are to be performed;

8. The method of payment, whether by time or by the job;

C-T-67077                             4

9. Whether or not the work is part of a regular business of the beneficiary of the services.

10. Whether or not the parties believe they are creating a relationship of master and servant.

A contractual provision that a workman is an independent contractor is persuasive evidence of the intended relationship, but it is not controlling and the legal relationship may be governed by the subsequent conduct of the parties (Brown v. Industrial Accident Commission (1917) 174 Cal. 457).

In the present case the workers whose status is in issue, the dancer entertainers, did perform their services under a written agreement wherein the expressed intent of the parties was that they were to perform as independent contractors and be responsible for their own taxes. This is therefore highly persuasive evidence of the intended relationship but is not controlling.

Accordingly, it is necessary to evaluate the conduct of the parties under the criteria of the Tieberg case.

Initially, the evidence is not sufficiently clear to make a direct finding at the outset that he petitioner did or did not have a right to control the manner and means by which the dancers accomplished the desired result. Therefore, it is necessary to look to the ancillary factors discussed in the Tieberg case to determine whether or not that right of control existed.

With respect to whether or not the dancers were performing services while engaged in a distinct occupation or business, the evidence is not entirely clear. However, what is clear, is that the individual dancers were unanimously of the opinion that they were engaged in a distinct occupation and were able at all times to offer their services either to the petitioner or to anyone else where they felt that they could receive satisfactory remuneration for their work. None actually was known to be attempting to market herself as an individual engaged in business as a dancer other than for their offering such services to various potential customers, usually through word of mouth.

The type of work being done is one which could be under the direction of an employer or by an individual without supervision.

With respect to the skill required, the skill of the dancers would obviously be an immensely important factor in their success and in their being able to achieve adequate remuneration for their services since it consisted almost entirely of voluntary

C-T-67077                                5

contributions from customers of the establishment who would tip for what they considered to be a satisfactory performance. Accordingly, it is concluded that there was a substantial amount of skill required for the performance of the services.

The dancers supplied their own costumes, music and choreographing while the petitioner provided the place where the services were to be performed, the stage on which the dancing was done and the audio equipment necessary for the playing of the music provided by the dancers. Therefore, this criterion is of little help in resolving the issue to be dealt with herein.

The agreement between the petitioner and the dancers did not contemplate any specific length of time for which the services were to be performed, the oral testimony available at the hearing establishes that there was no specific length of time for the dancers to perform their services which was entirely up to the individual dancer both as to when and even if they were to perform the services.

The overwhelming consensus of the testimony was that any remuneration paid by the petitioner was incidental and nominal and not really a factor in the relationship. Substantially all of the remuneration of the dancers was in the form of voluntary tips from customers of the establishment and therefore payment was not by time or by the job but rather at the whim of individual customers expressing appreciation for a performance.

The dancers did perform their services as a part of their regular business of the petitioner in that it was for the entertainment of its customers and in the hope of attracting such customers.

Finally, it is noted initially, the parties believed and intended that the relationship was to be that of an independent contractor as opposed to an employee.

It is recognized that some of the conclusions set forth above are at variance with the affidavit of the one former employee who furnished an affidavit to the department making assertions which if found true would clearly establish an employment relationship. Little weight has been given to that declarant's declarations because of the fact that her period of relationship with the petitioner was prior to the assessment period so she could not know what type of conduct was engaged in by the petitioner and dancers employed during the period covered by the assessment and the fact that the declarant has some obvious bias and prejudice against the petitioner.

contributions from customers of the establishment who would tip for what they considered to be a satisfactory performance. Accordingly, it is concluded that there was a substantial amount of skill required for the performance of the services.

The dancers supplied their own costumes, music and choreographing while the petitioner provided the place where the services were to be performed, the stage on which the dancing was done and the audio equipment necessary for the playing of the music provided by the dancers. Therefore, this criterion is of little help in resolving the issue to be dealt with herein.

The agreement between the petitioner and the dancers did not contemplate any specific length of time for which the services were to be performed, the oral testimony available at the hearing establishes that there was no specific length of time for the dancers to perform their services which was entirely up to the individual dancer both as to when and even if they were to perform the services.

The overwhelming consensus of the testimony was that any remuneration paid by the petitioner was incidental and nominal and not really a factor in the relationship. Substantially all of the remuneration of the dancers was in the form of voluntary tips from customers of the establishment and therefore payment was not by time or by the job but rather at the whim of individual customers expressing appreciation for a performance.

The dancers did perform their services as a part of their regular business of the petitioner in that it was for the entertainment of its customers and in the hope of attracting such customers.

Finally, it is noted initially, the parties believed and intended that the relationship was to be that of an independent contractor as opposed to an employee.

It is recognized that some of the conclusions set forth above are at variance with the affidavit of the one former employee who furnished an affidavit to the department making assertions which if found true would clearly establish an employment relationship. Little weight has been given to that declarant's declarations because of the fact that her period of relationship with the petitioner was prior to the assessment period so she could not know what type of conduct was engaged in by the petitioner and dancers employed during the period covered by the assessment and the fact that the declarant has some obvious bias and prejudice against the petitioner.

Finally, the photograph of the time clock and the time cards when viewed solely on its own would suggest very strongly an employment relationship. However, the evidence shows that there were a number of acknowledged employees and the evidence is fairly conflicting as to whether or not the dancer entertainers were subject to the time clock rules so the conclusion is reached that the existence of the time clock and the time cards is not particularly persuasive as to the existence or nonexistence of the employee relationship.

Based upon an evaluation of the conduct of the parties, their written intent as expressed in the written agreement and the nature of the services provided, it is concluded that the individuals designated as dancers/entertainers performed their services as independent contractors and not as employees of the petitioner.

Accordingly, the petition for refund is granted insofar as it was based upon remuneration alleged to have been paid to the dancer entertainers for services performed as such entertainers. In the event that one or more of those individuals performed other services for the petitioner, such as waitressing, the granting of this petition is not to be deemed to relieve the petitioner from any legal responsibilities with respect to any other such relationship with one or more of the same individuals identified as dancers/entertainers.

DECISION

The petition for refund is granted as to those workers designated as dancer/entertainers.

W. J. LEHAN
Administrative Law Judge

WJL:sc
THIS DECISION IS FINAL UNLESS APPEALED
WITHIN 20 CALENDAR DAYS. FOR APPEAL OR
REOPENING RIGHTS, SEE ATTACHED NOTICE.

C-T-67077                                                7

EXHIBIT T
Page 7