Not Reported in Cal.Rptr.2d, 2003 WL 464076 (Cal.App. 1 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2003 WL 464076 (Cal.App. 1 Dist.))**

▶

Only the Westlaw citation is currently available.

California Rules of Court, rule 8.1115, restricts citation of unpublished opinions in California courts.

Court of Appeal, First District, Division 3, California.
Ashley M. MOODY, et al., Plaintiffs and Respondents,
v.
Tom Great RAZOOLY, Defendant and Appellant.
No. A099065.
(Humboldt County Super. Ct. No. DR990199).

Feb. 25, 2003.

Exotic dancers brought action against owner of night club, alleging they were employees entitled to minimum wages. The Superior Court, Humboldt County, No. DR990199, entered judgment in favor of dancers. Club owner appealed. The Court of Appeal, Pollak, J., held that: (1) occupation of exotic dancer was not an "artistic profession" exempted from minimum wage laws; (2) probative value of evidence that dancers subsequently worked as independent contractors at a competing establishment was outweighed by risk of undue consumption of time; and (3) employer was entitled to credit for "special dance" fees collected by dancers from night club patrons.

Affirmed in part, reversed in part, and remanded with directions.

West Headnotes

**[1] Labor and Employment 231H ⇌2252**

231H Labor and Employment
    231HXIII Wages and Hours
        231HXIII(B) Minimum Wages and Overtime Pay
            231HXIII(B)3 Exemptions
                231Hk2252 k. Particular Exemptions in General. Most Cited Cases
        (Formerly 232Ak1193 Labor Relations)

Occupation of exotic dancer, which called for performer to bare her breasts to the accompaniment of recorded music, and in the case of "special dances" her entire body, was not an "artistic profession" within meaning of wage law, and thus exemption from minimum wage laws did not apply; position did not require any prior experience as a dancer as a condition of employment, performers were not provided training in the area of exotic dancing, work was neither original and creative nor did it depend primarily on performer's invention, imagination or talent, and performer exercised minimal degree of discretion and control with respect to the performance of work. 29 C.F.R. § 541.302.); Cal.Code Regs., tit. 8, § 11100).

**[2] Evidence 157 ⇌146**

157 Evidence
    157IV Admissibility in General
        157IV(D) Materiality
            157k146 k. Tendency to Mislead or Confuse. Most Cited Cases

Probative value of evidence that exotic dancers worked as independent contractors at a competing establishment after they left their employment at night club was outweighed by the undue consumption of time and could confuse and mislead the jury in dancers' action against owner of club, alleging they were employees entitled to minimum wages; dancers' status at another club was of only marginal relevance to their employment status at owner's club. West's Ann.Cal.Evid.Code § 352.

**[3] Labor and Employment 231H ⇌2389**

231H Labor and Employment
    231HXIII Wages and Hours
        231HXIII(B) Minimum Wages and Overtime Pay

Not Reported in Cal.Rptr.2d, 2003 WL 464076 (Cal.App. 1 Dist.)

**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**

**(Cite as: 2003 WL 464076 (Cal.App. 1 Dist.))**

231HXIII(B)6 Actions
 231Hk2388 Damages and Amount of Recovery
  231Hk2389 k. In General. Most Cited Cases
 (Formerly 232Ak1193 Labor Relations)

Following determination that exotic dancers were employees entitled to back wages under wage laws, employer was entitled to credit for "special dance" fees collected by dancers from night club patrons; jury found that special dance fees were not tips, but rather were payments that belonged to club owner. Labor Code section 2860; Lab.Code, § 1197.5.

POLLAK, J.

**\*1** Plaintiffs Ashley Moody, Crystal Hurley, and Noelle Seely were dancers at Tom Great Razooly's Tip Top Club.[FN1] Plaintiffs filed suit alleging that they were employees rather than independent contractors as Razooly had designated them, and that Razooly failed to pay them the minimum wages required by law. The trial court granted plaintiffs' motion for summary adjudication rejecting the affirmative defense that plaintiffs were artists and therefore exempt from the minimum wage law. At trial, the court excluded Razooly's proffered evidence concerning plaintiffs' employment after leaving the Tip Top Club. The jury found for plaintiffs and the trial court entered judgment accordingly. We agree that the trial court properly granted plaintiffs' summary adjudication motion and excluded the testimony concerning plaintiffs' subsequent employment, but we conclude that the trial court improperly calculated plaintiffs' damages.

