UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE 1–2, individually and on behalf
of all others similarly situated,

        Plaintiffs,

v.

DEJA VU SERVICES, INC., et al.,

        Defendants.

_____/

Case No. 2:16-cv-10877

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER OVERRULING OBJECTIONS [39], [47], [50], [51], [56], GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT [41], GRANTING AMENDED MOTION FOR ATTORNEY FEES AND COSTS [43], FINDING MOTION TO DISMISS [12] MOOT, AND FINDING MOTION FOR ATTORNEY FEES AND COSTS [42] MOOT

In a collective and class action complaint, Plaintiffs Jane Doe 1 and 2 alleged that Defendants Deja Vu Services, Inc., DV Saginaw, LLC, Harry Mohney, and Deja Vu affiliated nightclubs violated of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, state wage and hour laws, and the California Business and Professions Code. ECF 33. The Court granted preliminary approval of the parties' proposed class settlement, to which six class members objected. The Court held a Fairness Hearing and heard arguments from the parties and two of the objectors. For the reasons stated below, the Court will overrule the objections, grant the Motion for Final Approval of Settlement, and grant the Amended Motion for Attorney Fees and Costs.

## BACKGROUND

The dispute between Plaintiffs and Defendants dates back nine years. *See Jane Doe v. Cin-Lan, Inc.*, 2:08-cv-12719 (E.D. Mich. July 15, 2011). *Cin-Lan* involved nearly the

same defendants, claims, and proposed settlement, and many of the same class members. After three years of highly contested litigation, the *Cin-Lan* parties proposed a class settlement. The Court in *Cin-Lan* held a fairness hearing, *id.* at ECF 402, granted final approval, and retained jurisdiction to enforce the settlement, *id.* at ECF 430.

Five years later, Plaintiffs filed this class and collective action suit alleging violations of the FLSA and state wage and hour laws. *See* Compl., ECF 1; Am. Compl., ECF 33. Specifically, Plaintiffs alleged that Defendants intentionally misclassified class members as independent contractors, refused to pay minimum wage, unlawfully required employees to split gratuities, and unlawfully deducted employee wages through rents, fines, and penalties. Defendants filed a motion to dismiss or stay. ECF 12. They argued that the named Plaintiff's contract mandated binding arbitration. *Id.* Six months ago, the parties reached a settlement and filed a motion to transfer the case to this Court, because the proposed settlement affected the parties' rights and obligations under the *Cin-Lan* settlement. ECF 22.

## DISCUSSION

Federal Rule of Civil Procedure 23(e) requires parties to obtain court approval of class-action settlements. Approval is a three-step process: "(1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable." *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565–66 (6th Cir. 2001).

2

On February 7, 2017, the Court granted preliminary approval to the proposed settlement, ECF 31, because it suffered from no obvious deficiencies and appeared to fall within "the range of possible approval." *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010) (quoting Manual for Complex Litigation s 1.46, at 53–55 (West 1981)).The Court's order instructed the parties to send out notice to inform the class of the proposed settlement no later than February 28, 2017. ECF 31. Also, the notices advised class members that the Court would hold a the fairness hearing on June 6, 2017 at 2:00 p.m. ECF 34-5.

After the Plaintiffs filed a Motion for Final Approval of Settlement, ECF 41, and an Amended Motion for Attorney Fees and Costs, ECF 43, the Court received five objections: from C.T. (represented by W. Allen McDonald), B.D (represented by Daniel Arciniegas), Eva Cabrera and Brittney Halverson (represented by Guy Conti and Harold Lichten), Stephanie Sage (not represented by counsel), and Merry Clark (also not represented by counsel). On June 6, 2017, the Court held a fairness hearing and heard arguments from the parties and from attorneys Lichten and Arciniegas.

I.   <u>Certification of the Settlement Class is Appropriate</u>

As noted in the order granting preliminary approval, the parties seek certification of a settlement class that includes "[a]ll current and former entertainers who worked for Defendants at any time during the Class Period and today's date at any of the Déjà Vu affiliated clubs[.]" ECF 31, PgID 718; *see also* ECF 34-2 (listing 64 "Deja Vu affiliated clubs"). The "class period" begins on the date when each class member's state wage and hour claim statute of limitations period began to run prior to March 10, 2016. ECF 34-1.