> FN1. Plaintiff Seely apparently dismissed herself from the action at the beginning of the trial, and is not a party to this appeal.

**FACTUAL AND PROCEDURAL HISTORY**[FN2]

> FN2. The facts are taken exclusively from the clerk's transcript, as the parties waived the presence of a court reporter at trial and, therefore, no reporter's transcript is available for our review.

Razooly owns the Tip Top Club, where plaintiffs worked as semi-nude and nude dancers. According to the complaint, plaintiffs had oral agreements with Razooly under which they paid Razooly a stage rental fee for permission to dance and to collect money from the patrons of the Tip Top Club. Plaintiffs were also expected to solicit patrons to purchase "executive dances" and "lap dances" at set rates (the special dance fees), the proceeds of which were shared between plaintiffs and Razooly. Plaintiffs allege that their employment was governed by rules that were set forth in writing by Razooly. These rules purported to govern the schedules, costumes and personal grooming habits of the dancers, and restricted the music to which dancers were permitted to perform. Violation of the rules was allegedly grounds to impose fines, which the dancers were required to pay before they would be permitted to resume dancing.

Plaintiffs alleged that they were employees and that Razooly had failed to compensate them for their services. The first cause of action for unpaid wages alleged that plaintiff Moody had not been paid for 729 regular hours and 34 hours of overtime; and that plaintiff Hurley had not been paid for 1184 regular hours and 103 hours of overtime. Plaintiffs alleged that they were entitled to be paid minimum wages for these hours. The second cause of action alleged that Razooly withheld tips that were collected by plaintiffs. In addition to recovering these amounts, and "liquidated damages" pursuant to Labor Code section 1194.2, the complaint sought a declaration that plaintiffs were employees of Razooly and the Tip Top Club.

Razooly denied the material allegations of the complaint and asserted 22 affirmative defenses, including that plaintiffs were "entertainers and performers" and therefore not subject to minimum wage laws. Plaintiffs moved for summary adjudication on all of the affirmative defenses, and the trial

Not Reported in Cal.Rptr.2d, 2003 WL 464076 (Cal.App. 1 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2003 WL 464076 (Cal.App. 1 Dist.))**

court granted the motion. However, the trial court denied the motion to summarily adjudicate that the plaintiffs were employees rather than independent contractors, finding that there were triable issues of fact requiring that the jury decide this issue.

**\*2** Following trial, the jury found that from May 1998 through March 1999 plaintiffs were employees of Razooly, and that Razooly had failed to pay them minimum wages for their regular hours. The jury found that during this period Hurley had worked 1029 regular hours, but no overtime hours, and that Moody had worked 617 regular hours, but no overtime hours. The jury also found that the special dance fees were not tips, and that Hurley had retained $1,975 in special dance fees and Moody had retained $6,275 in special dance fees. When the trial court entered judgment, it awarded Hurley back wages of $5,916.75 (1029 hours at $5.75 per hour) plus interest, and Moody back wages of $3,547.75 (617 hours at $5.75 per hour) plus interest, and equal amounts as liquidated damages under Labor Code section 1194.1. Razooly moved for a new trial on the ground that the court had failed to credit him for the amount of special dance fees retained by plaintiffs. The court denied the motion and Razooly timely appealed from the amended judgment in plaintiffs' favor.

### DISCUSSION

*Summary Adjudication Ruling*

The trial court granted plaintiffs' motion for summary adjudication on all of Razooly's affirmative defenses. On appeal, Razooly challenges the grant of summary adjudication only as to his first affirmative defense that plaintiffs were exempt from minimum wage requirements because they are artists. "Summary adjudication of an affirmative defense is properly granted when there is no triable issue of material fact as to the defense, and the moving party is entitled to judgment on the defense as a matter of law." ( *Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 977-978, 90 Cal.Rptr.2d 743.) We review the ruling on a motion for summary adjudication de novo. ( *Tilley v. Schulte* (1999) 70 Cal.App.4th 79, 82, 82 Cal.Rptr.2d 497.)