3

The proposed class meets the requirements of Federal Rule of Civil Procedure 23(a): numerosity ("the class [must be] so numerous that joinder of all members is impracticable"), commonality ("there [must be] questions of law or fact common to the class"), typicality ("the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class"), and adequacy of representation ("the representative parties [must] fairly and adequately protect the interests of the class"). *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 569 (6th Cir. 2004)

First, the class consists of 28,177 members; that fact makes joinder of all class members impracticable. *See id.* at 570 (holding that the "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy" the numerosity requirement). Second, a common legal question applies to each of the class members' claims: whether Defendants misclassified class members as independent contractors. That question is "central to the validity of each one of the claims" of the class members under any of the applicable state wage and hour laws. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Third, the class representatives' claims satisfy the typicality requirement because they "stem from a single event or a unitary course of conduct, or . . . are based on the same legal or remedial theory"—namely, the Defendants' business practices of classifying workers as independent contractors. *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 509 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1493 (2016).

Fourth, to determine adequacy of representation, "[t]he representative must have common interests with unnamed members of the class, and . . . it must appear that the

representatives will vigorously prosecute the interests of the class through qualified counsel." *Vassalle v. Midland Funding, LLC*, 708 F.3d 747, 757 (6th Cir. 2013). Both requirements are met here: class representatives raise FLSA and wage and hour claims common to the class, and they have pursued their claims with the assistance of experienced and qualified counsel.

Finally, the Court looks to Federal Rule of Civil Procedure 23(b)(3). That rule permits a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The requirement is met here because "the issues subject to generalized proof"—whether Defendants correctly classified class members performing similar work in similar circumstances as independent contractors—"predominate over those issues that are subject to only individualized proof." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012).

II.    The Settlement Class Received Adequate Notice

Federal Rule of Civil Procedure 23(e)(1) and (2) require that class members receive reasonable and adequate notice of a proposed class settlement. The class consists of 28,177 members. At the fairness hearing, the parties stated that 24,575 notices were delivered, 4,623 class members have opted in to the proposed settlement, and 66 class members opted out of the proposed settlement. Also, the Plaintiffs certified that notice had been provided in accordance with the Court's preliminary approval order. The notices stated—in clear and easily understandable terms—the key information class members needed to make an informed decision: the nature of the action, the class claims, the

5

definition of the class, the general outline of the settlement, how to to elect for a cash payment, how to opt out of the class, how to object to the settlement, the right of class members to secure counsel, and the binding nature of the settlement on class members who do not to opt out. ECF 34-5.

In another notice-related provision, Federal Rule of Civil Procedure 23(e)(5) provides that "[a]ny class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval." Accordingly, the notices advised that class members who filed timely objections to the settlement could voice their objections at the June 6 fairness hearing. ECF 34-5. Also, the notices stated that class members had 95 days from the Court's preliminary approval order—until May 13th—to object or opt out of the class. *See* ECF 31, PgID 720. In addition, the parties took additional steps to provide notice to class members, including through targeted advertisements on social media. ECF 66, PgID 2061.The Court finds that the parties have provided the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and complied with the requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, and due process.

III.   <u>The Proposed Class Settlement is Fair, Reasonable, and Adequate</u>

Under Federal Rule of Civil Procedure 23(e)(2), "the court may approve [a settlement that would bind class members] only after a hearing and on finding that it is fair, reasonable, and adequate." To determine whether the proposed settlement meets the requirements of Rule 23, the Court considers seven factors: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount

of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

"[I]n class-action settlements the district court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation—namely, the class." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013). As a result, the Court must "carefully scrutinize" a class settlement to ensure that class counsel and representatives meet their "fiduciary obligations" to the class. *Id.* As proponents of the settlement agreement, the parties bear the burden to prove that the proposed settlement agreement is fair. *Id.* at 719.

A. Likelihood of Success on the Merits

A district court "cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631 (quotations omitted). Thus, "the district court must specifically examine what the unnamed class members would give up in the proposed settlement, and then explain why—given their likelihood of success on the merits—the tradeoff embodied in the settlement is fair to unnamed members of the class." *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 309 (6th Cir. 2016).

The major point of contention between the parties and the objectors is whether the settlement adequately compensates class members for release of their claims. Under the terms of the settlement, all the opt-in class members release their FLSA claims, and all class members—except those who opted out—release their state-wage-and-hour claims.