Exemptions from state wage and hour requirements are narrowly construed, and the burden is on the employer to show that an exception applies. ( *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794-795, 85 Cal.Rptr.2d 844, 978 P.2d 2.) The California Industrial Welfare Commission (IWC) "is the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California. [Citations.] ... Division of Labor Standards Enforcement (DLSE), headed by [the] Labor Commissioner, is the state agency empowered to enforce California's labor laws, including IWC wage orders. [Citations.]" ( *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561-562, 59 Cal.Rptr.2d 186, 927 P.2d 296.)

In granting the motion, the trial court relied upon Wage Order No. 10-89 (Cal.Code Regs., tit. 8, § 11100), which provides an exemption from the minimum wage laws for those "engaged in an occupation commonly recognized as a learned or artistic profession." [FN3] The trial court recognized that what constitutes an artistic profession is a factual issue, but concluded that the undisputed facts here are sufficient to render the question one of law. We agree with that conclusion.

> FN3. California Code of Regulations, title 8, section 11100 provides: "This Order shall apply to all persons employed in the amusement and recreation industry whether paid on a time, piece rate, commission, or other basis, except that: (A) [Certain] [p]rovisions ... shall not apply to persons employed in administrative, executive, or professional capacities. No person shall be considered to be employed in an administrative, executive, or professional capacity unless.... (2) The employee ... is engaged

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in Cal.Rptr.2d, 2003 WL 464076 (Cal.App. 1 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2003 WL 464076 (Cal.App. 1 Dist.))**

in an occupation commonly recognized as a learned or artistic profession...."

**\*3** [1] The uncontroverted evidence established that plaintiffs were not professionally trained dancers, that no training was provided once they were hired, and that the nature of their performances was to bare their breasts to the accompaniment of recorded music, and in the case of "special dances" their entire bodies. Razooly does not dispute that Hurley's prior employment involved minimum wage jobs in food service and in-home healthcare and that she had no training or prior experience in any form of dance; that Moody had no prior experience or training as an exotic dancer and no prior training in dance except for ballet and tap dancing lessons when she was eight years old;[FN4] that Razooly did not require any prior experience as a dancer as a condition of employment at the Tip Top Club; and that he provided no training in the area of exotic dancing to the plaintiffs.

> FN4. Although Razooly's declaration states that Moody told him she had been an actress in an adult film, he does not dispute that she had no dance training.

Contrary to Razooly's suggestion, granting summary adjudication on these facts does not reflect a value judgment concerning the social worth of plaintiffs' performances, but simply recognizes the indisputable fact that performing in this manner, without training or experience, is not commonly recognized as engaging in an artistic profession for the purposes of applying California's wage law. "Artistic professions" is defined in the federal regulations under the Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 201 et seq.), to which one is directed for guidance by both the current Division of Labor Standards Enforcement (DLSE) Enforcement Policies and Interpretations Manual (§§ 54.8, 54.9, 54.10.4, 54.10.5) and case law ( *Nordquist v. McGraw-Hill Broadcasting Co.* (1995) 32 Cal.App.4th 555, 562, 38 Cal.Rptr.2d 221 ( *Nordquist* )).[FN5] The federal regulations define "artistic professions" as follows: "Work of this type is original and creative in character in a recognized field of artistic endeavor (as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training), and the result of which depends primarily on the invention, imagination, or talent of the employee." (29 C.F.R. § 541.302.) As reflected by their lack of training and experience, plaintiffs' nude or semi-nude dancing can be performed by a person endowed with general manual ability. While there may be some exotic dancers who qualify as artists, the record reflects that plaintiffs' work is neither original and creative nor does it depend primarily on their invention, imagination or talent. The answers given by the plaintiffs at their depositions, that they believe themselves to be artists and that "there is some creativity in what [they] do," was not sufficient to create a triable issue of fact. In determining whether plaintiffs are exempted from wage and hour laws, their personal assessment of the artistic merits of their performance is irrelevant. The cases cited by Razooly holding that exotic dancing is expression protected by the First Amendment are likewise irrelevant to determining whether plaintiffs' occupation falls within the narrow exception to California wage law.