ECF 34-1, PgID 861. To estimate the value of those claims, the parties provided a damages model for a typical class member. ECF 66-7. The model shows a rough approximation of the hours worked over a three-year period based on data from a named class representative. Although far from ideal, the Court finds the damage model useful to determine class members' range of possible recovery. According to the model, the possible damages for a frequent worker in the class range from $443.08 to $6,006.70 per year of employment, depending on whether full minimum wage, reduced minimum wage, or a damages offset applied. *See* ECF 66-7, PgID 2221. The parties note that the absence of records creates a major obstacle to estimating damages. *See* ECF 66 PgID 2095–96.

In exchange for releasing their claims, the class will receive injunctive relief and either a payment from the cash pool or remuneration from the secondary pool in the form of a rent-credit or dance-fee payment. According to the parties, the combined value of the settlement is $6.55 million. The injunctive relief applies to all class members. The settlement requires Defendants to provide dancers with an "Entertainment Assessment Form" which appears to be a questionnaire designed to ensure that Defendants accurately categorize each dancer as an independent contractor or employee based on the economic realities test. ECF 34-3. Also, the injunctive relief requires Defendants to offer each class member the opportunity to cancel their current independent contractor status and accept a position as an employee. ECF 34-7 ("Enhanced Offer of Employment" form). Also, Plaintiffs argue the injunctive relief benefits class members who prefer to continue as independent contractors: Defendants may not impose work schedules, may not require tip-outs, must limit fines, and must give contractors a vote on some club policies. ECF 34-1,

8

PgID 851–54. Defendants value the injunctive relief at $3.4 million, based in part on $173 in wages paid per employee per shift, if 7.5% of the class were to accept the employment offer. ECF 70, PgID 2426.

Next, the proposed settlement creates a cash pool of $1 million and a secondary pool of $4.5 million. Class members can choose between one or the other. First, the cash pool provides cash compensation to class members in the form of a single monetary payment, distributed based on a point system that gives more money to class members who have worked for Defendants more recently, and for longer periods of time. The money will be distributed completely, with no reversion to Defendants. Also, the cash pool will fund a $30,000 incentive payment for the two named class representatives, and half of the settlement administration costs—$50,000. The Defendants will bear the costs of the remaining $50,000 in administration costs. In sum, the settlement requires Defendants to distribute $920,000 in cash to class members. Class members may elect payment from the cash pool until June 22, 2017. ECF 66, PgID 2061.

The secondary pool is the default form of relief, meaning any class members who have not opted out, or have not opted for cash settlement, will be eligible for a rent-credit or dance-fee payment for one year from the settlement date. The rent-credit pool pays 60% of a class member's rent on a given day. For clubs that do not operate on a rent system, class members may receive a dance-fee payment, up to a maximum of $100 per day. Class counsel will retain 33% of the secondary payment as an attorney fee. Any unclaimed secondary-pool benefits revert to the Defendants. The settlement creates three tiers; the more months a class member has worked, the more rent credits or dance fees she is eligible to receive.

9

Also, the settlement mandates that Defendants pay $100,000 to resolve issues surrounding the California PAGA (Private Attorney General Act) of which $75,000 will be paid to the California Labor Workforce Development Agency, and $25,000 to the California class members.

Lastly, the settlement provides $1.2 million in attorney fees to class counsel—$900,000 in direct attorney fees, and up to $300,000 indirect attorney fees contingent on the amount of rent credits or dance fees claimed by class members.

At the fairness hearing, Plaintiffs stated that a worker similar to the named class representative—whose damage model forms the estimate for the class—will receive $2,000 from the cash pool; the average payment from the cash pool will be around $200. The Court notes that $2,000 compensates the named Plaintiff for more than 50% of her $3,878.88 damages, based on three years of back pay for full minimum wage with an offset applied. ECF 66-7, PgID 2221. The secondary pool would apparently also provide between $200 to $2,000 in rent-credit or dance-fee payments to class members. ECF 41-2, PgID 1180.