> FN5. Another definition may be found in the Talent Agencies Act, which provides: "No person shall engage in or carry on the occupation of a talent agency without first procuring a license therefor from the Labor Commissioner." (Lab.Code, § 1700.5.) A talent agency is "a person or corporation who engages in the occupation of procuring, offering, promising, or attempting to procure employment or engagements for an artist or artists." (Lab.Code, § 1700.4, subd. (a).) "Artists" means "actors and actresses rendering services on the legitimate stage and in the production of motion pictures, radio artists, musical artists, musical organizations, directors of legitimate stage, motion picture and radio productions, musical directors, writers, cinematographers,

Not Reported in Cal.Rptr.2d, 2003 WL 464076 (Cal.App. 1 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2003 WL 464076 (Cal.App. 1 Dist.))**

composers, lyricists, arrangers, models, and other artists and persons rendering professional services in motion picture, theatrical, radio, television and other entertainment enterprises." (Lab.Code, § 1700.4, subd. (b).)

**\*4** A further factor that supports the conclusion of the trial court is the minimal degree of discretion and control exercised by the plaintiffs with respect to the performance of their work. Razooly's declaration denying that the detailed work rules relied upon by plaintiffs were more than a draft that was never distributed may create a triable issue in that respect, although the meaning of his declaration is cast in some doubt by his further statement that "[t]hat is not to say there weren't some rules which were enforced which could remotely be referenced by the Rule book." Nonetheless, even the written "Job Description Guidelines for Private Contractor Dancers" that Razooly acknowledges were distributed, though he says were never enforced, supports the appropriateness of the summary adjudication. These "guidelines" begin with the admonition that they are "a guideline of rules that *must be followed* while working at the Tip Top Club. Any infractions to these rules could result in suspension or termination of your ability to work at the Tip Top. Some rules, if broken, have fines that must be paid prior to resuming work at the Tip Top." (Italics added.) They continue with some 61 numbered rules, and additional unnumbered directives, many of which are plainly inconsistent with the notion that these dancers are creative performers.[FN6]

> FN6. Although the rules state that the dancers are responsible to schedule their own hours and days of work, "[m]issing scheduled work hours, or arriving late[, b]eing unable to complete work" are "grounds for considering dismissal." Additionally, "[a]ll dancers must provide a schedule one week in advance.... [¶] ... Management will approve the scheduling requests and post the actual schedule. Dancers may not work consecutive Friday and Saturday shifts...." Further, "[d]ance rotation is controlled by management or DJ only. Dancers must get permission before going on or off rotation"; "Dancers who are not ready to dance at their scheduled times will be subject to a $5.00 fine. Two hours late constitutes a missed shift, and dancer will be subject to a 20.00 missed shift fine."

> There are 10 directives concerning "Dancer Appearance" which the dancers must "always follow," including "Your hair must be shiny, styled; long, fluffy hair is best. Hair may not be pulled back"; "You must have fresh breath; floss, brush your teeth, use mouth wash, use breath mints often. Do not chew gum in the club"; "You must apply make-up"; "You must wear high heels"; and "You must wear dancer hose if you have bruises, cellulite, or other imperfections."

> There are nine directives for the performance of "Lap Dance/Stage/Full Nude Dances," such as "Dancers pelvis must remain a minimum of 6" away from a customers face and sexual areas.... The price of nude, lap, and table dances are set by management and are not to be negotiated by dancers."

> Among the other rules are the following: "Heels and make-up are mandatory for all work hours"; "Tip Top dancers do not sit on tables, or put their feet up on chairs"; "Never reveal your actual name, or ... personal information about yourself, or any other dancer"; "All dancers are required to participate in club promotions such as bachelor/birthday stage dances, two for one lap dances, dollar table dances.... [¶] All dancers are to be aware of arriving customers. You are strongly urged to meet them at the door

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in Cal.Rptr.2d, 2003 WL 464076 (Cal.App. 1 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
(Cite as: 2003 WL 464076 (Cal.App. 1 Dist.))

and introduce yourself. Help seat them, distribute menus, and serve drinks." "Dancers are expected to dance to random top 40 classic dance music"; "The house fee for every lap dance, or table dance is $5.00. The house fee for every executive dance is $10.00. Payout for the T-shirt give-away dance will be $10.00, to cover the cost of the shirt. Bathing pool payout is $10.00 per sponge." Private dance house fees are collected by dancer and turned in to management *be-fore* dances begin. All prices are set by management, and no dancer is allowed to sell dances for a different price. "Dancers are expected to promote the club when not at work...."