The objectors cry foul. They make two primary arguments. First, the objectors claim that the parties have failed to precisely calculate the value of the released claims. *See* ECF 47, PgID 1561–64 (objecting that Plaintiffs have failed to show "the range of possible recoveries class members might obtain" through successful litigation); *see also* ECF 50, PgID 1812–17 (arguing that the parties failed to "perform[] any sort of damage calculations for class members"). And second, the objectors contend that, given the value of the claims released, the settlement vastly under-compensates class members. ECF 39, PgID 1071

10

(objecting to amount of cash settlement); ECF 47, PgID 1565 (estimating that class

damages "exceed $141 million"); ECF 51, PgID 1952 (arguing that Plaintiffs "settled much

too cheaply"); ECF 56, PgID 1986 ("The settlement is nowhere near enough."). In support,

the objectors cite to a variety of dancer-misclassification cases in which both individuals

and classes received cash payments of thousands or tens of thousands of dollars. *See,*

*e.g.*, ECF 73-1 (preliminary approval of class settlement providing an average payment of

$8,817.36 to 106 class members).

As an initial matter, the Court greatly appreciates the arguments offered by the

objectors. In particular, Mr. Lichten impressed the Court with his knowledge of the law and

familiarity with class-action litigation. As to the objectors' first argument, however, the Court

disagrees. Class damage "[c]alculations need not be exact[.]" *Comcast Corp. v. Behrend*,

133 S. Ct. 1426, 1433 (2013). Although the Plaintiffs' damage model may not achieve the

precision sought by objectors, it provides a sufficient basis for the Court to evaluate the

value of the claims released. Since "[t]he approximate value of such claims is discernable

based on the record before the Court, . . . an evaluation of the fairness and reasonableness

of a release of those claims is possible." *Grissam v. Ranraj Singh Dhanju I, Inc.*, No. 6:16-

CV-1368-ORL-41-KRS, 2016 WL 7210946, at *1 (M.D. Fla. Dec. 13, 2016).

As to the second objection, the Court respectfully submits that the objectors have

underestimated the risks of litigation and overestimated the likelihood of success on the

merits. The Supreme Court will address the enforceability of mandatory arbitration clauses

in its 2017 term, *see, e.g.*, *Epic Systems Corp. v. Lewis*, 137 S. Ct. 809 (mem) (2017),

and that fact adds a large measure of uncertainty to continued litigation. More importantly,

however, Plaintiffs' damages may very well be limited to a reduced minimum wage, as

11

tipped employees, or offset by other payments made to class members and recorded by IRS Form 1099s. *See* ECF 66-7. Moreover, the objectors did not take into account the risk of a counterclaim from Defendants for repayment of mandatory dance fees in the event class members were improperly classified as employees. *See Cin-Lan*, Case No. 2:08-cv-12719, ECF 70. The key question is not Plaintiffs' likelihood of success against the defendants in the cases cited by the objectors, *see, e.g.*, ECF 47-4, but their likelihood of success against Defendants here. *See generally Buel v. Chowder House, Inc.*, No. A108951, 2006 WL 1545860 (Cal. Ct. App. June 7, 2006) (holding substantial evidence supported jury verdict that Deja Vu affiliated club properly classified dancer as independent contractor). If the class were to continue to litigate, it would face serious risks: mandatory and binding arbitration, an unfavorable verdict, or a substantial reduction in damages.

Next, the objectors attack the injunctive relief as a "sham," *see, e.g.*, ECF 47, PgID 1579, characterize the rent credits as perfunctory "coupons," *see, e.g.*, *id.* at 1576, and chastize the parties for failing to inform the Court how much of the $9 million rent-credit pool from *Cin-Lan* was actually disbursed to class members, *see, e.g.*, *id.* at 1578.

The Court finds the objections unavailing. At the outset, the Defendants claim—and the objectors failed to rebut—that the injunctive relief provides $3.4 million in value to the class, based in part on additional wages. ECF 70, PgID 2426. More importantly, however, the injunctive relief mandates long-term, structural changes to Defendants' business practices: an improved screening system to accurately classify workers, an enhanced offer of employment, and increased benefits and protections for employees and independent contractors alike. Unlike the vague health warnings issued in *In re Dry Max Pampers Litig.*,

724 F.3d 713, 719 (6th Cir. 2013), or the illusory and short-term injunction in *Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013), the injunctive relief here provides real benefits to the class.