The trial court properly cited *Nordquist, supra,* 32 Cal.App.4th 555, 38 Cal.Rptr.2d 221, in support of its conclusion. In *Nordquist,* the Court of Appeal held that a television station sports director/newscast anchor did not come within a comparable exception to the wage and hour provisions for a professional or administrative employee engaged in work which is primarily intellectual, managerial or "creative" and requires the exercise of discretion and independent judgment. Regarding the artistic professional exemption, the court quoted from the former manual of the DLSE: "Relatively few individuals qualify for exemption as members of artistic professions in California, since most of those who have sufficient control over the nature [of] their own work and over their work hours are self-employed. Academic degrees are not required, but a specialized course of study of at least four years is generally one element involved in establishing a professional standing in the fine arts. This by itself is not enough, however. A composer or vocal or instrumental soloist may be exempted because of the individual's wide-ranging discretionary powers, including control over his or her working conditions, but a member of the orchestra will not be, no matter how professional a musician he or she may be. A few writers employed in the motion picture or broadcast industries have sufficient discretionary powers to be exempt, but most do not, even when they work at home, because of time limits, restricting outlines or other constraints on the creative aspects of their work. A newspaper columnist required only to furnish, for example, five columns per week, regardless of subject, time of preparation, etc., could be exempted from Order 4, but reporters, editors and advertising copy writers could not...." ( *Nordquist, supra,* at pp. 562-563, 38 Cal.Rptr.2d 221, citing former DLSE Operations and Procedures Manual, § 10.63.)

**\*5** Razooly correctly points out that subsequent to *Nordquist,* the Supreme Court ruled that the guidelines promulgated in the former DLSE manual were regulations and, as such, void because not enacted pursuant to the Administrative Procedures Act. ( *Tidewater Marine Western, Inc. v. Bradshaw, supra,* 14 Cal.4th at p. 572, 59 Cal.Rptr.2d 186, 927 P.2d 296.) Nonetheless, the underlying wage order is not void and the court must interpret it independently. (*Id.* at p. 577, 59 Cal.Rptr.2d 186, 927 P.2d 296 ["Courts must enforce those wage orders just as they would if the DLSE had never adopted its policy."].) In doing so, the court may consider, for whatever persuasive force it may have, the DLSE interpretation of the wage order. "Courts must, in short, independently judge the text of the statute, taking into account and respecting the agency's interpretation of its meaning, of course, whether embodied in a formal rule or less formal representation. Where the meaning and legal effect of a statute is the issue, an agency's interpretation is one among several tools available to the court. Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth." ( *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7-8, 78 Cal.Rptr.2d 1, 960 P.2d 1031.) In *Nordquist,* the court found the reasoning of the former DLSE manual to be persuasive, as do we, and supported by additional authority. The court cited in support of its analysis the federal decision in *Dalheim v. KDFW-TV* (N.D.Tex.1988) 706 F.Supp. 493, af-

Not Reported in Cal.Rptr.2d, 2003 WL 464076 (Cal.App. 1 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
(Cite as: 2003 WL 464076 (Cal.App. 1 Dist.))

firmed, 918 F.2d 1220, in which the *Nordquist* court summarized, "the directors were not artistic professionals because they operated principally within accepted guidelines rather than relying on invention, imagination or talent in performing their job." ( 32 Cal.App.4th at p. 566, 38 Cal.Rptr.2d 221.) The *Nordquist* court also cited with approval the decision in *Freeman v. National Broadcasting Co., Inc.* . (S.D.N.Y.1993) 846 F.Supp. 1109, in which a group of television newscast employees were held not to come within the exemption for artistic professionals because "the reporting of news, the rewriting of stories received from various sources, and the routine editorial work of a reporter was not predominantly original and creative in character." ( 32 Cal.App.4th at p. 567, 38 Cal.Rptr.2d 221.)