The objectors' coupon arguments are likewise made in good faith, but unpersuasive. Unlike a coupon that offers "perfunctory" relief, *see Dry Max*, 724 F.3d at 719, the secondary pool here will offer many class members a direct payment of $100 in dance fees each day they work. Also unlike a coupon that requires a consumer to buy the defendant's product, the rent credit increases a worker's net gain in compensation. The rent credits are not available only to "very few" class members who uttered the correct "magic words." *Date v. Sony Elecs. Inc.*, No. 07-15474, 2009 WL 435289, at *4–5 (E.D. Mich. Feb. 20, 2009). Rather, rent credits are available to the entire class. And since the cash pool is available as an alternative to the secondary pool, the settlement cannot be said to unfairly prejudice class members who no longer work for Defendants.

As the objectors note, the *Cin-Lan* settlement required Plaintiffs to track disbursement of the $9 million rent-credit pool, and they failed to do so. ECF 74-1. At the fairness hearing, Plaintiffs' counsel acknowledged the mistake in *Cin-Lan*, agreed to remedy the issue, and noted that the settlement (like the *Cin-Lan* settlement) provides for third-party "Modern Bookkeeping, Inc." to track payment of rent credits, and audit rights to ensure rent credits are paid to class members. Although the Court fully agrees with objectors that Plaintiffs failed to appropriately track and record rent-credit payments in *Cin-Lan*, that omission alone does not render the settlement unfair.

The Court's role in this dispute is not to determine whether the proposed settlement is ideal. Rather the Court's role is "properly limited to the minimum necessary to protect the

interests of the class and the public." *Robinson v. Shelby Cty. Bd. of Educ.*, 566 F.3d 642, 649 (6th Cir. 2009). The Court may not—and will not—"substitute [its] own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Id.* (quotations omitted). The proposed settlement offers value to the class in the form of cash, rent-credit or dance-fee payments, and long-term structural changes to Defendants' business practices, all of which directly benefit class members. Plaintiffs' likelihood of success on the merits is not guaranteed; if class members were to continue to litigate, they could receive nothing. Therefore, the high risk of continued litigation and the uncertain likelihood of success on the merits weigh heavily in favor of approval.

      C.    <u>The Risk of Collusion</u>

The other factors established by *UAW* also favor approval of the settlement. The Court begins with a "presumption that the class representatives and counsel handled their responsibilities with the independent vigor that the adversarial process demands." *UAW*, 497 F.3d at 628. The parties submit, and the Court agrees, that the settlement resulted from extensive, arm's-length negotiations made in good faith. The risk of fraud of collusion is minimal.

The objectors disagree. They point out that the Defendants agreed not to object to Plaintiffs' request for attorney fees in a "clear sailing provision." ECF 50, PgID 1802–03, ECF 51, PgID 1967–68. But "not every 'clear sailing' provision demonstrates collusion." *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012). "The clauses 'are sometimes included in class action settlements so that defendants have a more definite idea of their total exposure,'" which the parties submit is the case here. *Id.* (quoting *Waters*

*v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 n.3 (11th Cir. 1999), *cert. denied*, 530 U.S. 1223 (2000)). Moreover, the parties have a "history that evidences adversity," and dates back to three years of highly contested litigation in the *Cin-Lan* case. *Id.*

Objectors also argue that the Plaintiffs' requested incentive payments are unreasonable and create the risk of fraud. ECF 51, PgID 1969. "[W]hen a class-action litigation has created a communal pool of funds to be distributed to the class members, courts have approved incentive awards to be drawn out of that common pool" to "reward[] individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). The Court must carefully scrutinize incentive awards, however, to ensure that named plaintiffs don't "compromise the interest of the class for personal gain." *Id.* Here, the parties have made a sufficient showing that the class representatives devoted additional time, effort, expense, and risk to prosecute the case. *See* ECF 41-6, 41-7, 66-5. The Court therefore finds the requested incentive payments reasonable and in accordance with common practice in the Sixth Circuit. *See, e.g.*, *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 914 (S.D. Ohio 2001).

Objectors point to the settlement of four related cases as evidence of fraud. ECF 50, PgID 1805–06. But "[t]he timing of a settlement by itself does not establish collusion." *UAW*, 497 F.3d at 633. "[A] tentative settlement can precede or be concurrent with class certification; something more is required to indicate collusion[.]" *Id.* (internal citation and quotations omitted).