The current DLSE manual differs from the language that appeared in the manual quoted in *Nordquist.* As noted above, the current DLSE manual looks to the federal regulations for guidance in interpreting the meaning of an artistic profession. (DLSE Enforcement Policies and Interpretations Manual, §§ 54.8, 54.9, 54.10.4, 54.10.5.) The DLSE manual states that "California law dictates use of the criteria found at [29 C.F.R.] § 541.207, requiring that the employee '*customarily and regularly* exercise[s] discretion and independent judgment.' " (DLSE Enforcement Policies and Interpretations Manual, § 54.10.4, underscoring in original.)[FN7] "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term ... implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." (29 C.F.R. 541.207(a).)

> FN7. The DLSE Enforcement Policies and Interpretations Manual points out, however, that the exception is construed more narrowly under California law, since the federal regulations "require that a learned or artistic professional 'must perform work which requires the *consistent* exercise of discretion and judgment in its performance,' 29 CFR § 541.305(a)." (§ 54.10.4., underscoring in original.)

**\*6** In view of the admitted absence of any professional training or continued professional development for plaintiffs as dancers at the Tip Top Club, together with the circumscribed and non-discretionary nature of their roles as described in Razooly's "guidelines," the trial court correctly concluded that as a matter of law plaintiffs are not "artists" within the meaning of Wage Order No. 10-89. Therefore they were not exempt from the minimum wage law, and this defense was properly adjudicated summarily in their favor.

*Evidentiary Ruling*

Before the trial began, the court granted plaintiffs' motion in limine to exclude evidence that, after they left their employment at the Tip Top Club, they worked as independent contractors at a competing local establishment. Razooly sought reconsideration of this ruling, and the court again ruled that it would exclude the evidence. The trial court reasoned that under Evidence Code section 352 the probative value of the evidence was outweighed by the undue consumption of time and could confuse and mislead the jury.

[2] " 'Broadly speaking, an appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence. [Citations.] Speaking more particularly, it examines for abuse of discretion a decision on admissibility that turns on the relevance of the evidence in question.' " ( *City of Rippon v. Sweetin* (2002) 100 Cal.App.4th 887, 900, 122 Cal.Rptr.2d 802.) Applying this standard, the trial court did not abuse its discretion in barring the evidence of plaintiffs' subsequent employment. Whether plaintiffs worked as independent contractors at a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in Cal.Rptr.2d, 2003 WL 464076 (Cal.App. 1 Dist.)
**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**
**(Cite as: 2003 WL 464076 (Cal.App. 1 Dist.))**

different club is marginally relevant at best to their status at the Tip Top Club, since the determination of whether they were employees or independent contractors depended on the conditions of their employment at the Tip Top Club, regardless of the custom in the industry or the practice of other clubs in the same geographical area. Moreover, admitting this proffered evidence would have opened the door to responsive evidence describing in greater detail the conditions at other establishments, which could well have been both unduly time-consuming and confusing. "Under section 352, a trial court may in its discretion exclude material evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time, or create a substantial danger of undue prejudice, confusion of the issues, or misleading the jury. The weighing process under section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules." ( People v. Jennings (2000) 81 Cal.App.4th 1301, 1314, 97 Cal.Rptr.2d 727.) Here, there was no abuse of discretion.

*Credit for Special Dance Fees Withheld by Plaintiffs*

Razooly also challenges the trial court's denial of his motion for a new trial. "[A] trial judge is accorded a wide discretion in ruling on a motion for new trial and ... the exercise of this discretion is given great deference on appeal. [Citations.] However, we are also mindful of the rule that on an appeal from the judgment it is our duty to review all rulings and proceedings involving the merits or affecting the judgment as substantially affecting the rights of a party [citation], including an order denying a new trial. In our review of such order denying a new trial, as distinguished from an order granting a new trial, we must fulfill our obligation of reviewing the entire record, including the evidence, so as to make an independent determination as to whether the error was prejudicial." ( City of Los Angeles v. Decker (1977) 18 Cal.3d 860, 871-872, 135 Cal.Rptr. 647, 558 P.2d 545.) If prejudicial error exists, we must reverse. ( Sherman v. Kinetic Concepts, Inc. (1998) 67 Cal.App.4th 1152, 1161, 79 Cal.Rptr.2d 641.)