The Court prefers, as a general practice, for parties to negotiate attorney fees separate from a class settlement. But the parties here did not make the settlement agreement contingent on the Court's award of the requested attorney fees. ECF 41-2, PgID

1171 ("The disposition of Class Counsels' application for an Attorney Fee and Expense Award, and for Enhancement Payments, is within the sound discretion of the Court and is not a material term of the Settlement or of this Agreement[.]"). In sum, objectors have not shown sufficient "evidence of improper incentives" to dislodge the presumption that the parties conducted negotiations independently and at arm's-length. *Id.* at 628.

    D. <u>The Complexity, Expense and Likely Duration of the Litigation, and the Amount of Discovery</u>

This case presents complex legal issues because it combines a Rule 23 class action with a FLSA collective action. Continued litigation would require great expense and a long duration because the Defendants possess meritorious defenses, *see* ECF 12, *Cin-Lin*, Case No. 08-12719, ECF 70, and there are unique challenges to obtaining sufficient records to prove class damages. Although objectors point to the lack of discovery as an indicator of unfairness, *see, e.g.*, ECF 47, PgID 1587, "[t]he relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016).

To determine whether sufficient discovery has taken place, "the court should take into account the formal and informal discovery in which the parties engaged during the litigation." *Date*, 2009 WL 435289, at *7. The parties here have made a sufficient showing of informal discovery based on their efforts in *Cin-Lan*, when Plaintiffs served 13 interrogatories and 87 requests for production on each of the three defendants, took 13 depositions of Defendants' officers and managers, and filed numerous subpoenas on third parties. In total, the parties in *Cin-Lan* exchanged 13,000 pages of material related to the

details of Defendants' business practices. Although some of the material was likely out-of-date and not useful, the vast bulk of the prior discovery remained relevant to this case as it dealt with Defendants' general business practices. Accordingly, the parties were in a position "to make an informed evaluation of the merits of a possible settlement" despite the absence of formal discovery. *Id.*

   E. The Opinions of Class Counsel

   Class counsel have extensive experience litigating class and collective action cases, including FLSA dancer claims. ECF 41-5. Defense counsel likewise is an experienced class and collective action litigator and has successfully defended similar suits in the past. ECF 70-8. In their reasoned, professional judgment, the benefits of settlement outweigh the risks of continued litigation. Although by no means dispositive, their opinions weigh in favor of settlement approval.

   F. The Reaction of Absent Class Members

   The positive reaction of absent class members weighs in favor of approval. Sixteen percent of all class members have opted in. That number will likely continue to grow because absent class members can continue to opt in to receive cash payments for another week, and opt in to receive secondary rent-credit or dance-fee payments for up to one year after final approval. Opt-in rates are high: 16% of all class members and 19% of notified class members have requested to receive a cash payment. Conversely, the 66 opt outs account for 0.2% of the class. As noted above, the Court received five objections from six objectors, or 0.02% of the class.  The Court considers the overwhelmingly positive response a strong indication of support for the proposed settlement.

   G. The Public Interest

17

And finally, the settlement serves the public interest. It resolves the parties' disputes and puts an end to "potentially long and protracted litigation." *Kritzer v. Safelite Sols., LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at *8 (S.D. Ohio May 30, 2012). The settlement mandates long-term structural changes to Defendants' business practices designed to ensure workers are accurately classified, and employees receive appropriate wages and legal protections. The factor also weighs in favor or approval.

In conclusion, the parties have carried their burden. The Court finds the settlement is the result of a bona-fide dispute, and the terms established in the settlement are a fair, reasonable, and adequate resolution of the claims.