**\*7** Razooly argues that the trial court erred in denying his motion for a new trial because he was not credited the amount of the special dance fees retained by plaintiffs against the wages that the jury found he was obligated to pay plaintiffs. Plaintiffs argue that they had an agreement with Razooly in which "the special dance fees were a direct payment by the customer to the dancer for the dancer's services, with the dancer then kicking back a portion (without the patron's knowledge) to the Club." The trial court denied Razooly's motion for a new trial with the explanation that "[t]he jury made no finding that the defendant was legally entitled to get back the special dance fees the patrons paid directly to the dancers as agreed to by the contract between the plaintiffs and defendant."

[3] While the trial judge correctly recognized in her ruling on the new trial motion that the special verdict found the facts only, and that it was for the court to reach conclusions of law based on those findings, whether Razooly was entitled to receive credit for the special dance fees was a question of law for the court to decide. There is no significance to the fact that the jury did not make an express determination of that issue, so long as a conclusion may be drawn from the facts that it did find. Based upon those facts and the applicable legal standards, Razooly was entitled to the setoff he demanded.

Labor Code section 1197.5, subdivision (g) provides: "Any employee receiving less than the wage to which the employee is entitled under this section may recover in a civil action *the balance* of the wages" to which the employee is entitled. (Italics added.) Labor Code section 2860 provides that "Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in Cal.Rptr.2d, 2003 WL 464076 (Cal.App. 1 Dist.)

**Nonpublished/Noncitable (Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)**

**(Cite as: 2003 WL 464076 (Cal.App. 1 Dist.))**

his employment." However, tips received by an employee are the property of the employee absent an agreement to the contrary with the employer. (See *Anders v. State Board of Equalization* (1947) 82 Cal.App.2d 88, 92, 185 P.2d 883.)

Plaintiffs contended at trial that the special dance fees that they received from customers, and which by agreement they shared with Razooly, were tips to them rather than dance fees being paid to the club. The jury found against plaintiffs on this issue, answering "no" to the question: "Do you find the special dance fees paid were a gratuity (tip)?" Plaintiffs do not challenge the jury's finding. Therefore, if these payments were not tips, under Labor Code section 2860 they necessarily belonged to Razooly, not to plaintiffs, and he is entitled to a credit for the amounts retained by them against the wages that he owed them. Plaintiffs are entitled to receive only "the balance of the wages" (Lab.Code, § 1197.5, subd. (g)); they are not entitled to a windfall. Plaintiffs' position that the special dance fees were paid directly to the dancers by the patrons and therefore belonged to the dancers cannot be reconciled with the jury's finding that the fees were not tips and the provisions of Labor Code section 2860. [FN8] Therefore, the judgment must be modified to reduce the amount of unpaid wages to which each of the plaintiffs is entitled by the amount of special dance fees that the jury found that each retained.

> FN8. Razooly argues that Labor Code section 350, subdivision (e), which was amended in 2000 to address tips retained by dancers, does not apply in this case because the work at issue was performed prior to the amendment of the section. Although plaintiffs argued in the trial court that the section applied, they have not renewed the argument on appeal, so that it is not necessary for the court to address this issue.

**\*8** In the case of plaintiff Hurley, this adjustment will reduce the judgment (for both damages and liquidated damages) by $1,975.00, to $3,941.75, plus interest. In the case of plaintiff Moody, however, the jury found that she had retained $6,275.00 of special dance fees, which exceeds the amount of unpaid wages to which she was entitled and for which judgment was entered. Since Razooly has not appealed from the trial court's failure to award him recovery on his cross-complaint, this court is not in position to order Moody to refund the difference, but the offset to which Razooly is entitled eliminates entirely the amount owed to Moody and the judgment in her favor must be reduced to zero.

### DISPOSITION

The matter is remanded so that the judgment may be modified in accordance with this opinion. All parties shall bear their own costs on appeal.

We concur: CORRIGAN, Acting P. J., and PARRILLI, J.
Cal.App. 1 Dist.,2003.
Moody v. Razooly
Not Reported in Cal.Rptr.2d, 2003 WL 464076 (Cal.App. 1 Dist.)

END OF DOCUMENT