IV.    The Settlement is a Fair Resolution of the Class Member's FLSA Claims

Objectors contend the settlement is illegal because the FLSA prohibits payment in scrip or coupons. ECF 50, PgID 1794–96. In support, the objectors cite to federal regulations interpreting the FLSA that mandate wages paid in currency, not scrip or coupons. *Id.* But Department of Labor regulations govern an employer's payment of wages to an employee, they do not govern a negotiated settlement for the release of claims. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982). Here, for the reasons stated above, the Court finds that the settlement embodies "a fair and reasonable [resolution] of a bona fide dispute over FLSA provisions." *Id.*

18

V.    Motion for Attorney Fees

Plaintiffs' counsel requested, and Defendants agreed to pay, $900,000 direct attorney fees, and $300,000 indirect attorney fees contingent on payment of the secondary fund. ECF 43. Although Plaintiffs' Amended Motion for Fees includes a request for $100,000 in litigation expenses, ECF 43, PgID 1468, during the fairness hearing, the Plaintiffs explained that they seek $37,000 in out-of-pocket litigation expenses as part of their fee, and ask permission to deduct $45,000 from any fee award for incentive and general-release payments to four late-added class representatives who pursued class claims against Defendants that were stayed by the Court's injunction.

Federal Rule of Civil Procedure 23(h) allows the Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." "When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). To assess the reasonableness of fees, the Court may employ either the percentage-of-the-fund or the lodestar method. *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016).

A. Percentage of the Fund

"When conducting a percentage of the fund analysis, courts must calculate the ratio between attorney's fees and benefit to the class." *Id.* at 282. Attorney fee awards "of close to 30% appear[] to be a fairly well-accepted ratio in cases of this type and generally in complex class actions." *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, *19 (E.D. Mich. Dec. 13, 2011). Here, Plaintiffs assert that the settlement creates

19

a common fund worth at least $6.55 million. ECF 43, PgID 1482. Their request for $1.2 million in attorney fees accounts for approximately 18% of the common fund, which is well below the typical ratio of 30% fee awards.

The objectors disagree; they argue that the common fund value is overinflated by illusory relief (rent credits) and contend that the actual value of the common fund is closer to $2 million ($920,000 cash fund and $1.2 million in attorney fees). *See, e.g.*, ECF 47, PgID 1590. As an initial matter, the value of the common fund depends on the entire "benefit to the class" created by the settlement, including "all components that the parties found necessary for settlement." *Gascho*, 822 F.3d at 282. As noted above, the parties have made a sufficient showing that the secondary pool of rent-credit and dance-fee payments will give actual value to the class. And the parties have offered unrebutted data to show that—if 7.5% of class members accept Defendants' enhanced offer of employment—the class will receive around $3.4 million in benefits from the injunctive relief negotiated by Plaintiffs and included in the settlement. The Court concludes that the benefit to the class of the common fund is worth at least $6.55 million.

Since the parties failed to offer data from their previous settlement to show the benefits of rent credits to the class, the Court would be justified to reduce the value of the secondary pool. But if, hypothetically, the Court were to consider the secondary pool as worth only $2.25 million, the Plaintiffs' fee request would still fall below 30% of the common fund of $4.25 million. In any event, and contrary to objector's assertions, the value of the settlement depends on the size of the entire fund created and the class members' "right to share the harvest of the suit upon proof of their identity, whether or not they exercise it[.]"

*Gascho*, 822 F.3d at 282 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) (emphasis omitted)). Therefore, Plaintiffs' fee request for 18% of the common fund appears reasonable on its face.

    B. <u>Lodestar Cross-Check</u>

    The Court also finds the fee request reasonable based on the lodestar cross-check. "To determine the lodestar figure, the court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Gascho*, 822 F.3d at 279 (quotations omitted). The Court reviewed the details of Plaintiffs' attorney fee records in-camera, at their request, and found no irregularities. Since "[t]he public has an interest in ascertaining what evidence and records the District Court relied upon in reaching [its] decisions," however, the Court will make the Plaintiffs' billing rates, hours, and expenses part of the public record. *Shane*, 825 F.3d at 305.

    Sommers Schwartz, P.C. recorded $381,383.05 in attorney fees and $20,618.42 in expenses based on hourly rates of $685 for Mr. Thompson, $475 for Mr. Young, $315 to $325 for other attorneys, $125 to $175 for paralegals, and 718.33 total hours. Pitt McGehee Palmer & Rivers PC recorded $349,190.00 in attorney fees and $400 in expenses based on hourly rates of $600 for Ms. Bonanni, $400 for other attorneys, and 624.55 total hours. In addition, Plaintiffs provided attorney fee records from related cases against the Defendants that joined in Plaintiffs' class action: Cullins O'Brien Law, $11,670 in attorney fees based on an hourly rate of $600, and 19.45 total hours, plus $50 in expenses; Rusing Lopez & Lizardi, $128,208.50 in attorney fees based on hourly rates of $225 to $425, and 434.30 total hours, plus $7,445.01 in expenses; Federman & Sherwood, $101,146.25 in attorney fees based on hourly rates of $250 to $850 and 193.30 hours in total, plus

$7,737.30 in expenses; and a spreadsheet entitled "Hustler Club" without identifying attorney information, $75,565 in attorney and paralegal fees based on 198.4 attorney hours and 35 paralegal hours.

To calculate the lodestar, the Court will not include fees documented by the unnamed spreadsheet, or Rusing Lopez, because neither of those fees were included in the Plaintiffs' Amended Motion For Attorney Fees. *See* ECF 43-2, PgID 1502. Similarly, the Court will not include the fees claimed by Andrew Sterling because the parties did not provide any information regarding hours worked and rates charged, or a detailed fee record for in-camera review.

After subtracting the unsupported fee submissions, Plaintiffs claim $843,389.03 in attorney fees for 1555.63 hours. The lodestar multiplier of 1.4, and the blended hourly rate of $542 are reasonable given the complexity of the case, the results achieved, and considering that Plaintiffs' counsel will continue to accumulate fees while they represent the class during the administration of the settlement. Thus, the lodestar cross-check confirms that the requested fees fall within a reasonable range accepted in the Sixth Circuit. *See, e.g.*, *N.Y. State Teachers'*, 315 F.R.D. at 243 ("Most courts agree that the typical lodestar multiplier in a large class action ranges from 1.3 to 4.5.") (quotations omitted).

C. Reasonableness Factors

The Court must determine whether Plaintiffs' fee request is "reasonable under the circumstances." *Rawlings*, 9 F.3d at 516. Six factors guide the Court's inquiry: "(1) the value of the benefit rendered to the plaintiff class []; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4)

22

society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996).

An analysis of the factors shows that the fees requested are reasonable. First, the settlement confers real value on the class who will receive access to a common fund worth $6.55 million, and non-monetary relief in the form of long-term changes to Defendants' business practices. Second, the value of legal services provided by Plaintiffs' counsel on an hourly basis are at least $843,389.03, which is within a reasonable lodestar multiplier of the amount of attorney fees requested. Third, Plaintiffs' counsel operated on a contingency fee basis, which "often justifies an increase in the award of attorney's fees." *Stanley v. U.S. Steel Co.*, No. 04-74654, 2009 WL 4646647, at *3 (E.D. Mich. Dec. 8, 2009) (quotations omitted).

Fourth, Plaintiffs' attorneys should be rewarded for recovering damages for 28,177 class members. Without the settlement negotiated by Plaintiffs, the vast majority of class members would recover nothing. "Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." *Kritzer v. Safelite Sols., LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012). Fifth, the litigation was quite complex: a combination collective action under the FLSA and a class action under state wage and hour laws. The litigation presented difficult questions of law and fact, which should be reflected in a fee award. Sixth, both Plaintiffs' counsel and Defendants' counsel have significant expertise litigating FLSA and class actions, and have both successfully litigated similar individual and class actions.

23

In sum, the requested fees fall within the range of reasonableness commonly accepted in the Sixth Circuit. The percentage of the fund analysis shows that class counsel requests 18% attorney fees. And the lodestar cross-check confirms that this request is within the boundaries of acceptable fees. The request satisfies the reasonableness factors set forth by *Boyle*. As a result, the Court finds the requested fees are fair, reasonable under the circumstances, and supported by the record.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that  Objections [39], [47], [50], [51], [56] are **OVERRULED.**

**IT IS FURTHER ORDERED** that the settlement agreement is **APPROVED** as fair, reasonable and adequate.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Final Approval of Settlement [41] is **GRANTED**.

**IT IS FURTHER ORDERED** that class counsel and the class representatives adequately represent the class.

**IT IS FURTHER ORDERED** that Plaintiffs' Amended Motion for Attorney Fees and Costs [43] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Attorney Fees and Costs [42] is **MOOT.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss or Stay Proceedings in Favor of Arbitration and For Attorney Fees and Costs [12] is **MOOT**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE** and without costs, except those provided by the settlement agreement; the Court retains jurisdiction over the administration of the settlement agreement and distribution of the settlement fund.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 19, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 19, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager

25